UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-cv-23429-Ungaro

MITCHELL ROSARIO,

      Plaintiff,

v.

12425, INC., d/b/a STIR CRAZY,
LAURA INSUA, MANUEL INSUA and
HERIBERTO FLOREZ,

      Defendants.

_____ /

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, STATEMENT OF FACTS AND MEMORANDUM OF LAW IN SUPPORT

Defendants, 12425, Inc. d/b/a Stir Crazy, Laura Insua, Manuel Insua and Heriberto Florez, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, move for Summary Judgment on the grounds there is no genuine issue of material fact and, therefore, Defendants are entitled to judgment as a matter of law. This Motion and Memorandum of Law, along with the accompanying exhibits and the Statement of Material Facts included herein pursuant to Local Rule 56.1, support the granting of summary judgment in favor of the Defendants.  As such, the Defendants request judgment as a matter of law.

### The Motion

The Plaintiff has filed a Complaint against the Defendant, 12425, Inc. d/b/a Stir Crazy Lounge ("12425") and individual Defendants, Laura Insua, Manuel Insua and Heriberto Flores, setting forth four counts:  Count I – Violation of 29 U.S.C. § 206

- 1 -

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

(Unpaid Minimum Wages); Count II – Violation of 29 U.S.C. § 207 (Unpaid Overtime); Count III – Retaliation in Violation of 29 U.S.C. § 215,[1] The Florida Minimum Wage Amendment (FMWA) and Florida Statute § 448.110, and Count IV – Unjust Enrichment.

Plaintiff seeks back wages, overtime wages, liquidated damages, prejudgment interest, attorney's fees and costs pursuant to Counts I and II and for Count III Plaintiff seeks in addition to those damages enumerated above, back pay and front pay (through age 65).   Under Count IV – Unjust Enrichment, Plaintiff seeks recovery from the Defendants a $25.00 rental fee paid by the Plaintiff for the benefit of utilizing the Defendants' disc jockey booth and sound and lighting system equipment.[2]   The Defendants deny these claims and assert, at all times, the Plaintiff was an independent contractor.

Plaintiff claims are unsupported by the record and as this motion will demonstrate Defendants are entitled to Summary Judgment based on the doctrine of judicial estoppel, unclean hands, and because Plaintiff was **not** an employee of the Defendant pursuant to 29 U.S.C. § 203.   The individual Defendants, Laura Insua and Manuel Insua, are also entitled to Summary Judgment because neither qualifies as an individual employer under the FLSA and neither committed any acts to support Plaintiff's retaliation claim against them.  Finally, a portion of Plaintiff's claim is barred by the statute of limitations.

---

[1] Interestingly, Plaintiff did not seek to recover unpaid wages or overtime wages pursuant to The Florida Minimum Wage Amendment or *Florida Statute* § 448.110.  Rather, Plaintiff cites to those statutory sections simply for the purpose of stating a retaliation claim.  As such, Plaintiff's unpaid wage and overtime wage claims are brought strictly pursuant to Federal law.

[2] Plaintiff, a Disc Jockey, only had to bring his own laptop containing his personal music along with his individual headset microphone. The Defendant provided the remainder of the equipment needed for the $25 rental fee.  (Rosario dep. at 143,144).

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

WHEREFORE, the Defendants respectfully request that this Court grant summary judgment in the Defendants' favor.

## Statement of Undisputed Material Facts[3]

### Background

1.      The Defendant, 12425, is a neighborhood bar/exotic dance club with its sole location in Pinecrest, Florida, at 12425 South Dixie Highway.  It was created and originally owned by Defendant, Manuel Insua, from the 1980's until 1996.  (Manuel Insua dep. at 74).

### Defendant, Laura Insua

2.      From 1996 to the present 12425's sole stockholder and director was its absentee owner, Laura Insua, who resides in Pinecrest, Florida, and who is the 87 year old mother of Manuel Insua.  (Florez dep. at 45, 54)  Laura Insua obtained ownership of 12425 in 1996 from her son, Manuel Insua, when he transferred ownership of the business and liquor license. (Laura Insua dep. at 9).  She has not visited the bar for any reason at any time in the past five years.  (Laura Insua dep. at 10).  Indeed, she has never been inside the bar during hours of operation. (Laura Insua dep. at 10).  Laura Insua leaves all decisions regarding the Club's operations to its General Manager, Heriberto Florez.  (Laura Insua dep. at 19, 78).  She has no involvement in the hiring, retention, firing of anyone (Laura Insua dep. at 78) and knows nothing about the disc jockeys that operate and their performances at the bar.  (Laura Insua dep. at 38). She has never supervised the Plaintiff and recalls only seeing him a long, long time ago. (Laura Insua dep. at 56).

---

[3] Depositions referenced in the Statement of Facts and this Motion have been filed with the Court as follows:  Heriberto Florez, D.E. 57; Joseph Roppo, D.E. 58; Laura Insua, D.E. 59; Manuel Insua, D.E.  60; and Mitchell Rosario, D.E. 61.

