**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:13-cv-23429-UU

MITCHELL ROSARIO,

      Plaintiff,

vs.

12425, INC., *et al.*,

      Defendants.

_____/

## ORDER ON SUMMARY JUDGMENT

THIS CAUSE is before the Court upon the parties' cross motions for summary judgment and partial summary judgment.  Plaintiff filed his Motion for Partial Summary Judgment, D.E. 63, on June 6, 2014.  Defendant filed its Response in Opposition, D.E. 82, on June 23, 2014. Plaintiff filed a Reply, D.E. 93, on July 3, 2014.  Defendants filed their own Motion for Summary Judgment, D.E. 62, on June 6, 2014.  Plaintiff filed his Response in Opposition, D.E. 79, on June 23, 2014.  Defendants filed their Reply on July 2, 2014, D.E. 92.  Accordingly, these Motions are ripe for disposition.

The Court has considered the Motions, and pertinent portions of the record and is otherwise fully advised of the premises.  For the reasons stated below, Defendants' Motion is DENIED and Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.  Plaintiff's Motion is GRANTED as follows: if Defendant Stir Crazy is found liable under the Fair Labor Standards Act ("FLSA"), then Defendant Heriberto Florez would be individually liable as an "employer" under the FLSA.

1

## **BACKGROUND**

Defendants move for summary judgment on four separate grounds:  (1) the doctrine of judicial estoppel precludes Plaintiff, a disc jockey at an exotic dance club, from now claiming he was an employee and not an independent contractor; (2) Plaintiff's claims are barred by the doctrine of unclean hands; (3) Plaintiff's claims are barred in part by the statute of limitations; and (4) Defendants Laura Insua and Manuel H. Insua are not employers under the FLSA and are therefore not individually liable.  Plaintiff moves for partial summary judgment on three separate grounds: (1) Plaintiff was an employee under the FLSA and not an independent contractor; (2) Defendant Florez was a FLSA employer and can be held individually liable; and (3) Defendants Stir Crazy and Florez retaliated against Plaintiff for asserting his FLSA and Florida Minimum Wage Act rights.

The parties are in disagreement regarding most facts in this case.  The few facts that are not in dispute are recited below.

Defendant 12425, Inc. is an adult exotic dance club that operates under the name Stir Crazy.  It has one location in Pinecrest, Florida.  D.E. 62 at 3.  Plaintiff Mitchell Rosario worked as a disc jockey ("DJ") at Stir Crazy from 2001 to September 21, 2013.  D.E. 64-1 at 134:24-135:1; D.E. 64-2 at 27:1-14.  Defendant Heriberto Florez is the general manager of Stir Crazy.  D.E. 64-1 at 22:1-6.  Defendant Manuel Insua owns the building that houses Stir Crazy.  D.E. 64-7 at 154:3-12.  Defendant Laura Insua is Defendant Manuel's mother; she owns Stir Crazy and is its president.  D.E. 64-6 at 9:9-11, 18:9-15, 23:13-23.

Plaintiff, like the other DJ's at Stir Crazy, was not paid wages by Defendants and was classified as an independent contractor.  D.E. 64-1 at 84:12-19.  When Plaintiff was the DJ

during a shift, every dancer performing during that shift paid Plaintiff a $10 service fee.  D.E. 64-2 at 86:15-87:9.  For every shift that he performed as a DJ, Plaintiff was required to pay a $25 house fee.  D.E. 64-1 at 253:16-18.  Plaintiff worked at least four shifts per week during the years he was a DJ at Stir Crazy.  D.E. 64-1 at 113:25-114:11.  Plaintiff was terminated from his employment at Stir Crazy on September 21, 2013, the same day he filed this lawsuit. D.E. 64-2 at 203:16-206:16.

In 2009, Plaintiff filed for bankruptcy.  D.E. 80-1 ¶ 1.  His bankruptcy lawsuit was pending from September 16, 2009, to March 4, 2010.  *Id.*  During his bankruptcy, he filed sworn declarations that he worked at Stir Crazy as an independent contractor. D.E. 62-2 at 20.  Plaintiff also represented on his tax returns during his employment at Stir Crazy that he was self-employed or unemployed. D.E.64-2 at 228:13-242:1.

