MITCHELL ROSARIO,

    Plaintiff,

vs.

12425, INC., *et al.*,

    Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS IN LIMINE

THIS CAUSE is before the Court on the parties' Motions in Limine. D.E. 72, 73, 74. Defendants filed a Motion in Limine to Exclude Evidence of Salary, D.E. 72. Plaintiff has responded, D.E. 85, and Defendant has filed a Reply, D.E. 91. Defendants also filed a Motion in Limine for the Court to take judicial notice of Plaintiff's bankruptcy proceedings, D.E. 73. Plaintiff has filed a Response, D.E. 86, and Defendant has filed a Reply, D.E. 90. Plaintiff filed a Motion in Limine, D.E. 74. Defendants filed a Response, D.E. 87, and Plaintiff has filed a Reply, D.E. 96. Accordingly these matters are ripe for disposition.

THE COURT has considered the Motions and pertinent portions of the record, and is otherwise fully advised of the premises. For the following reasons, Defendants' Motions in Limine are DENIED, and Plaintiff's Motion in Limine is GRANTED IN PART AND DENIED IN PART.

**I.    Defendant's Motion in Limine to Exclude Evidence of Salary**

Defendant seeks to exclude evidence regarding the salaries paid to the individual Defendants as well as all other employees, including managers under Federal Rules of Evidence 402 and 403. Defendants argue that the paycheck amounts will not tend to prove or disprove the

issue of whether Plaintiff is an employee or an independent contractor. Plaintiff argues that this evidence is admissible to show that Defendants Laura Insua, Manuel H. Insua, and Heriberto Florez exercise significant control over 12425, such that they can be held individually liable. Plaintiff makes no argument as to any other employee.[1]

To impose individual liability on Defendants Laura Insua and Manuel H. Insua, there must be evidence of "control over significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1314 (11th Cir. 2013). In *Lamonica*, the Eleventh Circuit reasoned that the "fact that Heidelberger and McCarroll each owned a substantial percentage of the corporation suggests that they had control over its financial affairs and supports a finding of personal liability." *Id.* at 1313. Similarly, the salary amount an individual receives could be indicative of that individual's control over the company's operation. Therefore, the Court finds that the salaries paid the individual Defendants is probative of their employer status and the Motion is denied as to evidence of their salaries. However, the Motion is granted as to all other employees because Plaintiff does not oppose Defendants' Motion in Limine to that extent.

## II. Defendants' Motion for the Court to Take Judicial Notice

Defendants ask the Court to take judicial notice under Federal Rule of Evidence 201 as to the filings in the Federal Bankruptcy proceedings brought by Plaintiff in 2009. It is unclear what,

---

[1] Plaintiff states he does "not intend at this point to elicit testimony regarding the amount of wages paid to managers other than Florez, security staff, bartenders, and maintenance workers." D.E. 85 at 3.

exactly, Defendants are asking the Court to do because Rule 201 relates to judicial notice of adjudicative facts. The Court interprets Defendants' Motion as a request to take judicial notice of adjudicative fact of statements in Plaintiff's bankruptcy filings that he is "self-employed" and lists his home address as the place of employment. *See* D.E. 62-2 at 20; D.E. 73-1. The Court will take judicial notice as to the fact that these statements exist in Plaintiff's bankruptcy proceedings. Whether or not he was actually self-employed and whether these statements are admissions against party interest is, however, for the jury to decide. *See In re Steeley*, 243 B.R. 421, 428 n.10 (N.D. Ala. 1999) (even where a court takes judicial notice of certain records, the court "may not infer the truth of all facts in the documents contained in those records").

## III. Plaintiff's Motion in Limine.

Plaintiff seeks to exclude seven categories of testimony and evidence: (1) testimony about the custom in the adult entertainment industry to treat its workers as independent contractors; (2) disputed testimony regarding Plaintiff's alleged drug use and drug sale at Defendants' club; (3) Plaintiff's tax returns; (4) testimony about Plaintiff's deposition responses to questions about multiple social security numbers; (5) testimony regarding Plaintiff asserting his Fifth Amendment right at his deposition regarding unemployment compensation on his tax returns; (6) evidence of the Plaintiff's financial difficulties, including his bankruptcy and foreclosure; and (7) testimony that Plaintiff briefly worked as a mortgage broker prior to the liability period.

