```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI
                     CASE NO. 13-CV-23429
 3     _____

 4     MITCHELL ROSARIO,
                         Plaintiff
 5          vs.                      Thursday, January 29, 2015
       12425, INC., D/B/A STIR CRAZY;
 6     LAURA INSUA; MANUEL H. INSUA;
       AND HERIBERTO FLOREZ,
 7                       Defendants.

 8     _____

 9                          MOTIONS

10        BEFORE THE HONORABLE ALICIA M. OTAZO-REYES,

11       UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
       _____
12
                     A P P E A R A N C E S
13
       FOR THE PLAINTIFF:    Samara Robbins Bober, ESQ
14                           Peter J.M. Bober, ESQ
                             Bober and Bober, PA\
15                           1930 Tyler Street
                             Hollywood, FL  33020
16                           (954) 922-2298
                             Samara@boberlaw.com
17                           Peter@boberlaw.com

18     FOR THE DEFENDANT:    DAVID M. McDONALD, ESQ
                             JARED McLUSKEY, ESQ
19                           McLuskey & McDonald
                             8821 SW 69th Ct
20                           Miami, FL  33156
                             (305) 662-6160
21                           Dmcdonald@mmlawmiami.com
                             Jared@mmlawmiami.com
22
       REPORTED BY:          GIZELLA BAAN-PROULX, RPR, FCRR
23                           United States Court Reporter
                             400 North Miami Avenue, Suite 8S32
24                           Miami  FL  33128
                             (305) 523-5294
25                           gizella_baan-proulx@flsd.uscourts.gov
```

**P R O C E E D I N G S**

*(The following proceedings were held in open court.)*

* * * * * * * * * * *

*(Thereupon, proceedings were held but not transcribed.)*

* * * * * * * * * * *

**THE COURT**: Thank you. You may be seated. All right. Mr. McDonald, you have some motions?

12:52 **MR. McDONALD**: Yes, Your Honor. Defendant would renew motions on the issue of judicial estoppel that we previously filed and were ruled on by Judge Ungaro.

We would also move for a directed verdict on the issues set forth in -- on all counts, and specifically as to

12:52 Count 1 which is the FLSA claim and ask for a directed verdict.

**THE COURT**: That should be Judge Ungaro. That's old-fashioned.

**MR. McDONALD**: Well --

12:53 **THE COURT**: All right. On all counts, judgment as a matter of law on all counts.

**MR. McDONALD**: Yes.

**THE COURT**: And your grounds are? Tell me about the judicial estoppel thing first.

12:53 **MR. McDONALD**: It's an equitable remedy available

1    to the Court in instances where, such as where misuse of the

2    court system is demonstrated and that the plaintiff has not

3    earned the right to -- because of their conduct in not just

4    this proceeding, but other proceedings to proceed forward

12:53   5    with their claim.

6         The pleading of the blocking of evidence, you know,

7    the sword and shield tactics.  The clear falsification of

8    multiple documents in multiple forms does not justify this

9    claim being considered by this Court.

12:54   10         THE COURT:  All right.  And you said that Judge

11   Ungaro addressed that in her summary judgment order?

12         MR. McDONALD:  Yes.

13         THE COURT:  I have that in front of me.  Is that on

14   page 7, waiver of judicial estoppel?  Page 6.  Where is it in

12:55   15   the order?

16         MS. ROBBINS-BOBER:  That's the waiver, but then it

17   stated it's not waived so I think the analysis starts on page

18   7, paragraph -- section 2.

19         If you're ready for a response, I'll be happy to

12:56   20   respond.

21         THE COURT:  Well, I'm looking at Judge Ungaro's

22   statement starting at the bottom of page 8, the case is

23   finding that judicial estoppel precludes the plaintiff from

24   pursuing an FLSA or other employment claim after making

12:56   25   inconsistent statements during bankruptcy proceedings arise

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | when a plaintiff files an FLSA suit prior to or during the   |
|       | 2  | plaintiff's bankruptcy proceedings.                          |
|       | 3  | That's not what happened here, right?  The                   |
|       | 4  | bankruptcy proceeding was filed ahead of this lawsuit.       |
| 12:56 | 5  | **MRS. ROBBINS-BOBER:**  Precisely.  It was filed about       |
|       | 6  | four years ahead of it in October of 2009.                   |
|       | 7  | **THE COURT:**  A plaintiff's failure to disclose a           |
|       | 8  | pending lawsuit to the bankruptcy court is sufficient to     |
|       | 9  | infer intent to make a mockery of the judicial system.  That |
| 12:56 | 10 | is a far cry from plaintiff's conduct here, which reasonably  |
|       | 11 | can be interpreted as confusion as to the complex legal      |
|       | 12 | context of employee status under the FLSA.                   |
|       | 13 | I think that that analysis still holds.  I don't             |
|       | 14 | think anything that has happened in the trial changes that   |
| 12:57 | 15 | analysis, so I will respectfully deny the motion on the      |
|       | 16 | grounds of judicial estoppel.                                |
|       | 17 | Now motion as a matter of law, are you asking for            |
|       | 18 | all counts in general or do you have anything specific as to |
|       | 19 | any claim or defendant?                                      |
| 12:57 | 20 | **MR. McDONALD:**  All in general and specifically            |
|       | 21 | under the Florida Minimum Wage Amendment.                    |
|       | 22 | **THE COURT:**  Okay.                                         |
|       | 23 | **MR. McDONALD:**  The requirement of the amendment is        |
|       | 24 | that there had to have been pre-suit notice provided.  And in |
| 12:57 | 25 | this case there has been testimony of a letter -- and I      |

1  believe the letter -- has it been -- there has been no

2  evidence of a pre-suit notice to Mr. Flórez who is being sued

3  individually in this matter under the Florida Minimum Wage

4  Amendment.

12:58  5      There's no -- he was never -- there's no evidence

6  of any notice and, in fact, their letter itself shows it was

7  not even addressed to Mr. Flórez.

8      **THE COURT:**  The letter was addressed to the

9  corporation, correct?

12:58  10      **MRS. ROBBINS-BOBER:**  The letter was addressed to

11  Mr. McDonald because we had been dealing with him with

12  respect to Mr. Cruz's claim.  So he is acting as an agent for

13  his clients and he -- the parties have actually stipulated

14  that you received the letter on September 13th.

12:58  15      **MR. McDONALD:**  The letter -- I received the letter.