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

### Defendant, Manuel  Insua

3.       Manuel Insua is an individual Defendant, although he is neither an officer nor director of 12425.  He too is not involved in the day-to-day operations of the business.  (Manuel Insua dep. at 114, 189).  Manuel Insua's day-to-day involvement with 12425 ended approximately six (6) months after he transferred ownership to his mother in 1996.  (Manuel Insua dep. at 114).  By his own testimony he has not been to the bar more than ten times in the past four to five years, an average of 2-3 times per year.  (Manuel Insua dep. at 22).  In the past five years, he has never attended any meetings with any disc jockeys, including the Plaintiff.  (Manuel Insua dep. at 95).  Mr. Insua is not involved in the day-to-day operations of 12425, he makes no decisions regarding hiring or firing of anyone at 12425 and he does not make decisions for the bar's payroll.  (Manuel Insua dep. at 188-189).  He does not involve himself in who is classified as an independent contractor.  (Manuel Insua dep. at 188).  Manuel Insua remains on the payroll as a consultant to the business he founded and created in the 1980s prior to the 1996 divestiture of ownership.  (Manuel Insua dep. at 33, 34).  Mr. Insua consults with the General Manager, Heriberto Florez, and his recommendations are not always followed.  For example, in 2012, Mr. Florez caught the Plaintiff, Rosario, with marijuana in the disc jockey booth and sought Mr. Insua's opinion.  Mr. Insua recommended that Mr. Florez cease using the disc jockey services of Plaintiff but Mr. Florez did not follow Mr. Insua's advice.  (Manuel Insua dep. 186).  Rather, Mr. Florez gave deference to the Plaintiff's 12-year connection as a disc jockey at 12425 and requested that Rosario attend a course sponsored by an organization

- 4 -

known as Responsible Vendors so Plaintiff could understand the seriousness of his actions and the possible negative consequences his marijuana possession might have on 12425.  (Florez dep. at 239-241). 12425 requires all payroll employees to attend classes by Responsible Vendors but did not require the independent contractor disc jockeys to attend such.  Rosario was found to have marijuana in 2012 and 12425 asked he attend a Responsible Vendors' meeting as an independent contractor.  (Florez dep. at 252).

### Plaintiff's 12-Year History as a Disc Jockey at Stir Crazy

4.      In 2001, Plaintiff left the employment of an exotic dance club known as Treasure Island, where he worked as security.  He then sought a position with 12425 as an entertainer/disc jockey.  (Rosario dep. at 27).  Plaintiff interviewed with an individual by the name of Joseph Roppo, who serves as the lead disc jockey at 12425. (Rosario dep. at 56).   (Roppo dep. at 24, 25).   Roppo worked for 12425 for approximately 21 years as an independent contractor/disc jockey. (Roppo dep. at 19, 53).  Mr. Roppo testified that he considers himself an independent contractor (Roppo dep. at 53), that he works other jobs as a disc jockey (such as parties and weddings) simultaneously while serving 12425 and that he is free to accept such outside employment.  (Roppo dep. at 225).  Mr. Roppo auditioned the Plaintiff (Roppo dep. at 25).  Mr. Roppo, the Plaintiff and other disc jockeys together make their own work schedule at 12425 and, as needed, cover for one another.  (Roppo dep. at 19).

5.      At 12425 the exotic dancers and the disc jockeys are classified as independent contractors.  (Florez dep. at 84, 314).  In contrast, the general manager, shift managers, bartenders, security staff and maintenance individuals are W2 payroll

employees of the business.  (Florez dep. at 84, 85).  In this case, Rosario worked for 12 years as a designated independent contractor, playing music which his fellow independent contractors, the exotic dancers requested he play.  (Rosario dep. at 83).

6.     In addition to working at 12425, between 2008-2013, Rosario also became a licensed mortgage broker and worked as such (Rosario dep. at 9).  He took classes as an auctioneer and also worked with an auctioneer.  (Rosario dep. at 23).  Rosario also owned his own food truck in 2010 and 2011 (Rosario dep. at 39) and also worked, for a short period of time, as a disc jockey at another adult entertainment establishment called Dean's Gold in North Miami Beach.  (Rosario dep. at 34).

7.     For a period of time in 2010, Mr. Rosario served as a shift manager at 12425 and was placed on payroll for those duties, but when he returned to his disc jockey talents, wherein he shared tips with other fellow independent contractors, the exotic dancers, Rosario was reclassified as an independent contractor.  (Rosario dep. at 104).  At all times he understood the financial arrangements of his work.  (Rosario dep. at 107).  As is standard in the adult entertainment industry in Miami, it was customary for each exotic dancer to compensate the disc jockeys a minimum of $10.00 or more per night.  In fact, on busy nights, as many as 30 exotic dancers would be working and Rosario would share tips with all.[4]  (Rosario dep. at 86, 87).

8.     Rosario, in deposition, described that the disc jockey role at 12425 as having little impact on the club or its profitability.  Rather he performs for benefit of the dancers impacting the dancers' performances.  He believes his independent contractor work had little impact on the profitability of 12425. (Rosario dep. at 81-84).

---

[4] Plaintiff, Rosario, because of his lengthy tenure as a disc jockey, worked a shift of Wednesday, Thursday, Friday and Saturday nights, which are considered prime time shifts at 12425.