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a sufficient showing to establish the

existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[1] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court

---

[1] Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

4

must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party.

*Liberty Lobby, Inc.*, 477 U.S. at 255.

## DISCUSSION

**I.      Defendants' Motion for Summary Judgment**

**A.      Judicial Estoppel**

Defendants argue that judicial estoppel precludes Plaintiff from asserting that he is an employee of Defendants because he stated he was self-employed during his bankruptcy proceedings.  Plaintiff responds that Defendants waived this defense by failing to include it in their Answer, and that this defense is inapplicable to the facts of this case.

"Judicial estoppel is an equitable doctrine invoked at a court's discretion."  *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).  This doctrine precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *Id.* (internal quotations omitted).  Judicial estoppel exists to prevent the perversion of the judicial process and "prevent parties from making a mockery of justice by inconsistent pleadings."  *Id.* (internal quotations and citations omitted).

The Eleventh Circuit has outlined two main factors to consider when applying judicial estoppel to a particular case: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system."  *Id.* (quoting *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)).  These factors are not "inflexible or exhaustive; rather, courts must always give due consideration to all of the

5

circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

### 1.    Waiver of Judicial Estoppel

Plaintiff argues that Defendants waived the affirmative defense of judicial estoppel because Defendants did not assert the defense in their Answer, nor did they list the defense in response to an interrogatory that asked for all facts and legal justifications for each and every affirmative defense.   Defendants respond that they did not become aware of the defense until Plaintiff's deposition on April 9, 2014, when Defendants learned that Plaintiff had previously filed for bankruptcy.   Defendants then ask the Court to treat their Motion for Summary Judgment as a motion to conform the pleadings and allow Defendants' defenses to conform to the evidence obtained during Plaintiff's deposition.

Under Federal Rule of Civil Procedure 8(c), a defendant "intending to assert an affirmative defense must raise it in a responsive pleading, and failure to do so typically results in a waiver of the defense." *Edwards v. Fulton Cnty, Ga.*, 509 F. App'x 882, 887 (11th Cir. 2013). The Eleventh Circuit applies a liberal approach to waiver under Rule 8(c) and will allow a defendant to assert an affirmative defense if the "earlier omission from responsive pleadings does not prejudice the plaintiff." *Id.*  The "omission of an affirmative defense in responsive pleadings does not prejudice a plaintiff when the defendant first raises the defense in a pretrial motion or discussion and the subject matter of discovery suggests that the defendant will rely on the defense." *Id.* (citing *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1321 n.4 (11th Cir. 2006)).

The Court finds that Defendants have not waived the defense of judicial estoppel. Defendants first raised the defense of judicial estoppel in their Motion for Summary Judgment,

which gave Plaintiff sufficient opportunity to respond to the defense.  Plaintiff asserts that he is

"literally left to guess what the Defendants arguments for estoppel are," but this is untrue.

Defendants outlined their arguments for estoppel in their Motion and Plaintiff, who obviously

has knowledge of the facts and circumstances that led him to represent his status as an

independent contractor, has provided a lengthy and cogent response to these arguments,

supported by his own affidavit.  Further, Plaintiff was aware of Defendants' intention to discover

information relating to his past finances as they even filed a motion to compel production of tax

returns.  *See* D.E. 27.  Simply stated, Plaintiff has suffered no prejudice.  *See Edwards*, 509 F.

App'x at 887-88 (affirming district court's finding that the defendants had not waived affirmative

defense).

### 2.     Inconsistent Positions Calculated to Make a Mockery of the Judicial System

Plaintiff argues that he did not have the requisite intent to make a mockery of the judicial

system.

"For purposes of judicial estoppel, intent is a purposeful contradiction - not simple error

or inadvertence."  *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1294 (11th Cir. 2003).

"Deliberate or intentional manipulation can be inferred from the record, where the debtor has

knowledge of the undisclosed claims and has motive for concealment."  *Id.*

For Defendants to prevail, they must demonstrate that there is no genuine issue of

material fact that Plaintiff took the inconsistent position that he was an independent contractor in

his bankruptcy proceeding with the deliberate intent to mock the judicial system by later arguing

in his FLSA case that he was not an independent contractor.  Defendants have not met this

burden and Plaintiff has shown there is a genuine issue of material fact regarding whether he had

7

the deliberate intent to undermine the integrity of the judicial system.