### 1. Adult Industry Custom

Plaintiff argues that evidence of adult entertainment industry custom to treat DJ's as independent contractors should not be introduced because it is irrelevant as to the issue of whether Plaintiff is an independent contractor or an employee. Defendants respond that industry

3

custom is relevant for the purposes of determining whether Defendant willfully violated the FLSA, which would extend the statute of limitations for Plaintiff's FLSA claims from two years to three years. Plaintiff replies that Defendants waived the affirmative defense of no willful violation, and that industry custom is also irrelevant to the issue of willfulness.

The statute of limitations for FLSA claims is two years, but is extended to three years for willful violations of the FLSA. 29 U.S.C. § 255(a). The Eleventh Circuit has held that "the § 255(a) statute of limitations is 'an affirmative defense which must be specifically pled.'" *Navarro v. Santos Furniture Custom Design, Inc.*, 372 F. App'x 24, 26 (11th Cir. 2010) (quoting *Day v. Liberty Nat'l Life Ins. Co.*, 122 F.3d 1012, 1015 (11th Cir. 1997). Defendants did put Plaintiff on notice that they would be raising a statute of limitations defense based on no willful violation of the FLSA in their Motion for Summary Judgment. Defendants stated: "As such, the federal statute of limitations applies and Plaintiff is only entitled to two years of unpaid wages from the date of filing of the lawsuit if Defendants' conduct is deemed not to be willful and three years if is willful." D.E. 62 at 21. Plaintiff also responded to this defense in his response to Defendants' motion for summary judgment. *See* D.E. 79 at 9-10. In his response, Plaintiff points to many pieces of evidence, demonstrating that he is able to rebut Defendants' argument that any FLSA violation was not willful. Because Plaintiff was aware that Defendants intended to rely on this affirmative defense, and has been able to rebut this defense, Plaintiff will not be prejudiced if Defendants are allowed to rely on the statute of limitations and therefore, the Court declines to find the affirmative defense has been waived. *See Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989).

Many courts have held that evidence of industry custom alone is insufficient to demonstrate good faith as a matter of law. *See Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 910 (3d Cir. 1991) ("In lieu of any affirmative attempt by an employer to determine the legality of its wage payment practices, the employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation."). These courts have not addressed, however, whether or not this evidence is at all relevant to the inquiry of good faith. As the court in *Wajcman* noted: "Although the Court acknowledges that an employer's reliance on industry practice may be relevant to a willfulness or good faith inquiry, this Court does not believe that an employer can rely primarily on the practices of others in its industry to demonstrate a reasonable belief that certain conduct conforms with the FLSA." *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1361 (S.D. Fla. 2009). Accordingly, although industry custom alone cannot establish good faith, Defendants may present competent evidence of industry custom along with any other evidence of good faith.

### 2. Plaintiff's Alleged Drug Use

Plaintiff seeks to exclude testimony regarding an alleged incident involving marijuana use and sale while working at the club because it is irrelevant or overly prejudicial. Defendants respond that this evidence is relevant because Plaintiff cited it in his statement of undisputed facts, D.E. 64, to show that Defendants exercised the type of control over Plaintiff to indicate that he was an employee, and not an independent contractor. Plaintiff responds that even if he was

suspended or ordered to attend Responsible Vendor meetings, the reason behind such a suspension is not relevant to any issue in this case.

Defendant Heriberto Florez testified that he caught Plaintiff with marijuana in the DJ booth, suspended Plaintiff for a few days, and made Plaintiff attend a Responsible Vendors meeting. D.E. 64-1 at 240:6-241:3. Florez could not remember when this occurred, and he did not write up a report about the incident. *Id.* at 242:3-22. Plaintiff disputes that any allegations were ever made against him regarding the use or sale of marijuana while at Stir Crazy; Plaintiff admits that he was required to attend a Responsible Vendors meeting. D.E. 64-2 at 128:1-129:9, 249:19-23.