16  That's -- they -- I accepted it.  But the letter itself is

17  not addressed, it is addressed to the club.  It is addressed

18  to Mrs. Insua, Laura Insua, and it's addressed to Manny

19  Insua.  It's not addressed to Heriberto Flórez.

12:58  20      The letter speaks for itself.  I'm not denying

21  there was a letter sent to me for those individuals and that

22  I accepted it.  I agree with that, but that letter was never

23  directed to Mr. Flórez and under Florida Minimum Wage

24  Amendment he had to have been given some notice prior to

12:59  25  suit, and he was never given it.

```
               1            THE COURT:  All right.  So that's one issue, the

               2     Florida Minimum Wage Act as to Mr. Flórez.  What else

               3     specifically?  That's quite all right.  When I'm ready to

               4     hear you, I will let you know.

      12:59    5            All right.  What else?

               6            MR. McDONALD:  There has been no evidence of any

               7     retaliation as by Manuel Insua or Laura Insua.  There's --

               8     and so they -- judgment as a matter of law as to those

               9     retaliation counts as to them individually should be granted.

      12:59   10            Specifically, there's no moving from that.

              11            THE COURT:  All right.

              12            MR. McDONALD:  There is no evidence that Laura

              13     Insua individually was an employer as defined by the FLSA and

              14     the Florida Minimum Wage Amendment in those counts.  And we'd

      01:00   15     ask for a judgment as a matter of law as to Laura Insua.

              16            THE COURT:  What else?

              17            MR. McDONALD:  That is all.

              18            THE COURT:  All right.  Well, on Laura Insua not an

              19     employer, I think that there was testimony from which the

      01:00   20     jury could find that she was an employer, not that they will,

              21     but I don't think it's a matter that I can decide at this

              22     point in time as a matter of law.

              23            On the retaliation claim against Manuel, Manny,

              24     Junior and Laura that ties into the questions that I have

      01:00   25     regarding the jury instructions.  So I'm going deny that.  I
```

1    will reconsider it at the close of all the evidence.

2    Expressly, I am holding that in abeyance.  I mean, I can

3    either deny it without prejudice.

4         You have the right to renew everything at the end

01:01   5    of the case anyway, Mr. McDonald, but this is one of the

6    reasons I wanted to discuss the jury instructions because

7    there seems to me some variation as to who is responsible for

8    retaliation.

9         Then on the pre-suit notice, I need a little bit

01:01   10   more time to look at that.  I will treat that one the same as

11   the retaliation.  I will definitely reconsider that one.  So

12   those are my rulings.

13        **MRS. ROBBINS-BOBER:**  If I can just bring your

14   attention to a couple of things with respect to the pre-suit

01:02   15   notice issue.

16        **THE COURT:**  Well, I'm not going to rule on it at

17   this point in time.  You can address me later so we don't

18   keep the jury waiting.

19        **MRS. ROBBINS-BOBER:**  Absolutely.

01:02   20        **THE COURT:**  Unfortunately, we ran out of time for

21   my questions on the jury instructions, but they do tie into

22   the Motion for Judgment as a matter of law.  So we'll just

23   have to address them, I guess we'll have a mini charge

24   conference for me to clear those questions and then we'll

01:02   25   have the real charge conference where I bring in my proposed

1    jury instructions to discuss with you.

2          All right?  Are we ready for the jury?

3          MR. McDONALD:  Yes, Your Honor.

4          MRS. ROBBINS-BOBER:  Yes, Your Honor.

5

6    *    *    *    *    *    *    *    *    *    *    *

7    *(Thereupon, proceedings were held but not transcribed.)*

8    *    *    *    *    *    *    *    *    *    *    *

9

01:53  10          THE COURT:  Thank you.  Please be seated.  All

11    right.  So any motions at this time?

12          MRS. ROBBINS-BOBER:  Yes, Your Honor.  The

13    Plaintiff renews all previous motions and objections and

14    moves for judgment as a matter of law as to all claims.

01:54  15          THE COURT:  Do you have any specific grounds?

16          MRS. ROBBINS-BOBER:  The Plaintiff moves for a

17    judgment as a matter of law as to the employee status of

18    Mr. Rosario as to all defendants, and also with respect to

19    the retaliation claim as to the issues that he engaged in

01:54  20    protected activity.

21          THE COURT:  Wait, wait.  Let's take them one at a

22    time.

23          Employee status as to all defendants?

24          MRS. ROBBINS-BOBER:  Yes, Your Honor.

01:54  25          THE COURT:  All right.  And that one is

```
         1   respectfully denied.  And then the next one on retaliation?
         2            MRS. ROBBINS-BOBER:  The next one as to
         3   retaliation, that he engaged in protected activity by sending
         4   a letter.  It's actually a stipulation of the parties.
01:55    5            THE COURT:  So I don't have to rule on that.
         6   That's part of the jury instructions, no?
         7            MRS. ROBBINS-BOBER:  Yes, Your Honor.
         8            MR. McDONALD:  Can you identify the stipulation?
         9            MRS. ROBBINS-BOBER:  Sure.  It's the first
01:55   10   supplemental pretrial stipulation.
        11            Yes, that's docket entry 110.  Well, what it says
        12   is that on Friday, September 13th, and there's a letter, kind
        13   of extra wording, that September 13th at 5:09 p.m., the
        14   attorney for plaintiff Mitchell Rosario sent an e-mail
01:55   15   attaching a letter to the attorney for defendants, 12425,
        16   Inc., Laura Insua and Manuel Insua, wherein the plaintiff was
        17   complaining that he was not paid minimum wages or overtime
        18   wages for his deejay work at Stir Crazy.
        19            On Friday, September 13, 2013, at 5:11 p.m., the
01:56   20   attorney for the defendants received the aforementioned
        21   e-mail with the letter attached.
        22            THE COURT:  All right.
        23            MR. McDONALD:  I agree, but there's no mention that
        24   Mr. Flórez and, Your Honor, I would add -- I would cite to
01:56   25   the Court as to the pre-suit notice, Nichols versus --
```

THE COURT:  Wait, wait.  Are we talking about the same thing or are you jumping now into the pre-suit notice on the Florida Minimum Wage?

MR. McDONALD:  Yes, I thought that that's --

THE COURT:  No, she was saying protected activity. She was talking about the retaliation claim.

MRS. ROBBINS-BOBER:  It is based on the letter, but the stipulation refers to the defendants and, of course, the defendants are the defendants in this case.

THE COURT:  Let's take things one at a time, if you don't mind.  All right.

You were telling me that there's a stipulation that the plaintiff engaged in protected activity for purposes of the retaliation claim, and you read to me a couple of things out of the pretrial stipulation, that the letter was sent and that the letter was received.

MRS. ROBBINS-BOBER:  Yes.

THE COURT:  And you're saying that those two things support either a judgment as a matter of law or a stipulation that he engaged in protected activity?

MRS. ROBBINS-BOBER:  Yes.

THE COURT:  All right.  Let me hear from Mr. McDonald.