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

**Rosario's 2009 Bankruptcy and Undisputed Facts Related to Judicial Estoppel**

9.      On September 16, 2009, Rosario sought and obtained the protection of the U.S. Bankruptcy Court in the Southern District of Florida in a Chapter 13 bankruptcy filing which was later converted to a Chapter 7 bankruptcy.  In Case No. 09-29496-LMI (See D.E. 1 attached hereto as Ex. 1), Rosario utilized the federal court system to gain protection from creditors and to extinguish his debts and obligations, which at that time were $488,937.25.   He ultimately paid nothing towards the debt but received a full discharge.  (See Bankruptcy Case No. 09-29496-LMI D.E. 28).   Consistent with the federal requirement of anyone seeking bankruptcy court protection pursuant to Chapter 13, Mr. Rosario was required to file a "Statistical Summary of Certain Liabilities and Related Data" (attached hereto as Ex. 2) and a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation" (Ex. 3).  In these documents, Mr. Rosario was to identify his personal property, including any interest in any "unliquidated claims of every nature" which would have included the claims he makes in the present lawsuit.  Plaintiff responded, under oath, that he had no interests -- "none".  (See Exs. 2 and 3).  As previously identified, Rosario claims unpaid wages in the instant matter back to 2008, prior to his bankruptcy filing.  On the same form (Ex. 3 to this motion), page 20 of 37, Mr. Rosario declares to the Bankruptcy Court of the Southern District of Florida, under oath, that he is **"self-employed"** as a D.J.  He states that he earned $4,540.00 in monthly business income with $1,100.00 in monthly business expenses which he identified as a "concession trailer" on page 22 of 37.  This information was all signed under penalties of perjury.  (See Ex. 4).  (Plaintiff's Bankruptcy Court "**Declaration**

- 7 -

**Under Penalty of Perjury** to Accompany Petitions, Schedules and Statements Filed Electronically.)"  (Emphasis added).

10.    Exhibit 5 to this motion is Plaintiff's "Declaration Regarding Payment Advices," filed on October 30, 2009, also in his bankruptcy proceeding (Bankruptcy D.E. 17).  Therein Plaintiff advises he is not attaching payment stubs (advices) **because Plaintiff is "self-employed."**  (Emphasis added).  Exhibit 6 hereto is Judge Isicoff's Order Determining Debtors Compliance with Filing Requirements (Bankruptcy D.E. 30). Exhibit 7 is the Chapter 13 Trustee's Final Report (Bankruptcy D.E. 31) and Exhibit 8 is US Bankruptcy Judge Isicoff's March 4, 2010 Discharge of Debtor.   (Bankruptcy D.E. 39).  Without question, Rosario has stated under oath when seeking bankruptcy protection that his income is *de minimus* and that he was self-employed.

### Plaintiff's Tax Returns and Facts Pertaining to the Clean Hands Doctrine

11.    In the instant matter, the Defendants sought the production of the Plaintiff's income tax returns for the years in which Plaintiff seeks his claimed unpaid wages and overtime wages, 2008 through 2013.  Initially, Plaintiff objected, forcing Defendants to file a Motion to Compel.  (D.E. 27).  Thereafter, Plaintiff relented and produced portions of his tax returns for the years 2008-2012.  (See attached tax returns, Composite Ex. 9)   However, in deposition, when questioned about the various representations made on the tax returns concerning his employment status, Plaintiff regularly and routinely asserted his 5th Amendment right against self-incrimination.[5]

---

[5] When a Plaintiff such at Mitchell Rosario takes the 5th Amendment in a civil case, the Court or jury is allowed to draw an adverse inference.  *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). On the signature block on each tax return, Plaintiff signs under a statement that reads "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements and to the best of my knowledge and belief, they are true, correct and complete."

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

(Rosario dep. at 227:22, 229:2,19, 230:1, 230:10, 231:20, 232:4, 233:15, 234:1,8,13,20, 235:8,13, 237:4, 237:14,23, 238:4, 238:20, 239:2,10, 239:20, 240:2,11, 240:18,25, 241:5, 241:12,18, 242:1, 242:10,20, 243:5).   Plaintiff's tax returns were marked as exhibits to the Plaintiff's deposition which has been filed of record with this Court (D.E. 61).

12.     In 2008, the first year plaintiff seeks back wages in this matter, as he did in his bankruptcy filings, Plaintiff declared himself to be **"self-employed"** to the IRS on his tax return.  (See Composite Ex. 9 and Plaintiff's dep. at 228). Nonetheless, in the instant lawsuit, Plaintiff now claims to be an employee of 12425.  (Complaint D.E. 1 at ¶ 7).   Interestingly, Plaintiff also declared itemized business deductions, **as a self-employed individual**, in 2008 and paid self-employment tax.  (Ex. 9 and Plaintiff dep. at 229-230).   Plaintiff invoked his 5th Amendment privilege regarding whether he received other W2 wages in 2008 from other sources (Rosario dep. at 228), whether he took itemized business deductions in 2008 (Rosario dep. at 229), whether he reported all income from all sources in 2008 (Rosario dep. at 229) and whether he paid self-employment tax in 2008 (Rosario dep. at 230).

13.     In 2009, the second year Plaintiff seeks back wages in this matter, Plaintiff also invoked his 5th Amendment Privilege regarding whether the tax returns were actually his.  (Rosario dep. at 231)[6].