Plaintiff submits an affidavit declaring that he was unaware of his ability to be treated as an employee under federal laws at the time of his bankruptcy proceedings.  D.E. 80-1 ¶ 1.  He explains that he was told by Stir Crazy that he was an independent contractor, and was asked to sign an agreement stating he was an independent contractor.  *Id.*  Plaintiff declares that he did not realize he might have a wage claim arising under FLSA until after he spoke with a fellow DJ in late 2013.  *Id.*  The Court can reasonably conclude from this affidavit that Plaintiff was unaware that he could be considered an employee of Defendants until years after his bankruptcy proceedings ended.  As such, he did not deliberately take an inconsistent position with the intent to subvert the judicial system.

In the *Jackson* case cited by Plaintiff the plaintiff also failed to disclose a potential FLSA claim during bankruptcy proceedings.  *See Jackson v. Advanced Disposal Servs., Inc.*, No 207-cv-774, 2008 WL 958110 (M.D. Fla. Apr. 8, 2008).  The court in *Jackson* found that judicial estoppel did not prevent plaintiff from pursuing his FLSA claim because the plaintiff filed his FLSA lawsuit two and a half years after filing for bankruptcy, and submitted an affidavit stating he was unaware that he had a potential FLSA claim until after he filed bankruptcy disclosures.  *Id.* at *3.  The court found that the earliest date plaintiff could have been aware of his FLSA claim was the date he instituted the lawsuit, which was two years after filing bankruptcy disclosures.  *Id.*  Here, similarly, Plaintiff was unaware of his potential status as an employee, which would give him the right to pursue a wage claim, until three years after his bankruptcy proceeding concluded.

The cases finding that judicial estoppel precludes a plaintiff from pursuing a FLSA or

other employment claim after making inconsistent statements during bankruptcy proceedings arise when a plaintiff files a FLSA lawsuit prior to or during the plaintiff's bankruptcy proceeding.  *See Barger*, 348 F.3d at 1294-95; *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1287-88 (11th Cir. 2002). A plaintiff's failure to disclose a pending lawsuit to the bankruptcy court is sufficient to infer intent to make a mockery of the judicial system.  That is a far cry from Plaintiff's conduct here, which  reasonably can be interpreted as confusion as to the complex legal concept of "employee" status under the FLSA.

### B.    Unclean Hands

Defendants also argue that the doctrine of unclean hands bars Plaintiff's lawsuit based on Plaintiff's conduct during discovery.  Specifically, Defendants contend that Plaintiff's invocation of his Fifth Amendment rights during his deposition regarding entries on his tax returns stating he was "self employed" or "unemployed" and whether he declared all sources of income and business deductions undercut his claim that he was an "employee."  Plaintiff responds that (1) Defendants waived this affirmative defense; (2) the doctrine does not apply in FLSA cases; and (3) Defendants have failed to establish the elements of unclean hands for Plaintiff's claims.

Unclean hands is an equitable doctrine giving a court broad discretion to refuse aid to a litigant that comes to the court "tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).  A defendant must satisfy two requirements to invoke the doctrine of unclean hands:  "First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. . . .  Second, even if directly related, the plaintiff's wrongdoing does not bar

9

relief unless the defendant can show that it was personally injured by her conduct." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 451 (11th Cir. 1993) (internal citations omitted).

### 1.    Waiver of Unclean Hands

For the same reasons explained above regarding waiver of judicial estoppel, Defendants have not waived the defense of unclean hands.

### 2.    Applicability of Unclean Hands to FLSA Cases Generally

Plaintiff argues that the doctrine of unclean hands should not apply to FLSA cases because it would result in an impermissible waiver of FLSA rights.  As Plaintiff recognizes, the Eleventh Circuit has not determined whether this defense cannot be applied to FLSA cases.  It is unnecessary for the Court to reach this argument because the Court finds that Defendants have not met their burden to show that the doctrine of unclean hands bars Plaintiff's claim.