At this point, the Court will not exclude evidence related to the alleged marijuana incident. Being disciplined for playing an song that an owner does not like, as Plaintiff contends he was, indicates a very different level of control than being disciplined for possession of marijuana. To the extent that Plaintiff wishes to introduce evidence that Defendants had the ability to discipline him and require his attendance at meetings, Defendants should be allowed to rebut this evidence and explain they only exercised this level of control for major issues.

### 3. Plaintiff's Tax Returns

Plaintiff moves the court to exclude evidence regarding his tax returns, where he characterized himself as an independent contractor because it is irrelevant. Defendants respond that Defendants should be allowed to impeach Plaintiff with evidence of his tax returns. Defendants also argue that the tax returns are relevant to the issue of whether the Plaintiff was an independent contractor or an employee.

"In deciding whether an individual is an 'employee'" within the meaning of the FLSA, the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship." *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981). Plaintiff's characterization of himself as being self-employed on his tax returns is not dispositive of his status as an employee under the FLSA, and would not give rise to a genuine issue of material fact on a motion for summary judgment, but it is relevant to the independent contractor/employee issue to the extent it mirrors the economic reality of the relationship. Other Southern District of Florida cases have considered tax returns in determining whether an individual is an employee or an independent contractor. *See Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1320 (S.D. Fla. 2001); *Martin v. NITV, LLC*, No. 06-80667, 2007 WL 1560202, at *2 (S.D. Fla. May 29, 2007). Notwithstanding the relevancy of whether Plaintiff labeled himself as self-employed on his tax returns, his tax returns are relevant as to his economic dependency on Defendants and other factors related to whether or not he is an employee under the FLSA. Accordingly, Plaintiff's motion to exclude this category of evidence will be denied.

Plaintiff also moves to preclude Defendants from eliciting testimony that Plaintiff took the Fifth Amendment when questioned about the information disclosed on his tax returns. Plaintiff, upon his counsel's advice, refused to answer most questions regarding his tax returns at his deposition, including: (1) how Plaintiff prepared his tax returns and made decisions on reporting his income; (2) whether he reported his entire income that he earned as a DJ at Stir Crazy on his return; (3) who prepared the tax returns; (4) what was reported as a business income or loss on his tax return; (5) whether the exhibits marked at his deposition were actual copies of Plaintiff's tax returns; and (6) whether the tax returns were accurate. D.E. 64-2 at 117:4-18,

227:19-24, 229:4-11, 233:11-15, 237:1-7.  Plaintiff's tax returns, including how he characterized his income, whether he had any alternative sources of income, and how he itemized his deductions, are indicative of the economic realities of his relationship with Defendants. Defendants had a right to discover this evidence and question Plaintiff as to these issues.  Only after the close of discovery and in support of his Motion in Limine, did Plaintiff submit an affidavit where he answered some questions that were posed at his deposition, such as whether he received income through more than one social security number and why his tax return included a line item for unemployment compensation.  D.E. 74-1.

Although Plaintiff may have properly invoked his Fifth Amendment rights, such an invocation "does not take place in a vacuum; the rights of the other litigant are entitled to consideration as well." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994). Plaintiff prevented Defendants from obtaining relevant discovery, and only answered some questions and, then, only well after the close of discovery.  As such, Defendants should be allowed to impeach Plaintiff with his previous silence as it relates to disputed issues that must be resolved at trial.  *See Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001) (reversing district court's exclusion of Fifth Amendment silence at Plaintiff's deposition and remanding for a new trial).  In *Harris*, the Seventh Circuit found that the district court should have either prevented the plaintiff from "testifying to matters about which he had previously refused to testify" or have allowed the defendant to "impeach him with his prior silence on those matters." *Id.*  Here, too, Defendants should be able to impeach Plaintiff with his prior silence on matters related to his tax returns.