MR. McDONALD:  Again, the stipulation has to do with and -- because the letter was addressed to the corporate

1    entity, Manuel Insua and Laura Insua.  It was not addressed

2    to Heriberto Flórez.

3         THE COURT:  All right.  But to the extent that the

4    parties were addressed, do you stipulate that he engaged in

01:57  5    protected activity by sending that -- by having you send that

6    letter?  I think that's the thrust of what Ms. Bober is

7    telling me.

8         MRS. ROBBINS-BOBER:  Absolutely not.  This

9    stipulation says that we sent a letter to the attorney for

01:58  10   the defendants.  The defendants in this case are the -- are

11   12425, Laura, Manuel H. Insua and Mr. Flórez.  The defendants

12   are bound by that stipulation of their agent.

13        They never --

14        THE COURT:  Ms. Bober, I'm sorry.  Maybe I'm just

01:58  15   not communicating.  I'm not concerned right now about who the

16   letter was on behalf of.  I'm trying to zero in on where you

17   started out that you wanted a ruling as a matter of law that

18   he engaged in protected activity.  I'm trying to get there.

19        Is that letter protected activity?  I asked

01:58  20   Mr. McDonald to respond because some of his -- wait, let me

21   finish -- some of his proposed jury instructions go into this

22   whole business of good faith and so on.  That's why I'm

23   trying to zero in on that issue first.

24        MR. McDONALD:  As to the parties to which the

01:58  25   letter was addressed --

1          THE COURT:  Uh-huh.  (Nodding affirmatively).

2          MR. McDONALD:  -- which is the corporate entity,

3    Ms. --

4          THE COURT:  As to whoever.  Let's say X, Party X.

01:59  5    Is it protected activity?

6          MR. McDONALD:  Yes.

7          THE COURT:  All right.  We got past that one.  All

8    right.

9          So now -- so it's a stipulation.  I can do it as a

01:59  10   jury instruction as a stipulation.  I don't really need a

11   judgment as a matter of law.

12         MRS. ROBBINS-BOBER:  Okay.  But the stipulation

13   covers --

14         THE COURT:  No.  Wait, wait, wait.

01:59  15   MRS. ROBBINS-BOBER:  Sorry.

16         THE COURT:  See, I have a mathematical background

17   so I take things one step at a time.

18         MRS. ROBBINS-BOBER:  Yes, Your Honor.  I apologize.

19         THE COURT:  It has served me well in my career.

01:59  20   All right.

21         So now, we have covered that issue.  It is

22   protected activity.  Now, as long as we are there, and

23   without taking you away from your motion, do you all

24   stipulate that termination is an adverse employment action?

02:00  25   Is that a stipulation that you have made or is that something

1    that you contemplate?

2         And the reason I'm raising this is because I was

3    having difficulty -- and this goes into my jury instruction

4    issue -- I was having difficulty with fashioning a jury

02:00  5    instruction that tells the jurors that Defendant X or Y took

6    an adverse employment action where the question of whether

7    Defendant was employed or not is a central issue in the case.

8    And I was concerned that that would create confusion.

9         So, you know, I wanted to call it termination.  If

02:00  10   you all stipulate that termination is an adverse employment

11   action for purposes of the law, then we can just instruct the

12   jury in that fashion without using the term adverse

13   employment action.

14         Am I making myself clear?

02:01  15        MR. McDONALD:  Yes.  And you are saying substitute

16   the term termination for adverse employment action?

17        THE COURT:  Right, just basically because that

18   would satisfy the element that he suffered an adverse

19   employment action and we wouldn't even have to go there.

02:01  20        MRS. ROBBINS-BOBER:  Yes, Your Honor.

21        THE COURT:  But that would mean that there is a

22   stipulation which seems to me very common sense that

23   termination is an adverse employment action.

24        MR. McDONALD:  I have no objection to using the

02:01  25   term.

1     THE COURT:  All right.  So then the jury will not

2  need to find that he was subject to an adverse employment

3  action as an element, just that he was terminated by whoever

4  and that brings us to whoever terminated him which is another

02:01  5  separate issue.

6          All right.  So that clears that.

7          Now, back to the whole notice thing who the letter

8  was addressed to.  Do I have a copy of the letter?

9     MRS. ROBBINS-BOBER:  I mean, I apologize, Your

02:02  10  Honor, they just raised this for the first time.  I do have a

11  copy of the stipulation and I have a copy of the letter on my

12  computer.

13     THE COURT:  Well, is this a pretrial -- is this in

14  the pretrial stipulation?

02:02  15     MR. McDONALD:  It is, Your Honor, but the pretrial

16  stipulation again --

17     THE COURT:  Well, I want to look at the pretrial

18  stipulation and the letter, both.

19     MRS. ROBBINS-BOBER:  That's not in the pretrial

02:02  20  stipulation.  It's a supplemental joint pretrial stipulation,

21  docket entry 110.

22     THE COURT:  Okay.  Give me a minute.

23          All right.  The supplement stipulation docket entry

24  110, now can I see the letter?

02:03  25     MR. BOBER:  Your Honor, I don't have it on the

|  |  |  |
|---|---|---|
|  | 1 | computer.  I don't know if Mr. McDonald has a copy.  We just |
|  | 2 | heard about it for the first time. |
|  | 3 | THE COURT:  I know it was shown to somebody. |
|  | 4 | MR. McDONALD:  It was shown to a witness. |
| 02:03 | 5 | MRS. ROBBINS-BOBER:  That was Mr. Cruz's letter. |
|  | 6 | MR. BOBER:  Do you have a copy of the letter? |
|  | 7 | MR. McDONALD:  Probably. |
|  | 8 | MRS. ROBBINS-BOBER:  I have it on my computer, Your |
|  | 9 | Honor. |
| 02:03 | 10 | The letter is addressed -- |
|  | 11 | THE COURT:  One moment.  I want to see the letter. |
|  | 12 | That's what I want.  You can e-mail it to me. |
|  | 13 | MRS. ROBBINS-BOBER:  E-mail it. |
|  | 14 | THE COURT:  Right now.  To the E-file address. |
| 02:04 | 15 | MR. McLUSKEY:  Copy us on it as well. |
|  | 16 | MRS. ROBBINS-BOBER:  Sure. |
|  | 17 | MR. McLUSKEY:  Thank you. |
|  | 18 | MRS. ROBBINS-BOBER:  The letter is addressed only |
|  | 19 | to 12425, Laura Insua and Manuel Insua, however, the first |
| 02:04 | 20 | supplemental pretrial stipulation takes care of that.  And |
|  | 21 | it's -- I'm sorry, Your Honor, I stand corrected.  The |
|  | 22 | supplemental pretrial stipulation does not mention |
|  | 23 | Mr. Flórez. |
|  | 24 | THE COURT:  All right.  So there is a basis -- |
| 02:05 | 25 | well, you wanted -- let's see.  I kind of interrupted you, |

1    Ms. Bober, on your motion.  You moved for the employee status

2    and I denied that one.