14.     Plaintiff **represented on his 2009 tax return that he was "unemployed."** [7]   In 2009 he served as a disc jockey for 12425 – he was not "unemployed."  In deposition in this matter, Plaintiff invoked his 5th Amendment privilege

---

[6] Plaintiff produced these returns in response to a Request to Produce for Plaintiff's tax returns.
[7] Plaintiff stated business income for 2009 on his bankruptcy filing.  (See Ex 2 and Ex. 3)

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

regarding this issue – he refused to answer questions (Rosario dep. at 232) as to his untruthfulness whether he represented he was "unemployed" on his tax return. (Rosario dep. at 232).  In the same deposition, Plaintiff testified that he was, in fact, employed by the Defendants during the same time, the entire year of 2009, contrary to the statements made under penalties of perjury on tax returns and in his bankruptcy court filings.  (Rosario dep. at 232).

15.     When asked if his 2010 tax return was accurate, Plaintiff again asserted his 5th Amendment privilege.  (Rosario dep. at 233).  Again, despite his representations to the contrary in this case, in 2010, Plaintiff declared himself on this tax return (Ex. 10 hereto) also as **self-employed and took business income deductions as a self-employed taxpayer.**  Nonetheless, and in deposition, he again invoked his 5th Amendment privilege to all questions regarding such.  (Plaintiff dep. at p. 234).  In the instant matter, Plaintiff claims he was not self-employed in 2010 but rather was and should have been classified as an employee by the Defendants.  (Complaint D.E.1 at ¶ 7).

16.     When asked about 2011 in deposition as to whether he was an **independent contractor disc jockey, as he represented on his U.S. tax returns** filed under penalties of perjury (Ex. 9 hereto), Rosario also asserted his 5th Amendment privilege against self-incrimination.  (Plaintiff dep. at 236, 237).  In 2011, Plaintiff reported $0.00 as business income but represented and declared on his U.S. tax return that he **received unemployment compensation** of $1,375.00 (Ex. 9 hereto).  He served as a disc jockey during this year too, but when asked to confirm under oath that he actually received unemployment compensation in 2011, he invoked his 5th

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

Amendment Privilege and refused to answer. (Rosario dep. at 237). Incredibly, Plaintiff seeks wages, including overtime wages as an employee of the Defendant, from the Defendant for the entire 2011 calendar year even though he declared himself unemployed while still performing at 12425. (Complaint D.E.1 at ¶ 7).

17.     Plaintiff was also asked about questions about 2011 in his deposition to confirm the **itemized business deductions** set forth on Plaintiff's tax returns (Ex. 9 hereto), deductions typically taken by **a self-employed individual**. Once again Plaintiff asserted his 5th Amendment privilege against self-incrimination. (Plaintiff dep. at 238).

18.     With regard to each of his tax returns, Plaintiff refused to answer claiming his 5th Amendment right against self-incrimination. Even more incredible was that Plaintiff was asked to confirm that his social security number reflected on his tax returns was accurate. He refused to do so. (Rosario dep. at 239). Indeed, when asked if the **Plaintiff had more than one social security number** for the purpose reporting income, Plaintiff asserted his 5th Amendment right against self-incrimination. (Rosario dep. at 239).

19.     Plaintiff further asserted his 5th Amendment right against self-incrimination when he was asked whether he **received income through multiple social security numbers.** (Rosario dep. at 239, 240).

20.     Regarding 2012, Plaintiff also took the 5th Amendment when asked whether the return was, in fact, **his** 2012 tax return wherein he listed his **occupation as "other."** [8] (Rosario dep. at 240). Plaintiff took the 5th Amendment right against self-incrimination when asked to identify what the term "other" meant insofar as what the

---

[8] The Court will recall that these tax returns were produced by Plaintiff during the course of this case and represented to be Plaintiff's tax returns for the years 2008-2012. (See Ex. 9 attached hereto).

Plaintiff's occupation was in 2012.  (Rosario dep. at 240).  Plaintiff further took the 5th Amendment right against self-incrimination when asked whether the **business income reported by a self-employed individual** was accurately stated on the 2012 tax return (Rosario dep. at 240) and further refused to answer regarding **itemized business deductions taken as a self-employed individual on the 2012 tax return**, all based on his 5th Amendment right.  (Rosario dep. at 240 and 241).

21.     Lastly and even more telling was Plaintiff's refusal to state whether he received income in 2012 through multiple social security numbers (Rosario dep. at 240 and 241).  Rather than coming clean about the sources of his income Plaintiff also asserted his 5th Amendment right against self-incrimination and refused to answer. Plaintiff also asserted his 5th Amendment right against self-incrimination when asked whether he was receiving unemployment compensation in 2012.  (Plaintiff dep. at p. 240 and 241).

### Memorandum of Law

### Summary Judgment Based on the Doctrine of Judicial Estoppel

The doctrine of judicial estoppel is an equitable rule precluding a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289 (11th Cir. 2003); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 184 (11th Cir. 2002). As stated by the Eleventh Circuit, the doctrine exists to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Barger* at 1293; *Burnes* at 1284; *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 149 L.Ed.2d 968 (2001).  The U.S. Supreme Court has

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING ♦ 8821 S.W. 69TH COURT ♦ MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 ♦ FACSIMILE (305) 662-6164 ♦ www.mmlawmiami.com

stated "judicial estoppel is an equitable doctrine invoked at the court's discretion."  *Id.* at 750 (2001).  The purpose of the doctrine is to protect the integrity of the judicial system. *Burnes*, 291 F.3d at 1285.  As the Eleventh Circuit in *Burnes*, *supra*, stated, the rule prevents a plaintiff, such as Rosario herein, "from playing fast and loose with the courts" to serve his personal self-interest.  *Burnes* at 1285.