### 3.    Doctrine of Unclean Hands Does Not Bar Plaintiff's Claims

Defendants are arguing that Plaintiff committed misconduct "with regard to his testimony and representation made in his U.S. income tax returns filed during the wage claim years 2008 through 2012."  D.E. 62 at 16.  Defendants also seem to assert that Plaintiff committed misconduct by invoking his Fifth Amendment right against self-incrimination when asked about statements on his tax returns.  Defendants argue that their injury is their inability to obtain testimony and other information that would allow them to establish that Plaintiff is an independent contractor.  Defendants have not cited a single case that supports their position.

The facts and law do not support Defendant's argument that the doctrine of unclean hands bars Plaintiff's claims.  First, it is not clear that Plaintiff has committed misconduct of a nature and degree that would warrant dismissal by either representing that he was self-employed on his

tax returns based on his then-held belief that he was an independent contractor, or by invoking his Fifth Amendment rights during his deposition regarding the preparation of his tax returns with respect to matters not directly related to his claims, i.e., his other sources of income, deductions of business expenses, and fraudulent use of other persons' social security numbers. *See In re Kingsley*, 518 F.3d 874, 878 (11th Cir. 2008) ("We have noted that the equitable doctrine of unclean hands provides that one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness will appeal in vain to a court of conscience." (internal quotations omitted)). Second, Defendants have not clearly shown how they have been personally injured by any alleged misconduct. Defendants have been able to seek discovery on Plaintiff's claims that he is not an independent contractor by obtaining Plaintiff's tax returns during discovery and receiving answer to some questions regarding his tax returns at his deposition. *See* 64-2 at 228:5-15, 232:6-233:6. As such, Defendants' Motion will be denied as to the defense of unclean hands.[2]

### C.   Statute of Limitations

Defendants argue that the statute of limitations bars Plaintiff's overtime and minimum wage claims that arose more than three years prior to the date the lawsuit was filed. This argument appears to be based on a mistake regarding the operative Complaint. D.E. 92 at 3 n.1. This argument ignores Plaintiff's Florida Minimum Wage claims that have a four year statute of limitations, which is extended to five years where there is a willful violation. *See* Fla. Stat. § 95.11. As such, Plaintiff can pursue minimum wage claims arising under Florida's Minimum

---

[2]The Court will more fully address Plaintiff's invocation of his Fifth Amendment and how it may be used at trial in its order on the parties' motions in limine.

11

Wage Act dating back to September 23, 2008.  Plaintiff may not pursue any claims for either minimum wage or overtime pay that arise under the FLSA prior to September 23, 2010.

### D.  Liability of Defendants Laura Insua and Manuel H. Insua

FLSA creates a private right of action against any employer who violates its minimum wage provision.  29 U.S.C. § 216(b).  An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Id.* § 203(d). For an individual to be held liable as an employer, the individual "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (internal quotations omitted).  To support individual liability, "there must be control over significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1314 (11th Cir. 2013) (internal quotations and citations omitted).

Defendants argue that there is no genuine issue of material fact that Laura Insua and Manuel Insua did not exercise the requisite control over Stir Crazy's daily operations to be held liable under FLSA. There are, however, a number of factual disputes that warrant denying Defendants' Motion regarding Laura Insua's and Manuel Insua's status as employers.

The corporate witness and general manager of Stir Crazy, Heriberto Florez, testified that he reports to Laura Insua, her son Manuel H. Insua, and her husband, Manuel Insua ("Manuel Insua, Sr."). D.E. 64-1 at 39:6-40:18.  He admitted that they discuss "how to make the business better." *Id.* at 40:20-25.  The Insuas receive reports about the weekly sales that summarizes the money coming into the club. *Id.* at 42:16-43:11.  They discuss the number of girls working, *id.* at

12

48:6-15, and whether the dancers should be on payroll, *id.* at 57:6-20. Florez meets with the

Insua family whenever is necessary and stated he was their "right hand" in managing the

business. *Id.* at 53:8-54:3, 55:4-24. Without going through every submitted deposition

transcript, these statements alone raise a genuine issue of material fact as to whether Laura Insua

and Manuel H. Insua can be held liable under FLSA based on their control over Stir Crazy's day-

to-day functions.