    **4.**     **Testimony Regarding Questions About Multiple Security Numbers**

Plaintiff moves the Court to exclude testimony regarding questions about multiple social security numbers. At Plaintiff's deposition, he was asked whether he had more than one social security number and whether he received income through another social security number. In response, Plaintiff invoked his Fifth Amendment privilege. *See* D.E. 64-3 at 239:12-241:11. Plaintiff argues that this evidence is not relevant to any issue in this case. He also argues that the jury should not be allowed to draw an adverse inference from Plaintiff's invocation of his Fifth Amendment rights because such an inference would be untrustworthy. To support his Motion, Plaintiff submits a Declaration stating that he has only used one social security number when filing tax returns, and that he has never received income through another social security number. D.E. 74-1. Defendants argue that questions regarding all sources of income that Plaintiff may have received are relevant as to the "economic realities" of Plaintiff's relationship with Defendants.

Defendants appear to have no good faith basis for their contention that Plaintiff received income through multiple social security numbers. This issue is a collateral matter and is not relevant to any dispute in this case. Accordingly, evidence and testimony related to whether Plaintiff received income through different social security numbers will be excluded.

**5.  Evidence Regarding Plaintiff Asserting his Fifth Amendment Right Regarding Unemployment Compensation**

As discussed above, Plaintiff's tax returns are relevant to determining whether he is an independent contractor or an employee under the FLSA. To the extent that such tax returns reflect the receipt of unemployment compensation, questioning will be allowed to establish why

this compensation was received. As explained above, Defendants also will be allowed to impeach Plaintiff with his deposition silence at trial.

### 6. Evidence of Plaintiff's Financial Difficulties and Bankruptcy

Plaintiff seeks to exclude any reference or evidence related to his past financial difficulties, including his foreclosure on his home and his bankruptcy proceedings. Plaintiff argues that this evidence is not relevant to any issue in this case, and that such evidence would be unfairly prejudicial. Defendants respond that Plaintiff's statements on his bankruptcy affidavits that he was self-employed are relevant as admissions that directly contradict sworn testimony that Plaintiff has given in this matter.

Although evidence of Plaintiff's general financial difficulties is irrelevant and therefore inadmissible, Plaintiff's statements on his bankruptcy affidavits that he is self-employed are admissible as statements against Plaintiff's interest and for impeachment. Accordingly, Plaintiff's Motion is denied as to this category of evidence.

### 7. Evidence that Plaintiff Worked as a Mortgage Broker

Plaintiff seeks the exclusion of evidence that he worked as a mortgage broker during 2007, prior to the liability period in this case. Defendants argue that this evidence is relevant as to the economic realities of Plaintiff's relationship with Defendants. Plaintiff's argument is based on one line in *Usery v. Pilgrim Equipment Co.*: "It is not significant how one 'could have' acted under the contract terms. The controlling economic realities are reflected by the way one actually acts." *Usery*, 527 F.2d 1308, 1312 (5th Cir. 1976). This single line, however, does not mean that Plaintiff's past pursuit of a side job as a mortgage broker is not relevant simply because it occurred outside the claims period. He did actually work as a mortgage broker, and he

left the job because he found it unsatisfying, not because Stir Crazy told him to leave it. D.E. 64-2 at 21:9-19. "The touchstone of 'economic reality' in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency. The courts look at all of the surrounding circumstances of the 'whole activity' to determine whether the putative employee is economically dependent upon the alleged employer." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1318 (S.D. Fla. 2001). Part of the "whole activity" governing the economic realities of Plaintiff's relationship with Defendants is that Plaintiff briefly had a side job as a mortgage broker while being a DJ at Stir Crazy. Accordingly, this evidence will not be excluded.

## Conclusion

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion in Limine, D.E. 72, is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as follows: evidence of the salaries paid to Defendants' employees other than the individually named Defendants is excluded. The Motion is otherwise DENIED. It is further

ORDERED AND ADJUDGED that Defendants' Motion, D.E. 73, is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion in Limine, D.E. 74 is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is GRANTED as follows: evidence and testimony related to whether Plaintiff received income through multiple social security numbers is excluded. The Motion is otherwise DENIED.

.    DONE AND ORDERED in Chambers at Miami, Florida, this 22d day of July, 2014.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided to: Counsel of Record