3         Then your next motion had to do with retaliation,

4    and that's what got us on the sidetrack of the letter.  So

02:06  5    what more is it you want to say about retaliation?

6         MRS. ROBBINS-BOBER:  Just is -- a judgment as a

7    matter of law as to the fact that he was, in fact,

8    terminated.  I think the only issues are the cause and

9    damages.

02:06  10        THE COURT:  All right.  So we can handle rather

11   than a judgment as a matter of law, let's see.  I think the

12   best way to handle that is in the jury instructions, that the

13   jurors do not need to find that he was subject to an adverse

14   employment action, and we'll instruct them that he was

02:06  15   terminated on such-and-such a date, rather than doing it

16   piecemeal judgment as a merit of law.

17        MR. McDONALD:  The thrust of my motion has to do

18   with Mr. Flórez.

19        THE COURT:  Okay, it's not your turn yet.  Sorry.

02:07  20        All right.  So we will do the jury instruction in

21   that fashion.  All right.  So next?  Any more motions from

22   the plaintiff at the close of all of the evidence?

23        MRS. ROBBINS-BOBER:  No, Your Honor.

24        THE COURT:  All right.  Your turn, Mr. McDonald.

02:07  25        MR. McDONALD:  Again, I would renew my motions

1    previously made and I would add or supplement to them by

2    asking for judgment as a matter of law on the retaliation

3    claim as to Mr. Flórez individually as well as on the

4    Florida --

02:07    5        THE COURT:  Wait, wait.  You didn't mean

6    retaliation claim as to Flórez individually.  I think you

7    meant Florida Minimum Wage.

8        MR. McDONALD:  I'm sorry.  Yes.  Yes.

9        THE COURT:  All right.  So go back.  Florida

02:08   10   Minimum Wage for Mr. Flórez for lack of notice.

11       MR. McDONALD:  Lack of pre-suit notice.

12       THE COURT:  Let's stop with that one.  Stop with

13   that one.

14       MR. McDONALD:  I have the case.  I have --

02:08   15       THE COURT:  But let me hear from Ms. Bober.  You

16   just agreed that the stipulation does not cover Mr. Flórez,

17   correct?

18       MRS. ROBBINS-BOBER:  Yes.

19       THE COURT:  All right.  So have you sent me the

02:08   20   letter?

21       MR. BOBER:  I did, Your Honor, just a moment ago,

22   about two minutes ago.

23       THE COURT:  All right.  Let me check for the

24   letter.

02:08   25       MRS. ROBBINS-BOBER:  The letter also does not

1    mention Mr. Flórez.  However, in the Defendant's answer they

2    never raised this as an affirmative defense, nothing in

3    discovery about it, nothing in summary judgment and the

4    affirmative defense is waived.  And --

02:09    5        **THE COURT:**  I saw that Judge Ungaro did not think

6    that something had been waived when it was raised at summary

7    judgment.  It was not even raised at judgment.

8        **MRS. ROBBINS-BOBER:**  No.  Or during trial.

9        **THE COURT:**  Well, or during trial?  It's the -- the

02:09    10   evidence that was produced at trial, correct?

11       **MRS. ROBBINS-BOBER:**  I never produced a copy of the

12   letter.  The questions regarding a letter were regarding

13   Mr. Cruz Hernandez.  Mr. Flórez was never asked whether he

14   had received the notice letter, there was nothing to that

02:09    15   effect.  There was absolutely no evidence at trial.

16       He's raising this issue after the close of all the

17   evidence, but both sides have rested.

18       **THE COURT:**  Well, that's not accurate.  He raised

19   it at the close of the Plaintiff's case and I reserved on it.

02:09    20   But no evidence was put on regarding it.

21       **MRS. ROBBINS-BOBER:**  Yes, Your Honor that's true.

22       **THE COURT:**  Uh-huh.  (Nodding affirmatively).

23       All right.  Mr. McDonald, you may tell me about

24   your case, but you also need to address the fact that there

02:10    25   is -- however, you want to handle it.  If you want to say

1   that there's no evidence of him being -- receiving notice or

2   there's evidence contrary to him receiving notice.  I'll let

3   you argue it whichever way you want to.

4           **MR. McDONALD:**  Well, I would say there's no

02:10   5   evidence that he received notice and there's no actual

6   notice.  The stipulation could not be any clearer that it

7   does not reference him.  It's not an affirmative defense.

8   It's their burden to prove the elements of their case, which

9   to recover under the Florida Minimum Wage Amendment they had

02:10   10   to provide the party notice.

11          They did not provide Mr. Flórez notice.  And

12   that's -- and the case is Nichols versus LabCorp, 2014

13   Westlaw 820656.  It's a Middle District of Florida case.  And

14   it's their obligation to comply with the statute to recover

02:11   15   benefits under the statute.

16          As to Mr. Flórez --

17          **THE COURT:**  All right.  And will you recite into

18   the record the pre-notice requirement of the statute that you

19   had started to tell me before and I interrupted you?

02:11   20          **MR. McDONALD:**  It's the -- from that case under the

21   statute under 448.110, Subsection 6(b), failure to comply --

22   this is reading from the case.

23          "Failure to comply with the FMWA pre-suit notice

24   requirement will result in dismissal of the claim."  And as

02:12   25   to Mr. Flórez, that claim should be dismissed.

1          **THE COURT:**  All right.

2          **MRS. ROBBINS-BOBER:**  I have a response if the Court

3    will permit.

4          **THE COURT:**  Yes.

02:12  5          **MRS. ROBBINS-BOBER:**  Well, first of all, the

6    Defendants never put on any testimony by Mr. Flórez as to

7    whether he did or did not receive notice, which in this case

8    it is ambiguous because the attorney, Mr. McDonald, is also

9    Mr. Flórez's attorney and was the attorney for Stir Crazy

02:12  10   with respect to a prior deejay case.

11         **THE COURT:**  But the stipulation, the stipulation

12   does not cover Mr. Flórez.  You agree, right?

13         **MRS. ROBBINS-BOBER:**  I agree.  But that --

14         **THE COURT:**  And you agree that you did not put on

02:13  15   evidence that he received notice?

16         **MRS. ROBBINS-BOBER:**  This is a defense that the

17   Defendants never raised.

18         **THE COURT:**  Mr. McDonald is telling me it's not a

19   defense.  He's telling me that that's an element of your

02:13  20   claim.