In the Eleventh Circuit, when applying the doctrine of judicial estoppel, courts primarily focus on two factors: (1) the allegedly inconsistent statements had to have been made under oath in a prior proceeding; and (2) the inconsistencies must be shown to have been calculated to make a mockery of the judicial system.  *Burnes*, 291 F.3d at 1285.  The Eleventh Circuit, however, has held that the two factors referenced above are not "inflexible or exhaustive."  Moreover, the "courts must always give consideration to all of the circumstances of a particular case" when considering the applicability of the Doctrine of Judicial Estoppel.  *Id.*; *see also Robinson v. Tyson Foods, Inc.*, 595 F.2d 1269, 1273 (11th Cir. 2010).

Exhibits 1, 2, 3, 4 and 5 to this Motion (see Facts ¶¶ 8 and 9 above) undeniably reveal that Plaintiff used a bankruptcy proceeding to influence his creditors, the Trustee and Judge Isicoff by asserting he was self-employed.  The exhibits were intended, in another Judicial proceeding, to provide a supposedly truthful description of the nature of Plaintiff's employment and the sources of income from which the creditors could determine whether to seek funds in payment of $488,937.25 in debts owed by the Plaintiff to the creditors.[9]  Those documents were all completed and signed under oath.

---

[9] Defendants request that the Court take judicial notice of those documents contained in the docket of U.S. Bankruptcy Court for the Southern District of Florida, Case No.09-29496, which are attached hereto pursuant to Rule 201 of the Federal Rules of Evidence.  Moreover, pursuant to Rule 902(4) of the Federal

- 13 -

In those filings, Plaintiff represented, for the purpose of discharging his debts, influencing his creditors, convincing the Trustee and Judge Isicoff, that he was **"self-employed"** as a disc jockey.  Moreover, Plaintiff represented that for the period of time prior to the bankruptcy, in 2007, he earned no income ($0.00).  (See Ex. 3 at page 24). As such, for the purpose of influencing the Court, the Trustee and to discharge his personal creditors, Plaintiff took advantage of his "independent contractor/self-employed status" as a disc jockey.  Moreover, Plaintiff clearly was untruthful in his statement of earnings for the purpose of eliminating his debts.  During this time he served and was paid substantially as a disc jockey.  Indeed, Plaintiff's deceptive plan worked to perfection.  On March 4, 2010, Judge Isicoff granted the discharge and Rosario's creditors and the Court were apparently duped into discharging Plaintiff's debts.

With his debts gone, Plaintiff now in the instant matter reverses course herein claiming instead that he was not "self-employed" (as he claimed in his Bankruptcy proceeding), but rather that was an employee.  He seeks back wages to 2008, prior to the filing of bankruptcy.

To allow Plaintiff to continue with the instant lawsuit, by taking advantage of the situation and the position he took in his Bankruptcy claim, makes a total mockery of the judicial system and implores utilization of judicial estoppel.  There could not be a more classic factual scenario for the application of the doctrine than the facts presented by the instant matter.[10]

---

Rules of Evidence, the certified records filed as exhibits to this Motion, from the U.S. Bankruptcy Court for the Southern District of Florida are self-authenticating.

[10] Plaintiff seeks back wages from 2008 to 2013.  At a minimum, Plaintiff's claim from 2008 up to the conclusion of the bankruptcy proceeding on March 4, 2010, when Judge Isicoff discharged Plaintiff's debts (Ex.8 attached), are or should have been assets of the bankruptcy Trustee and Plaintiff lacks standing to seek those wages as those claims were not Plaintiff's to make.  11 U.S.C. § 541(a); *Barger v.*

- 14 -

Plaintiff clearly gained an advantage in the bankruptcy proceeding when he represented to be a "self-employed independent contractor" disc jockey making minimal income with periods of unemployment.  Without question, in the bankruptcy proceeding it served Plaintiff's personal interests to be "self-employed."  In contrast though, in the present lawsuit it serves Plaintiff's purpose to be a fully-employed employee of the Defendants.  Plaintiff's inconsistent positions, under oath, are calculated to make a mockery of the judicial system.  Plaintiff knew, when he filed the instant lawsuit, that he was now changing what he previously swore to under oath.  As such, Plaintiff should be judicially estopped from asserting the claims in the instant matter.  *See Dunn v. Advanced Medical Specialties, Inc.*, 2014 WL 503050 (11th Cir. 2014) (The U.S. District Court for the Southern District of Florida granted an employer summary judgment under the doctrine of judicial estoppel when the plaintiff brought labor violations against his former employer while at the same time seeking discharge of his debt through a Chapter 7 bankruptcy proceeding when plaintiff/debtor failed to disclose her prior lawsuit as a contingent asset of the bankruptcy estate).

The purpose of filing a petition under Chapter 7 of the bankruptcy code is to allow the debtor to obtain a discharge of the debts in exchange for allowing a trustee to collect and liquidate a debtor's assets.  *Burnes*, 291 F.3d at 1284 n. 1.  Indeed, creditors and the bankruptcy court rely on the accuracy of the information disclosed by the debtor in determining whether a discharge is appropriate.  *Id.* at 1286.  As the Eleventh Circuit stated in *Burnes*, *supra*, "the importance of full and honest disclosure cannot be overstated."  *Id.*  As such, when Plaintiff disclosed in his bankruptcy proceeding that he

---

*City of Cartersville, Georgia*, 348 F.3d 1289, 1292 (11th Cir. 2003); *Wieburg v. GTE Southwest, Inc.*, 272 F.2d 302, 306 (5th Cir. 2001).