**II.**     **Plaintiff's Motion for Summary Judgment**

    **A.**     **Employee of Stir Crazy**

The FLSA imposes a minimum wage requirement for covered employees. 29 U.S.C. §

206. The first question is therefore whether a person is considered an "employee" entitled to

protection under the FLSA. *See Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1318 (S.D.

Fla. 2001). The determination of whether someone is an "employee" is a question of law, with

the subsidiary findings being issues of fact. *Patel v. Wargo*, 803 F.2d 632, 634 n.1 (11th Cir.

1986).

The FLSA does not define the limits of the employer-employee relationship. *Rutherford*

*Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). Because the FLSA is a remedial statute,

courts apply an expansive definition of "employee." *Usery v. Pilgrim Equipment Co.*, 527 F.2d

1308, 1311 (5th Cir. 1976). "The common law concepts of 'employee' and 'independent

contractor' have been specifically rejected as determinants of who is protected by the Act." *Id.*

The labels that parties put on the relationship is not determinative, nor is it relevant whether the

parties intended to create an employment relationship. *Rutherford Food*, 331 U.S. at 729;

*Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981). The Court looks to the "economic

realities" of the underlying relationship based on the "circumstances of the whole activity."

*Rutherford Food*, 331 U.S. at 727, 730.

The Eleventh Circuit has adopted several factors that help guide the Court's

determination of whether an individual is an employee or independent contractor:

> "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship;
> (6) the extent to which the service rendered is an integral part of the alleged employer's business."

*Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 783 (11th Cir. 2006). Fact issues preclude

granting summary judgment that Plaintiff is an employee of Defendants.

### 1.     Degree of Control

Plaintiff argues that Defendants exercised significant control over his work based on, but

not limited to, the following pieces of evidence: (1) DJ's were told to promote certain upcoming

events over the microphone during their shifts, D.E. 64-7 at 101:5-8; (2) DJ's were told to find

another place to work if they broke club rules, *id.* at 106:1-4; (3) managers sent text messages to

DJ's if a DJ was needed for a particular shift, D.E. 64-4 at 141:12-142:2; (4) managers gave final

approval for the DJ's schedules, *id.* at 116:9-14; (5) managers met with DJ's about the type of

music being played, and how DJ's should promote the club, *id.* at 117:11-118:11; D.E. 64-1 at

155:10-20; (6) DJ's emailed Manuel H. Insua regarding the number of dancers on a shift and

when the dancers arrived, D.E. 64-1 at 191:15-192:2; and (7) DJ's were told to call dancers to the

stage in the order the dancers arrived at work, and were only allowed to play two songs per

dancer, D.E. 64-5 at 59:16-22; D.E. 64-4 at 107:17-108:25.

In opposition to Plaintiff's argument, Defendants point to evidence of the following: (1) the club was uninvolved with a DJ's song selection 90-95% of the time and left song choice decisions to the dancers and DJ's, D.E. 64-1 at 150:16-22; (2) the DJ's do their own scheduling and find substitutes to cover any shift they were unable to work, *id.* at 32:4-33:13, D.E. 64-4 at 19:8-20:24; and (3) DJ's were not required to check in with the manager when they showed up to work, D.E. 64-8 at 153:11-18. Defendants also cite to Andrew Garces' testimony, a fellow Stir Crazy DJ, to analogize Stir Crazy's requirements for its DJ's to the requirements for a DJ hired to perform at an anniversary party or a wedding. *Id.* at 148:9-149:21. Although not relied on by Defendants, there was also evidence that Stir Crazy DJ's could work at other night clubs, D.E. 64-1 at 221:10-222:17, and could operate their own DJ business for private parties, D.E. 64-4 at 7:6-8:4, 22:6-18.

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Usery*, 527 F.2d at 1312-13. Defendants have presented sufficient evidence that raises a genuine issue of material fact as to whether they exercised significant control over Plaintiff. Viewed in the light most favorable to Defendants, Plaintiff had the ability to stand as a separate economic entity by making his own schedule, working as a DJ at other events and for other night clubs, and controlling the music during his shift.