21         **MRS. ROBBINS-BOBER:**  It is not an element of my

22   claim.  That is something -- there's -- this is actually a

23   very complicated issue.  The Florida Constitution, Article

24   10, Section 24 is self-executing.  It does not require a

02:13  25   pre-suit notice letter.  There have been a number of courts

1   splitting both ways as to whether the pre-suit notice is

2   required.  It's not actually an element of the claim.  It's

3   not in the jury instructions.  It's something that is

4   waivable by defendants.

02:13   5        For the Court to grant this motion would absolutely

6   undermine the whole purpose of the Florida Minimum Wage Act

7   which is to protect the rights of workers.  Mr. Flórez has

8   known all along that he's subject to this lawsuit.  He

9   appeared here in trial for four days.

02:14   10        THE COURT:  Well, but, you know, you're glossing

11   over the issue.  The issue is, and now you're telling me that

12   Mr. McDonald is incorrect that pre-suit notice is not an

13   element of your claim, that lack of notice is an element of

14   his defense.  That's your position, and what case supports

02:14   15   that?

16        MRS. ROBBINS-BOBER:  First of all, there are a

17   number of cases that have ruled the notice requirement is

18   unconstitutional.  And it is -- it's a defense -- if you like

19   I can brief the issue.  But it's a defense that should be

02:14   20   waived.  I'm sorry, it's a defense that is supposed to be

21   waived in his answer.  It's not --

22        THE COURT:  It's a defense that is supposed to be

23   asserted in his answer.

24        MRS. ROBBINS-BOBER:  Yes, Your Honor.  And you'll

02:14   25   see -- yes.

1    THE COURT:  And you're saying that by not asserting

2    it, he waived it?

3         MRS. ROBBINS-BOBER:  Yes.

4         THE COURT:  And that he has the burden to carry out

02:15   5    that defense and that he did not put on evidence that there

6    was no notice.  That's your position which is the complete

7    opposite of what Mr. McDonald is saying, right?

8         MRS. ROBBINS-BOBER:  Yes.  I believe that I am not

9    required to provide pre-suit notice and I rely on the Florida

02:15   10   Constitution which states in the statutory text that it is

11   self-executing.

12        And even if I did -- and even if I were required,

13   it's an affirmative defense that should have been waived.

14        THE COURT:  All right.  And Mr. McDonald?

02:15   15   MR. McDONALD:  Your Honor, first I would -- the

16   implication that I've sprung this on them is -- that

17   sub-practice, I take offense to.  When we prepared this

18   stipulation, supplemental stipulation back in October, we did

19   so so we didn't have to put in letters and things like that.

02:16   20   And it's -- and I had them remove Mr. Flórez and we

21   had a discussion.  I said, you never sent a letter to

22   Mr. Flórez, and that's why where it references the plaintiff

23   and the defendants who I represent everyone, but that's why

24   the stipulation doesn't include Mr. Flórez.

02:16   25   That was raised then at the time that we prepared

```
 1    this.  That's why it wasn't just -- I mean, I believe
 2    Ms. Bober prepared the stipulation and I reviewed it and I
 3    told her to remove Mr. Flórez.  I didn't stipulate to that.
 4    I think it's an element of their proof.  They haven't
 5    complied with it.
 6          THE COURT:  All right.  And what do you say to her
 7    contention that it's not an element of the plaintiff's case
 8    because that would be contrary to the Florida Constitution,
 9    whatever provision?
10          MR. McDONALD:  The case law that interprets this
11    issue, and including the recent case from the Middle District
12    takes a different view than Ms. Bober, and I would rely on
13    that case law and --
14          THE COURT:  Is that the case that you just cited to
15    me?
16          MR. McDONALD:  Yes, and the cases cited therein.
17          THE COURT:  All right.  All right.  I'm going to
18    take that matter under advisement because, obviously, I need
19    to be on better ground for that.
20          So that's the Florida Minimum Wage as to
21    Mr. Flórez.
22          Okay.  What other motions do you have?
23          MR. McDONALD:  As to -- again, I think I said I
24    renewed the earlier motions.  As to the retaliation claim as
25    an additional ground for judgment as a matter of law, there's
```

1    been no presentation of damages.

2            THE COURT:  Wait, let's go back to that.  I

3    reserved on retaliation by Manuel Insua and Laura Insua that

4    you were seeking judgment as a matter of law for them.

02:18  5            Now, we have evidence that Mr. Flórez personally

6    terminated Mr. Rosario and then, of course, he was terminated

7    from Stir Crazy so that implicates both of those defendants

8    in the retaliation claim whether they prevail or not.

9    They're in.  Right?

02:18  10           MR. McDONALD:  Correct.  Whether --

11           THE COURT:  Whether -- right.  He prevails.

12           Now let me hear from plaintiff's counsel if there

13   is any evidence in the record or any other predicate for

14   imputing the retaliation to Mr. Manny, Junior and Ms. Insua.

02:19  15           MRS. ROBBINS-BOBER:  Yes, Your Honor.  There's

16   ample evidence regarding a very, very close interaction and

17   discussions.

18           THE COURT:  So are you going on an aiding and

19   abetting theory here?

02:19  20           MRS. ROBBINS-BOBER:  No, Your Honor.  There's --

21   there's evidence that Mr. Flórez does what the owners ask him

22   to do.  He actually testified to that.  And --

23           THE COURT:  Yes, but there's no specific evidence

24   that I recall that the owners told him ahead of time to

02:19  25   terminate Mr. Rosario.  The testimony is that he terminated

1    him at that point in time.

2          I'm specifically alluding to the testimony of

3    Ms. Insua that she had no knowledge of the termination, as I

4    recall it.

02:19   5          **MRS. ROBBINS-BOBER:**  Your Honor, I would rely on

6    the close interaction that Ms. Laura Insua said she was

7    knowledgeable of all aspects of the club, that he didn't hide

8    anything from her, that he -- after the termination, he

9    called Manuel, Senior.

02:20   10          **THE COURT:**  After.  After.  After the termination.

11          **MRS. ROBBINS-BOBER:**  And they did not tell him to

12    hire him back, so they basically adopted and ratified the

13    conduct.

14          In addition to all the other elements, I think the

02:20   15    jury's permitted to draw the inferences that they were aware

16    of the lawsuit which was served on the attorney for the

17    defendants on September 13th, and the termination occurred on

18    September 21st.  That's a very big time span for those

19    defendants to learn about the lawsuit.

02:20   20          **THE COURT:**  Yes, but the testimony -- I'm zeroing

21    in on the evidence that is before the jury.  There is no --

22    there is no evidence of any direct involvement by either Mr.

23    Insua or Manny, Junior in the termination.  Would you agree

24    with that?  No evidence of their direct involvement in the

02:21   25    termination?

1          **MRS. ROBBINS-BOBER:**  I would agree there's no

2    direct evidence, but I think there is circumstantial

3    evidence.