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING ♦ 8821 S.W. 69TH COURT ♦ MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 ♦ FACSIMILE (305) 662-6164 ♦ www.mmlawmiami.com

CASE NO.:  13-cv-23429-Ungaro

was a self-employed independent contractor working as a DJ with periods of unemployment, and the real facts reveal that such was either untrue (he did receive substantial income) or convenient (it helped him to claim "independent contractor" status) those statements cannot be ignored by this Honorable Court.  Plaintiff new full well when he filed the instant FLSA lawsuit, claiming to be an employee, that he filed the previous bankruptcy action claiming to be self-employed.   Without question, Plaintiff's <u>intentional contradictions</u> were made for the self-interest of the Plaintiff and if allowed to stand, the Plaintiff is making a mockery of the judicial system by attempting to keep the assets of the instant matter for himself while discharging his debts to others in the previous bankruptcy proceeding.[11]

### Plaintiff's Federal Tax Returns for the Period of 2008 to 2012 Contradict the Claims Asserted in the Instant Matter and Justify Summary Judgment Based on the Doctrine of Unclean Hands

As with the doctrine of judicial estoppel set forth above, the Court must also examine the issue of the Plaintiff's unclean hands in the instant matter with regard to his testimony and representations made in his U.S. income tax returns filed during the wage claim years 2008 through 2012.

The U.S. Supreme Court, when discussing the clean hands doctrine, has stated: "He who comes into equity must come with clean hands."  Further, the Supreme Court has identified it as "A self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."   *Precision*

---

[11] Courts, when considering the applicability of the doctrine of judicial estoppel, do not focus on or consider the conduct, good or bad, of the Defendant but rather, focus on the individual who has utilized the judicial system for contrary purposes to obtain contradictory results, each favoring himself.  *Precision Instrument*, 324 U.S. 806, 65 S.Ct. at 814.

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

*Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-15, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945) ("The purpose of the maxim is not to protect the parties; rather, it is to safeguard the judicial process."); *Mas v. Coca Cola Co.*, 163 F.2d 505, 507 (4th Cir. 1947).  Moreover, the U.S. Supreme Court has stated "Tampering with the administration of justice … is a wrong against the institution set up to protect and safeguard the public, institutions in which fraud cannot be complacently be tolerated consistently with the good order of society."  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 332 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed 1250 (1944).

With regard to applying the doctrine of clean hands, the U.S. Supreme Court has stated "[t]he Court possesses full discretion in determining whether and how to apply the maximum upon learning that a plaintiff's hands are unclean."  *Precision Instrument*, 324 U.S. at 814, 65 S.Ct. at 997.  Accordingly, "Courts are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."  *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245-46, 54 S.Ct. 146, 148, 78 L.Ed. 293 (1933).  The Clean Hands Doctrine completely bars a plaintiff *in limine.  Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103 (USDC D. Maryland 1989).

The clean hands doctrine is applicable under the facts of this case. The questions asked of Plaintiff in deposition about his employment status and sources of income are not collateral matters in this FLSA case. Indeed, the central issue in this case is whether, under the Fair Labor Standards Act, Plaintiff is an employee or an independent contractor.  To make that determination, the Court must analyze and look to "the economic reality of the relationship."  *Kaplan v. Code Blue Billing & Coding, Inc.*,

2013 WL 238120 (11th Cir. 2013).   Accordingly, when Plaintiff asserts his 5th Amendment right against self-incrimination and refuses to answer questions concerning whether, from 2008 to 2012, he declared himself to be a self-employed individual on his U.S. tax returns, the defendants are shielded from establishing facts in support of the Plaintiff being an independent contractor and not an employee as he claims.   When Plaintiff asserts his 5th Amendment right against self-incrimination and refuses to answer questions concerning whether he claimed to be unemployed during the time period he now claims to have been employed (see Facts at ¶¶ 8-20 above) the defendants are shielded from establishing facts that support Plaintiff was an independent contractor and not an employee as he claims.   The Plaintiff's assertion of his 5th Amendment rights has shielded the defendants from establishing facts to exonerate itself from the charges being made by the Plaintiff in this case.

Moreover, when Plaintiff incredibly refuses to identify whether he receives income from multiple sources, as independent contractors regularly do, including from other employers via W2 wages or through the use of multiple social security numbers, (See Facts at ¶¶ 17, 18 above) Defendants are precluded from establishing facts that show the "economic realities" demonstrate that Plaintiff was indeed an independent contractor serving not one isolated employer but rather, his individual self-interest through multiple jobs and wage-earning opportunities.