## 2.     Opportunity for Profit or Loss

Plaintiff argues that his opportunity for profit or loss was predetermined by management. Plaintiff was required to pay $25 per shift to the club, and each dancer was required to pay

Plaintiff $10 per shift. D.E. 64-2 at 86:15-87:9; D.E. 64-1 at 253:16-18.  Plaintiff's managers controlled how much Plaintiff earned because they controlled the number of dancers working on each shift, and they set the fee the dancers paid to Plaintiff.  D.E. 64-1 at 49:14-50:2, 202:7-11, 207:8-208:5.  Plaintiff also points to evidence that Stir Crazy controlled the number of customers in the club and therefore exercised a high degree of control over the opportunity for profit and loss.  *Id.* at 188:13-189:1.

Defendants respond by arguing that Plaintiff made extra money by offering dancers the opportunity to move forward in the stage rotation in exchange for extra money.  *Id.* at 319:12-320:2.  Defendants also contend that Plaintiff's argument is flawed because the dancers and DJ together operate a separate "business within a business," meaning that the club's profits from liquor sales are entirely separate from any business that he has as a DJ.

In the cases cited by Plaintiff, night clubs are found to control the exotic dancers' opportunity for profit and loss because the amount of tips received by the dancers is directly correlated to the customer volume on a given night, which is controlled by the night club.  *See Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993) ("But Circle C has a significant role in drawing customers to its nightclubs. The district court recognized that Circle C is responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food."); *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1345-46 (N.D. Ga. 2011).  Plaintiff's income and opportunity for profit, however, is not tied to customer volume.  It is partially controlled by how many dancers Stir Crazy schedules for a particular night, but it is also controlled by his own negotiations with the dancers, and by his skill as a DJ.  *See* D.E. 64-1 at 202:25-203:1 ("Mitch, he is a good DJ, they gave him more than $10,

16

$15 every night.").  Therefore, there is a question of fact as to how much Defendants controlled Plaintiff's opportunity for profit or loss.

### 3.      Investment in Materials or Equipment

Plaintiff points to the following evidence to argue that Defendants made significantly more investments in the materials and equipment: (1) Stir Crazy owned the DJ sound booth and sound booth computer, D.E. 64-5 at 57:5-58:7; (2) Stir Crazy supplied the equipment used by the DJ, including a sound mixing board, microphone amplifier, equalizer and speakers, etc., D.E. 64-1 at 175:2-13; (3) Stir Crazy paid the licensing fees for the music played in the club, and provided the songs to be played on the house computer, *id.* at 169:11-170:17; (4) Stir Crazy spent $10,000 to rewire the sound system and renovate the music equipment, *id.* at 173:12-174:20; and (5) Stir Crazy paid for all other bills related to the business, such as cleaning bills and utility bills, *id.* at 35:17-36:19.

Defendant responds that Plaintiff invests in the equipment by paying a $25 fee per shift, which, Defendant argues, is a rental fee for the DJ booth and equipment.  Defendant also points to testimony from a fellow Stir Crazy DJ who brought his own laptop and microphone to use at the club, D.E. 64-8 at 144:12-25, and points to Plaintiff's own testimony that he would sometimes bring a laptop and microphone as a backup if Stir Crazy's equipment was not working, D.E. 64-2 at 93:17-94:3.

This factor weighs in Plaintiff's favor.  Defendants provided, repaired, and owned all the equipment used by the DJ's at their club.  Defendants also paid all other expenses related to the club's operation, such as liquor licenses, utility bills, and music licensing fees.  Although he could bring his own laptop as an optional backup if the club's equipment was not working, it is

undisputed that Plaintiff could show up at the club with nothing and be able to perform his job. D.E. 64-1 at 175:22-176:15.  The $25 house fee does not raise a genuine issue of material fact as to Plaintiff's relative investment.  This house fee is not a DJ's investment; it is a source of income for the club that helps offset repair costs.  The DJ does not receive anything in return for paying the house fee, except the ability to temporarily use Stir Crazy's equipment.  The DJ does not get a share in Stir Crazy's equipment, and when a DJ stops working at Stir Crazy, he does not have the ability to take any equipment with him.  D.E. 64-4 at 78:11-22.  Accordingly, Defendants' investment was significantly more than Plaintiff's.