4          **THE COURT:**  No, that's not what I said.  There is

02:21   5    no evidence of their direct involvement.

6          **MRS. ROBBINS-BOBER:**  I don't agree because of the

7    very close relationship between Flórez and the three Insuas.

8    It was -- there was a lot of testimony about that they were a

9    tight family unit, and they discussed everything.

02:21  10          She said there's nothing I'm not knowledgeable

11    about.  And she said whatever he does, is okay with me.

12          **THE COURT:**  Well, she did say that.  So that would

13    go under a ratification theory -- well, I'm going to let the

14    question of retaliation, respectfully, Mr. McDonald, go to

02:22  15    the jury, and we may need to revisit it later, but for the

16    moment I think the better cause of action is to let the jury

17    decide that.

18          **MR. McDONALD:**  To the retaliation, I had additional

19    grounds for Motion for Judgment as a matter of law.

02:22  20          **THE COURT:**  All right.

21          **MR. McDONALD:**  There is insufficient evidence

22    presented to support a backpay and front paying claim.  The

23    testimony was that --

24          **THE COURT:**  Well, hang on just a second.  What does

02:22  25    the jury do there on retaliation?  Do they do all of that or

|   |   |
|---|---|
| | 1 |

do I do some of it?

2          **MRS. ROBBINS-BOBER:**  Oh, with respect to

3   retaliation, you would --

4          **THE COURT:**  Isn't that something that I do?

02:23   5          **MRS. ROBBINS-BOBER:**  I don't believe we're -- we're

6   not seeking front pay.

7          **THE COURT:**  All right.  No front pay.  So backpay

8   from when to when?

9          **MR. McDONALD:**  There's been no testimony in this

02:23   10   case that -- simply that he was terminated.  He said he was

11   embarrassed.  There's been no testimony whether he found

12   another job.  There's been no testimony if he remained

13   unemployed.  In fact, they specifically didn't go into it on

14   their direct.  And, therefore, I did not touch it on cross.

02:23   15          Ms. --

16          **THE COURT:**  Is there any evidence of lost wages?

17          **MRS. ROBBINS-BOBER:**  Your Honor, what Mr. McDonald

18   is referring to is the mitigation of damages.

19          **THE COURT:**  I know what he's referring to.  I'm

02:23   20   asking you evidence of lost wages.

21          **MRS. ROBBINS-BOBER:**  Yes, Your Honor.  Remember he

22   was not paid any wages.

23          **THE COURT:**  Well --

24          **MRS. ROBBINS-BOBER:**  I'm sorry, yes, but there was.

02:24   25   He also did testify -- I asked him specifically in the three

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 02:24 | 5 |

1  couple months prior to your termination, what were you

2  earning from the dancers, and he testified $500.  He also

3  testified as to his emotional damages.

4        THE COURT:  I understand the emotional damages.

02:24  5  I'm asking you about back wages.

6        MRS. ROBBINS-BOBER:  The back wages are the Florida

7  Minimum Wage and overtime.

8        THE COURT:  From what period of time?

9        MRS. ROBBINS-BOBER:  From the date of termination

02:24  10  to the date of trial.

11        THE COURT:  What evidence is there that he lost

12  back wages?  Did he say that he is unemployed?  What is the

13  evidence?

14        I think that's what Mr. McDonald is alluding to.

02:24  15        MR. McDONALD:  It is.

16        THE COURT:  I know he testified he was humiliated

17  and, you know, emotional damages and so on, but that's not

18  the motion.  The motion is on backpay.

19        MRS. ROBBINS-BOBER:  He did testify -- I have to

02:25  20  look at my notes, but I believe he may have testified it's

21  been difficult to find work.

22        MR. McDONALD:  Your Honor, may I address it?

23        THE COURT:  Yes, I don't recall that testimony.

24        MR. McDONALD:  In fact, I was surprised not to get

02:25  25  it.  And they -- she finished her questioning of Mr. Rosario.

1    She did not ask him anything about what employment, if

2    anything, he's had from the date of termination to now.  I

3    didn't know what that they were going to say.

4         I was going to certainly -- if they said he

02:25  5    remained unemployed, I was going to ask questions directed to

6    that and towards the issue of mitigation, but they didn't ask

7    it, therefore, I didn't ask anything.  I didn't want -- on

8    redirect she tried to go into it, I objected, and Your Honor

9    sustained that objection and that was the end of that

02:26  10   discussion.

11        I don't believe there's any evidence sufficient to

12   justify or support a judgment for damages for backpay.  And I

13   would also add I don't believe -- he said he was -- he said

14   he was embarrassed, but to recover emotional pain, suffering,

02:26  15   and humiliation, in the form of compensatory damages I

16   don't -- I would submit his testimony was not sufficient to

17   support a claim for those types of damages.

18        Simply saying I was embarrassed when I was

19   terminated is not -- he didn't talk about any further

02:26  20   problems he's had, depression, treatment, anything like that,

21   none of that.  He just said I was embarrassed and that was

22   the end of it.

23        So I would submit that's just not sufficient

24   evidence from which a jury should be able to draw a

02:26  25   conclusion as far as emotional pain type damages, along with

1    the backpay issue.

2         THE COURT:  Ms. Bober.

3         MRS. ROBBINS-BOBER:  I believe there was testimony

4    regarding that he was seeking his minimum wages and what he's

02:27  5    entitled to under the law is his backpay from the date of

6    termination to the date of trial.

7         Now, whether he was employed by other employers

8    subsequently, well, that would go to mitigation of damages.

9         THE COURT:  Well, but the point is that there is no

02:27  10   -- there is no evidence.  I think what Mr. McDonald was

11   arguing is there was no evidence upon which he could do

12   mitigation questions because there was no evidence that he

13   had been unemployed.

14        So that seems to be the problem.  You know,

02:28  15   generally those questions are asked to support a backpay

16   award like, you know, I've continued to -- I have had no work

17   so -- or I have earned X amount and then the mitigation would

18   go against it.

19        Well, again, as a matter of caution, I am going to

02:28  20   submit the retaliation claim to the jury in total and

21   depending on what they do, of course, this whole point may be

22   moot, but I think that that would be something where we have

23   afterwards the benefit of the transcript and much more

24   detail.  Maybe the subject of a posttrial motion, if

02:29  25   necessary.

1           To be very frank, I hate to take things away from

2     the jury, you know, because that kind of cuts it off at the

3     pass, if you understand, Mr. McDonald.

4           **MRS. ROBBINS-BOBER:**  I think that's a cautious

02:29   5     thing to do.

6           **THE COURT:**  Yes.

7           **MRS. ROBBINS-BOBER:**  That way we don't have to have

8     a retrial.