As the Supreme Court in *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) held, this Court and a jury may draw adverse inferences from the 5th Amendment privilege asserted by Plaintiff to questions concerning the Plaintiff's income sources and earnings set forth on his U.S. tax returns for the purpose of ruling on this Motion and resolving

McLUSKEY & McDONALD, P.A.
THE BARRISTER BUILDING ♦ 8821 S.W. 69TH COURT ♦ MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 ♦ FACSIMILE (305) 662-6164 ♦ www.mmlawmiami.com

the issues of this case.  Certainly, it is Plaintiff's constitutional right to assert the 5th Amendment privilege; however, the Plaintiff cannot use the privilege as a shield to preclude Defendants and this Court from determining the true "economic realities" of the Plaintiff's relationship with the Defendants vis-à-vis his other means and methods of earning income from other sources.  Indeed, in the instant matter, the Plaintiff claims from 2008 to 2013 he was an employee of the Defendants and further that the Defendants were his sole source of income for those years.  (Rosario dep. at 37).  As such, Plaintiff claims that the "economic realities" of the Plaintiff's situation mandate that he be deemed as an employee of the Defendants.  The information set forth by plaintiff under penalties of perjury on the tax returns screams the opposite. The information set forth under oath in the Bankruptcy proceeding also proclaims the opposite.  At all times material hereto, Plaintiff by his own admission, was an independent contractor and so stated to the Internal Revenue Service and to the Bankruptcy Court of this very District (emphasis added).  In deposition in this matter as demonstrated above, Plaintiff steadfastly refused to answer questions about other sources of income and the reasons why he collected unemployment compensation.  These issues are substantial and not isolated and go the core of the Court's determination of employee or independent contractor in this FLSA case. See, *Martin v. NITV, LLC,* 2007 WL 1560202 (S.D. Fla 2007).

In *Martin v. NITV, LLC, supra,* the Plaintiff sued the Defendant for FLSA overtime hours allegedly worked by the Plaintiff.  The Court noted that the FLSA does not apply to independent contractors and therefore the Court must determine whether one is, as a matter of economic reality, an employee who is afforded the protections of the FLSA or

an independent contractor, who is not.  Citing *Rutherford Food Court v. McComb,* 331 U.S. 722, 728, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), the Court granted summary judgment for the Defendant.  The Court took note of the fact that the Plaintiff, as did the Plaintiff in the instant matter, classified himself as an independent contractor on his taxes and deducted substantial business expenses each year.  *Martin, supra* at pg. 2.

As mentioned above, the *Doctrine of Judicial Estoppel* and the *Clean Hands Doctrine* allows the Court to consider the totality of the circumstances of the case including the Plaintiff's under oath claims made in the prior Bankruptcy Proceeding and made on his federal tax return filings from 2008-2012.  There can be no question that the Plaintiff does not come to this Court with "clean hands" but rather is "tainted with inequitableness or bad faith relative to the matter in which he seeks relief."  *Precision Instrument*, 324 U.S. 806, 65 S.Ct. at 814.

Under the Judicial Estoppel Doctrine and Unclean Hands Doctrine, Plaintiff's claims should be barred and summary judgment for the Defendants entered.

### **Plaintiff's Claims are Barred, in Part, by the Applicable Statute of Limitations**

Under 29 U.S.C. § 255, a cause of action under the Fair Labor Standards Act for unpaid minimum wages and unpaid overtime as well as liquidated damages are barred unless commenced within two years after a cause of action accrues.  However, if a plaintiff can establish a willful violation by the defendant, the statute of limitations is extended to three years after a cause of action accrues.  A cause of action accrues when the Fair Labor Standards Act (FLSA) has been violated.  It is from the date that the employee was alleged to have been improperly paid a wage or overtime wage that the limitations period begins to run.  *Alvarez-Perez v. Sanford-Orlando Kennel Club,*

- 20 -

CASE NO.:  13-cv-23429-Ungaro

*Inc.*, 515 F.3d 1150, 1162 (11th Cir. 2008).  In the instant matter Plaintiff filed this cause of action on September 23, 2013.  (D.E. 1).  As mentioned earlier, Count I is for unpaid wages and Count II is for unpaid overtime wages.  Each Count is brought exclusively under federal law and neither Count of the Complaint references Florida Statutes or Florida's Wage Amendment.  As such, the federal statute of limitations applies and Plaintiff is only entitled to two years of unpaid wages from the date of filing of the lawsuit if Defendants' conduct is deemed not to be willful and three years if is willful.  Any damages claimed by the Plaintiff beyond the maximum of three years should be barred and partial summary judgment for the Defendants entered.  Alternatively, any claim years preceding Bankruptcy Judge Isicoff's discharge of the Plaintiff's debts on March 4, 2010 (Ex. 8) should also be precluded.  11 U.S.C. § 541(a); *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289, 1292 (11th Cir. 2003); *Wieburg v. GTE Southwest, Inc.*, 272 F.2d 302, 306 (5th Cir. 2001).

### Individual Defendants, Laura Insua and Manuel Insua are not Employers Under the FLSA nor Individually Liable for Retaliation

The facts in support of summary judgment for individual Defendants, Laura Insua and Manuel Insua are set forth above.  (See, Facts ¶¶ 2 and 3).