### 4.    Special Skill

Plaintiff argues that being a DJ requires no special skill based on the following evidence: (1) a DJ's work consisted of playing music, announcing dancers in a pre-determined rotation, and announcing drink specials and party promotions, D.E. 64-1 at 166:20-167:22; (2) there was no special license or degree to be a DJ, *id.* at 310:3-5; (3) Plaintiff had no DJ experience prior to being hired, D.E. 64-2 at 52:2-13; and (4) the club's bouncer once substituted as a DJ, D.E. 64-1 at 176:16-177:10.  Defendants rely on testimony from Mr. Garces to argue that DJ's had an expertise in reading a crowd, and that a DJ functioned as the "Master of Ceremonies" inside the night club.  D.E. 64-8 at 140:6-11, 204:4-23.

"Routine work which requires industry and efficiency is not indicative of independence and nonemployee status."  *Usery*, 527 F.2d at 1314.  "[E]ven if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion."  *Molina v. South Fla. Exp. Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1286 (M.D. Fla. 2006).

18

There is a genuine issue of material fact as to whether Plaintiff had a special skill. Although there is evidence that Plaintiff required little training for the job and was hired without any prior experience, there is also evidence that being a good DJ required knowing current music, being able to read a crowd, and keeping the energy at the club at a high level.  *See* D.E. 64-4 at 13:4-20; D.E. 64-8 at 204:4-205:5.  Mr. Florez testified that although a bouncer did substitute as a DJ for one shift, he was a bad DJ.  D.E. 64-1 at 176:20-177:10.  There is also testimony from Mr. Garces that a DJ could take his DJ skills and work independently at different events, for example at weddings.  D.E. 64-8 at 138:4-11.  Joe Roppo, another Stir Crazy DJ, also testified that he performs as a DJ at weddings and birthday parties.  D.E. 64-4 at 22:7-18.  Based on this evidence, there are factual issues as to this factor.

### 5.   Degree and Permanency and Duration of Working Relationship

The parties do not dispute that Plaintiff worked for Stir Crazy for twelve years, and worked at least four shifts each week.  Defendants' only argument against this factor weighing in Plaintiff's favor is that Plaintiff pleaded the Fifth Amendment during his deposition in response to questions related to his "employment status and sources of income."  D.E. 82 at 13.  This argument is irrelevant given the undisputed length and consistency of Plaintiff's employment. Accordingly, this factor weighs in Plaintiff's favor.

### 6.   Service Rendered Is an Integral Part of the Business

The factor supports an individual being an "employee" where the individual performed a service that is integral to the employer's business.  Plaintiff's argument is a fairly logical one: Stir Crazy is an exotic dance club, the customers come to watch women dance, the dancers require music to dance, and Stir Crazy requires that the DJ provide the music.  Defendants'

19

argument is that the parties intended to create an independent contractor relationship and not an employer/employee relationship. How the parties define their relationship is, however, irrelevant to whether an individual is actually an employee. *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). Defendants also rely on Plaintiff's testimony that he had little impact on the profitability of the liquor sales at the bar, D.E. 64-2 at 83:21-24, to argue that he did not provide an integral service.

This factor weighs in Plaintiff's favor. Stir Crazy's business is based on customers attending the club to watch exotic dancers dance to music played by DJ's. There is no dispute that the DJ's service is required for the club to properly operate. It does not matter that he did not contribute to profitability of the liquor sold. *Cf. Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 921 (S.D.N.Y. 2013) ("No reasonable jury could conclude that exotic dancers were not integral to the success of a club that marketed itself as a club for exotic dancers.").

### 7.    Conclusion

Because fact issues remain as to the first, second, and fourth factors, the Court cannot grant Plaintiff's Motion. These fact issues are centered around how economically dependent Plaintiff was on Defendants. "The Act is designed to protect individuals whose employment status is so dependent on the whims of the employer as to make them submissive to an employer's notion of fair compensation for their labor." *Usery*, 527 F.2d at 1315. Here, there is evidence that Plaintiff was not economically dependent on Defendants' whim.