9           **THE COURT:**  Yep.  So we're going to retaliation

02:29  10     with all of them.  Any other motions?  I already denied

11     before your motion that Laura Insua was not an employer.  I

12     denied that as a matter of law.  I renew that ruling.

13           I renew the ruling on judicial estoppel.  This

14     pre-suit notice is something that is really -- has me

02:30  15     wondering so I'll have to think about that a little bit more.

16           Anything else?

17           **MR. McDONALD:**  I made the same motion as to Laura

18     as far as the employer status.  I made that as to Manuel,

19     Junior as well.

02:30  20           **THE COURT:**  Well, no.  That's even less.  I mean,

21     you might have an argument with Laura.  I don't think you

22     have one with Manuel, Junior.  There was plenty of testimony

23     that he was there even though he said he was, big picture,

24     there was a lot of testimony that he was part of the

02:30  25     operation.

1          So I don't think -- I don't think that I could in

2    conscience rule as a matter of law that he's not an employer

3    at this point in time.

4          All right.  Any other motions at this time?

02:30  5          MR. McDONALD:  No, nothing else.

6          THE COURT:  Yeah, I need to think about that

7    minimum wage.  I need to look at the case law that you've

8    told me about.  So I'll come back with that.

9          Let me then if you would, please, address the

02:31 10    retaliation claim now that we have made these -- that I have

11    made these rulings.  I'm directing you to page -- oh, is it

12    the same page?  No.  What is the instruction?

13          MRS. ROBBINS-BOBER:  I think it's on page 33.

14          THE COURT:  Wait, wait.  I've got them here.  I had

02:31 15    my clerk combine it.  I have a set of your instructions here.

16    It's jury instruction number 14.

17          MRS. ROBBINS-BOBER:  Yes, Your Honor.

18          THE COURT:  All right.  So the first part -- the

19    first one, two, three paragraphs, they seem to be agreed

02:32 20    upon, and it seems to be agreed by the parties that even if

21    the plaintiff does not prevail on his wage claims, he can

22    still bring the retaliation claim.  That's basically what the

23    paragraph starting at, "A person may make a complaint" is

24    saying.

02:32 25          MRS. ROBBINS-BOBER:  I'm sorry, where are you?  Oh,

yes.  Uh-huh.  (Nodding affirmatively).

        **THE COURT:**  Are you all following or not?  Are you all on that instruction?

        **MR. McDONALD:**  Yes.

        **THE COURT:**  Ms. Bober?

        **MRS. ROBBINS-BOBER:**  Yes.

        **THE COURT:**  All right.  Then plaintiff claims that defendants terminated him from his position because he complained about his unpaid minimum wage and overtime wages.  There is agreement there.

        Then the disagreement starts with defendants deny plaintiff's claim and assert.  Plaintiff is proposing he was not terminated because of his wage, which is -- and offered his job back, and defendants go into more detail.  There is evidence that supports the detailed level of defendants' version, although I generally am not in favor of going into detail regarding the evidence in the jury instructions.

        **MRS. ROBBINS-BOBER:**  I would make -- plaintiff maintains this is highly objectionable.  It's argumentative.  He's free to make all these arguments in his closing.  And it's particularly inappropriate because Mr. Flórez actually testified that, after a lengthy questioning, that he did think that it was a complaint about wages and he actually discussed that with the general manager, he called prior to terminating Mr. Rosario.

1          So I think something much more neutral is

2     appropriate and then defendants can make all these arguments

3     in their closing.

4          **THE COURT:**  I tend to agree, Mr. McDonald, with

02:35   5     Plaintiff's version because it does not comment on the

6     evidence and does not highlight the evidence.  And then you

7     can argue the details of the evidence, but the essence of it

8     is that he was not terminated on that account and that he was

9     offered his job back.  So I'm going to go with that portion,

02:35   10    and I'm going eliminate your version of it.

11          Now that brings us to what we were just discussing

12    which there has been -- there has been a stipulation that he

13    engaged in protected activity and that he suffered an adverse

14    employment action, and that's where I'm trying to stay away

02:35   15    from that language, adverse employment action to avoid

16    confusing the jury or expressing any opinion as to whether

17    Defendant was or was not an employee.

18          So what I would propose is that to succeed as to

19    each Defendant -- so what I would propose is that we say that

02:36   20    to prevail as to each Defendant, that -- all right.  I'll put

21    some language that effectively says that the first two

22    elements have been stipulated to.  I'll just have to play

23    with the language.  All right?

24          **MR. McDONALD:**  We don't stipulate that Laura Insua

02:37   25    or Manuel, Junior took any action.

1    **THE COURT:** That's true. That's true. Or that he

2    suffered. What I'm going to do is I'm going to stay away

3    from having to say that they have to prove that he suffered

4    an adverse action. I'm going to be careful how I phrase it,

02:37    5    then you can comment with it.

6    What I'm trying to say is there's no need to make

7    -- there's no need to prove that he engaged in a protected

8    activity and there's no need to prove that he suffered an

9    adverse action by whoever it was that did it. I will not pin

02:38    10    it down as to who. They will have to find out. I'll play

11    with it. It's not easy.

12    **MR. McDONALD:** Right.

13    **THE COURT:** All right.

14    **MR. McDONALD:** No, I agree.

02:38    15    **THE COURT:** All right. Then the third element that

16    that Defendant terminated Plaintiff because of the protected

17    activity and that he suffered damages. So those are the two

18    elements that they will need to find and I have to play with

19    how I'm going to do to that. All right?

02:38    20    **MR. McDONALD:** Your Honor, Defendant would submit

21    they have to find it as to each Defendant.

22    **THE COURT:** Yes. That's what it says. As to each

23    Defendant.

24    **MRS. ROBBINS-BOBER:** Yes.

02:38    25    **THE COURT:** To succeed on this claim, Plaintiff

1    must prove each of the following facts by a preponderance of

2    the evidence as to each Defendant.  All right.  All right.

3    And then we have the damages thing that I'm going to go ahead

4    and take to them.

02:38    5           All right.  So then tying into that, Mr. McDonald

6    submitted a revised proposed verdict form that kind of is

7    asking them to find engaged in protected activity, they don't

8    need to find that, and that was the e-mail that was sent last

9    night at 10:58 p.m.

02:39   10           So I will modify those questions once I set along

11    the language for the instruction as to what they have to

12    find.  I just wanted to alert you of that.

13           I have a couple of other comments before we take a

14    break.  There is no instruction requested on burden of proof

02:40   15    on defenses.  Was that deliberate?  Was that an oversight?

16           **MRS. ROBBINS-BOBER:**  Yes, Your Honor, I would

17    request -- I would request that instruction.

18           **THE COURT:**  All right.  And the reason for that is

19    your position that on the minimum wage it is their burden on

02:40   20    the defense or are you thinking of other defenses?