Based on the testimony, the undisputed facts and the law of the Eleventh Circuit, individual defendants, Laura Insua and Manuel Insua, are not considered "employers" with the meaning of 29 U.S.C § 207(a)(1) and should be granted summary final judgment. In *Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc,* 515 F.3d 1150 (11th Cir. 2008) referring to its earlier decision in *Patel v. Wargo*, 803 F. 2d 632 (11th Cir. 1986), the Eleventh Circuit said at page 1160 as follows:

**McLUSKEY & McDONALD, P.A.**
THE BARRISTER BUILDING ● 8821 S.W. 69TH COURT ● MIAMI, FLORIDA 33156
TELEPHONE (305) 662-6160 ● FACSIMILE (305) 662-6164 ● www.mmlawmiami.com

Our decision in *Patel* is instructive. There we held that the defendant, who was both the president and vice-president of a corporation, as well as a director and a principal stockholder, was not an employer for FLSA purposes. We reached that conclusion because he did not "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." *Id.* (internal quotation marks omitted); *see also Wirtz v. Pure Ice Co.,* 322 F.2d259, 263 (8th Cir.1963) (finding that a majority stockholder who visited the company only **1161** two or three times a year and "had nothing to do with the hiring of the employees or fixing their wages or hours" was not an employer under the FLSA). While acknowledging that the defendant in *Patel* could have, if he had chosen, played a greater role in the operations of the company, we focused on the role that he did play in concluding that he "lacked the operational control necessary for the imposition of liability as an 'employer 'under the FLSA." *Patel,* 803 F.2d at 638; *see also Wirtz,*322 F.2d at 262 ("There is little question from the record but what Thompson as the majority stockholder and dominant personality in Pure Ice Company, Inc., could have taken over and supervised the relationship between the corporation and its employees had he decided to do so. A careful reading of the record, however, indicates that he did not do so.")[12]

As in *Patel, supra,* Laura Insua is the President and sole stockholder of 12425 and like *Patel, supra,* she did not have "operational control of significant aspects of the company's day to day functions, including compensation of employees and other matters in relation to employees.  As such, she should be granted Summary Judgment.

Manuel Insua is neither an officer nor director of 12425, he is a consultant who has only been to the business no more than 10 times in 3-5 years. He does not run the day to day operations of the business or concern himself with payroll or employee related matters, unless asked by the General Manager, Heriberto Flores. Similarly, he

---

[12] See also, *Lamonica v. Safe Hurricane Shutters, Inc* 711 F.3d 1299 (11th Cir. 2013).

should be granted Summary Final Judgment as an individual defendant for Counts I and II.

The undisputed testimony is that neither Laura Insua nor Manuel Insua became aware that the Plaintiff was terminated on September 21, 2013 (two days before suit was filed) until after the fact. As such, they cannot be held personally liable for Retaliation against the Plaintiff as requested in Count III of the Complaint. They should be granted summary judgment. *See generally*, *Alvarez v. Royal Atlantic Developers, Inc*, 610 F.3d 1253 (11th Cir. 2010).

### **Plaintiff is not an Employee of the Defendant under the FLSA**

To determine, under 29 U.S.C. § 203, whether Plaintiff is an employee or an independent contractor, Courts look at the "economic reality" of the situation and analyze six factors, as set forth in *Schultz v. Capital Intern, Inc.* 466 F. 3d 298, 305 (4th Cir. 2006).  As discussed previously herein, Plaintiff refused to answer questions concerning other sources of income when he asserted the Fifth Amendment right against self-incrimination, during his deposition. Applying an adverse inference to his 5th Amendment assertions, along with the admissions Plaintiff made in his bankruptcy filings and with his tax returns, it is clear that plaintiff is an independent contractor and not an employee under the FLSA. Defendants should therefore be granted summary judgment.  Moreover, Plaintiff testified that his independent contractor work as a disc jockey had little impact on 12425 or its profitability.  (Fact at ¶ 8).

### **Summary**

The Defendants are entitled to summary Judgment as follows:

- 23 -

A.    As to all Counts for all Defendants based on the Doctrine of Judicial Estoppel and the Doctrine of Unclean Hands;

B.    The individual Defendants Laura Insua and Manuel Insua are entitled Summary Judgment as to all Counts because they are not considered an FLSA employer for Counts I and II and did not retaliate against the Plaintiff as alleged in Count III;

C.    Partial Summary Judgment as to Counts I and II based on the Statute of Limitations;

D.    Partial Summary Judgment for Counts I, II and III based Plaintiff's Standing to pursue damages that are assets of the Rosario bankruptcy estate; and

E.    All Defendants as to all Counts because the undisputed facts, when applied to the law, demonstrate that Plaintiff is not an employee under 29 U.S.C. § 203.

Respectfully submitted,

*David M. McDonald* /s/

David M. McDonald
Florida Bar No.: 613241
McLuskey & McDonald, P.A.
dmcdonald@mmlawmiami.com
Attorneys for Defendants
The Barrister Building
8821 S.W. 69th Court
Miami, FL 33156
(305) 662-6160 Telephone
(305) 662-6164 Fax

- 24 -

CASE NO.:  13-cv-23429-Ungaro

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the foregoing has been electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified herein in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing. Service as follows:   Peter Bober, Esquire, Bober & Bober, P.A., 1930 Tyler Street, Hollywood, FL 33020 peter@boberlaw.com samara@boberlaw.com on June 6, 2014.

*David M. McDonald /s/*

David M. McDonald
Florida Bar No.: 613241
McLuskey & McDonald, P.A.
dmcdonald@mmlawmiami.com
Attorneys for Defendants
The Barrister Building
8821 S.W. 69th Court
Miami, FL 33156
(305) 662-6160 Telephone
(305) 662-6164 Fax

- 25 -