### B.    Heriberto Florez's Liability

The parties do not dispute that, should Stir Crazy be found liable to Plaintiff under the FLSA, Heriberto Florez would be individually liable as an employer because he is involved in

the day to day operations of Stir Crazy.  *See Lamonica v. Safe Hurricane Shutters*, 711 F.3d 1299, 1313 (11th Cir. 2013).  Accordingly, the Court will grant summary judgment for Plaintiff as to this issue.

### C.    Retaliation Claims

For the reasons stated above, the Court is unable to grant summary judgment as to Plaintiff's retaliation claims because questions of fact remain as to his status as an "employee." For the purposes of its analysis as to Plaintiff's retaliation claims, the Court will assume that Plaintiff is an employee covered by the FLSA, and determine if there are any remaining factual issues.

The FLSA prohibits an employer from discharging or in any other manner discriminating against "any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  A retaliation claim under the FLSA requires Plaintiff demonstrate three elements: (1) he "engaged in activity protected under the act"; (2) he "subsequently suffered adverse action by the employer"; and (3) "a causal connection existed between the employee's activity and the adverse action."  *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (internal quotations and citations omitted).  The parties do not dispute that Plaintiff engaged in protected activity and was terminated after filing his lawsuit.  The dispute centers around whether there is a causal connection between the two.

To show causation, "the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights."  *Id.* at 134.  Defendants argue that Florez did not know the basis for Plaintiff's lawsuit when he terminated their relationship, and that Florez

reached out to Plaintiff to reinstate him a few days after his termination.  Plaintiff concedes that

this would create a dispute of fact.  Plaintiff therefore asks the Court to pick apart Florez's

deposition testimony.  Plaintiff argues that Florez "confirmed on two separate occasions at []his

deposition that he knew the Plaintiff had complained about his overtime and minimum wages

prior to terminating the Plaintiff," and that it was only in response to "subsequent leading

questions by defense counsel" that Florez stated he did not know the nature of Plaintiff's claims.

D.E. 93 at 10.

Florez's testimony is inconsistent and a little confusing.  Florez stated that he was aware

of the substance of Plaintiff's claim in response to leading questions:

> "Q: The secretary had left a message about Mr. Rosario's attorney writing a letter
> about overtime and minimum wage; correct?
> A: Correct."

D.E. 64-1 at 271:6-9.  Counsel questioning Florez kept interjecting that Plaintiff had made a

claim for overtime and minimum wage in his questions, *id.* at 266:9-12, 270:23-24, 274:12-14,

284:10-13, 286:14-16, but Florez himself never states that he was aware of the substance of

Plaintiff's claims.  Instead, Florez stated:

> "Q: Was the first thing that you told Manny when you got on the phone with him
> that Mitch had threatened a lawsuit for minimum wages and overtime?
> A: At that moment I don't know what was about, just that Mitch is suing us.
> Because that was Saturday night and I only had a call from the secretary, I don't
> know the details, so I don't have - I don't have - I don't have it my hand, the
> complaint."

*Id.* at 283:21-284:4.  Florez then denied knowing the substance of Plaintiff's claims when

questioned by his attorney.  *Id.* at 329:4-330:20.  Thus, determining whether there is a causal

connection between Plaintiff's FLSA lawsuit and his termination requires weighing Florez's

credibility and choosing between his conflicting testimony.  The Court cannot do that on a

motion for summary judgment.  *See Anderson*, 477 U.S. at 255; *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).  Accordingly, summary judgment as to this issue is inappropriate

## **CONCLUSION**

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment, D.E. 62, is DENIED.  It is further

ORDERED AND ADJUDGED that Plaintiffs' Motion for Partial Summary Judgment, D.E. 63, is GRANTED IN PART and DENIED IN PART.  It is granted as follows: if Stir Crazy is found liable under the FLSA, then Defendant Heriberto Florez would be individually liable because he has control over the day-to-day operations of Stir Crazy.  The Motion is otherwise denied.

DONE AND ORDERED in Chambers at Miami, Florida, this __ day of July, 2014.

_____

UNITED STATES DISTRICT JUDGE

Copies to: counsel of record