21           **MRS. ROBBINS-BOBER:**  Well, the minimum wage, my

22    position is that they have waived that defense.

23           **THE COURT:**  I understand that.  I'm asking you if

24    there's other defenses you have in mind, just depending on

02:40   25    how I rule on that one?

1          Do you have any defenses, Mr. McDonald?  I know you

2     countered some of the claims.

3          **MR. McDONALD:**  Right.  We stipulate --

4          **THE COURT:**  We don't have an instruction that says,

02:40  5     you know, if you find for the Plaintiff, then you have to

6     consider defendants' defenses and lay out the defenses.

7     Neither side submitted anything long those lines, and I want

8     to make sure that the record is clear on that.

9          **MR. McDONALD:**  We raised the defense that as an

02:41  10    independent contractor, self-employed individual, the act

11    does not apply to him.

12         **THE COURT:**  All right.  Is that something that you

13    need to prove by a preponderance of the evidence or is that

14    sort of subsumed in the instructions?

02:41  15         **MR. McDONALD:**  I think it's their burden to prove

16    he's an employee, and we deny it, and it's really more of a

17    denial than it is an affirmative defense.

18         **THE COURT:**  Than a defense.  Right, because that

19    goes into the pattern instruction that says how you decide

02:41  20    that they are an employee.

21         **MR. McDONALD:**  Right.  And then we stipulated to

22    enterprise and --

23         **THE COURT:**  Yes.  I have no problems with that.

24         **MR. McDONALD:**  So --

02:41  25         **THE COURT:**  All right.  Then I wanted to let you

|     |     |
| --- | --- |
| 1   | know I'm having my clerk try to find something and see if |
| 2   | there's a need or if it's advisable, I'll hear you, on giving |
| 3   | an instruction when a witness takes the Fifth Amendment. |
| 4   | We're looking for that.  I think it would be proper to give |
| 5   | the jury an instruction.  We haven't found one yet, but I'm |
| 6   | working on it. |
| 7   | MRS. ROBBINS-BOBER:  Yes, Your Honor, I would |
| 8   | request that. |
| 9   | THE COURT:  Well, you didn't before, but you do |
| 10  | now? |
| 11  | MRS. ROBBINS-BOBER:  Yes, Your Honor, and I |
| 12  | appreciate you mentioning that. |
| 13  | THE COURT:  All right.  Okay.  All right.  So with |
| 14  | that, let's take a break.  My rulings on the motions at the |
| 15  | end of the case stand.  The only one that I haven't totally |
| 16  | made up my mind is the minimum wage.  Let me make sure that I |
| 17  | have the case law that you cited. |
| 18  | Mr. McDonald, was that that Middle District case |
| 19  | you were referring to? |
| 20  | MR. McDONALD:  It was.  Yes. |
| 21  | THE COURT:  Give me the cite again. |
| 22  | MR. McDONALD:  It's 2014 Westlaw 820656. |
| 23  | MR. BOBER:  Repeat that. |
| 24  | MR. McDONALD:  2014 WL 820656. |
| 25  | THE COURT:  All right.  And what was the |

02:42  5

02:42  10

02:42  15

02:42  20

02:43  25

1    Constitution article that you cited?

2        MRS. ROBBINS-BOBER:   Sure, it's Article 10, Section

3    24.   This a section in the Constitution which obviously is

4    supreme which says that the Florida Minimum Wage Amendment is

02:43   5    self-executing and that 448.110 in that, but allows for

6    implementing that legislation.

7        So there is no notice requirement in the Florida

8    Constitution and so the extent that the Defendants are

9    arguing that it's an element of our claim, then we would deny

02:44   10   that.

11       And I would like to bring the Court's attention

12   that there are cases going both ways on this issue.   There's

13   no 11th Circuit opinion that I'm aware of.

14       THE COURT:   How about Florida Supreme Court?

02:44   15       MRS. ROBBINS-BOBER:   No, not that I'm aware of.

16       THE COURT:   All right.   District Courts of Florida,

17   District Court of Appeals?

18       MRS. ROBBINS-BOBER:   Not that I'm aware of.

19   There's very little, unfortunately, case law on this.

02:44   20       THE COURT:   In the state because the stuff gets

21   brought in the federal courts.

22       MRS. ROBBINS-BOBER:   Right.

23       THE COURT:   All right.   Thank you very much.   I

24   will need -- let's see.   Let's meet again at 3:30 for the

02:44   25   charge conference.   I would like to finish everything by 5

1    o'clock, at least my part.  And so we'll have the charge

2    conference and then what I will do is whatever my final set,

3    I will make the rulings and so on, and my final set I can

4    have my clerk e-mail it to you in case you want to use any

02:45    5    parts of it in your closing arguments.

6         MRS. ROBBINS-BOBER:  That would be very

7    appreciated.  Your Honor, if I may, I'd like to request an

8    additional instruction.  There was a lot of evidence at trial

9    regarding industry custom.  This was a subject of my motion

02:45    10    in limine.  I believe the Court ruled that custom alone

11    cannot establish that a Defendant acted -- she said that she

12    acted in good faith.

13         The issue for the jury would be willfulness.  Good

14    faith, of course, is an issue for the Court.  But I would

02:45    15    like -- I think that an instruction would be appropriate so

16    the jury knows how to analyze that evidence that the reliance

17    on industry custom alone cannot establish that the Defendant

18    acted willfully, and also industry custom is actually not a

19    defense to the claim.  It was only allowed with respect to

02:46    20    the willfulness issue.

21         THE COURT:  But willfulness is for the jury, right?

22         MRS. ROBBINS-BOBER:  Yes.  Willfulness is for the

23    jury, but I don't want the jury to be confused that because

24    other -- because other clubs did this, you know, didn't pay

02:46    25    deejay's wages, that that is a defense to liability as to the

1    wage claim as opposed to the separate issue.

2            THE COURT:  Well, come up with something while I'm

3    working and run it by Mr. McDonald, and then I'll consider

4    it.  I have enough work with what I have to do.

02:46  5            RIGHT:  Yes, Your Honor.  I will e-mail that to

6    you.  Thank you.

7            THE COURT:  All right.

8            THE COURTROOM DEPUTY:  Court is in recess.

9

10   *      *      *      *      *      *      *      *      *      *      *

11       *(Thereupon, proceedings were held but not transcribed.)*

12   *      *      *      *      *      *      *      *      *      *      *

13

14

15      (Thereupon, the above portion of the trial was concluded.)

16

17                        *           *           *

18

19

20

21

22

23

24

25

1           **C E R T I F I C A T E**

2

3           I hereby certify that the foregoing is an accurate

4    transcription of the proceedings in the above-entitled

5    matter.

6

7       2-9-2015

8    _____        _____

9    DATE COMPLETED        GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25