```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2                            MIAMI
                     CASE NO. 13-CV-23429
 3      _____

 4      MITCHELL ROSARIO,
                           Plaintiff
 5           vs.                       Thursday, January 29, 2015
        12425, INC., D/B/A STIR CRAZY;
 6      LAURA INSUA; MANUEL H. INSUA;
        AND HERIBERTO FLOREZ,
 7                         Defendants.

 8      _____

 9                          JURY CHARGE

10         BEFORE THE HONORABLE ALICIA M. OTAZO-REYES,

11         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
        _____
12
                       A P P E A R A N C E S
13
        FOR THE PLAINTIFF:    Samara Robbins Bober, ESQ
14                            Peter J.M. Bober, ESQ
                              Bober and Bober, PA\
15                            1930 Tyler Street
                              Hollywood, FL  33020
16                            (954) 922-2298
                              Samara@boberlaw.com
17                            Peter@boberlaw.com

18      FOR THE DEFENDANT:    DAVID M. McDONALD, ESQ
                              JARED McLUSKEY, ESQ
19                            McLuskey & McDonald
                              8821 SW 69th Ct
20                            Miami, FL  33156
                              (305) 662-6160
21                            Dmcdonald@mmlawmiami.com
                              Jared@mmlawmiami.com
22
        REPORTED BY:          GIZELLA BAAN-PROULX, RPR, FCRR
23                            United States Court Reporter
                              400 North Miami Avenue, Suite 8S32
24                            Miami  FL  33128
                              (305) 523-5294
25                            gizella_baan-proulx@flsd.uscourts.gov
```

1                          P R O C E E D I N G S

2             (The following proceedings were held in open court.)

3

4     *     *     *     *     *     *     *     *     *     *     *

5             (Thereupon, proceedings were held but not transcribed.)

6     *     *     *     *     *     *     *     *     *     *     *

7

8             THE COURTROOM DEPUTY:  All rise.  Court is again in

9     session.

10            THE COURT:  All right.  Thank you very much.

11    Please be seated.  All right.

12            As my clerk told you, that is not final.  I was a

13    little bit rushed.  I'm sorry it took me longer than I

14    expected.

15            Let me just say with regard to the matter of the

16    Florida Minimum Wage Law, in addition to the case cited by

17    Mr. McDonald, Nichols versus Laboratory Corporation of

18    America, there is a case from the Southern District of

19    Florida, Delafana (ph.) versus Feeding South Florida, 2013,

20    Westlaw 2646729, June 12, 2013, an opinion by Judge Cohn.

21    And there he says courts in this district have routinely

22    dismissed FMWA claims that failed to satisfy the pre-suit

23    notice requirements.  He cites to a case by Judge Cooke.  He

24    cites to a case by Judge O'Sullivan.

25            And I note that in the Nichols case, the Middle

1    District judge acknowledged that Florida courts are split on

2    the issue of whether plaintiffs who have filed suit under

3    Article 10, Section 24 must nonetheless comply with the

4    FMWA's notice requirement.

5            It's not clear, Ms. Bober, when you have a case

6    under the constitution or not.  I think that you're

7    proceeding -- let me finish.  You're proceeding under FMWA

8    but, regardless, later on in the opinion, the Judge says,

9    "Allowing a cause of action to proceed under the amendment

10   without meeting the notice requirement renders Section

11   448.110(10) and the FMWA meaningless."

12           So here the Judge was saying that even if you bring

13   it under the Florida Constitution you have to comply with the

14   notice requirement of the statute.  That's what the Middle

15   District said, but our district basically says that generally

16   in our district we require the pre-suit notice requirement.

17   We enforce the pre-suit requirement notice.

18           So I think on the authority of Judge Cohn's case,

19   and the cases cited therein, and noting that there is a

20   recognized split in the opinions in Florida and no direction

21   from the Florida Supreme Court or the Florida District Court

22   that has been cited to me, I will adopt Judge Cohn's

23   viewpoint and ruling on this issue.

24           So I will grant the Defendants' Motion for Judgment

25   as a matter of law as -- wait.  Before I do that.  Hold on.

1    I'll let you speak, Ms. Bober.  I skipped a step.  Hold on.

2            I have reviewed the stipulation that was made by

3    the parties that only stipulated that the other defendants,

4    namely Stir Crazy and the Insua defendants, had -- were

5    incorporated into the letter addressed to Mr. McDonald.  I

6    have reviewed the letter, which hopefully I brought with me.

7    Maybe I looked at it online.  No, I did print it.  I did

8    print it.

9            So the letter which was kindly provided me by

10   Ms. Bober, and I can make part of this record, but it needs

11   to be under seal because it says for settlement purposes

12   only.  Let me just say what the letter says.

13           So while we wait, I've looked over the case law.

14   I've looked over the pretrial stipulation that only

15   explicitly encompasses Stir Crazy and the Insua defendants.

16   And now I'm going to address the letter.  I have pulled it

17   up, and thank you, Ms. Bober, for sending it.

18           The letter on the straight line says, "Unpaid

19   minimum wage overtime and unjust enrichment claims of

20   Mitchell Rosario against 12425, Inc., doing business as Stir

21   Crazy, Laura Insua and Manuel Insua."

22           And it goes on to say, "Please be advised that this

23   law office represents the interests of Mitchell Rosario, a

24   disk jockey formerly employed by 12425, Inc., doing business

25   as Stir Crazy, Laura Insua and Manuel Insua."

1          And then another paragraph says, "Mr. Rosario

2    worked for your clients from about 2001 to the present."

3    There is no mention of Mr. Flórez in the letter.  There is no

4    mention of Mr. Flórez in the stipulation.  And I don't think

5    that there's any basis to impute notice to Mr. Flórez from

6    this letter just because of the fact that Mr. McDonald was

7    representing, presumably, Mr. Flórez at the time.  Under that

8    logic, every client of Mr. McDonald's would have received

9    this notice.

10          You may address me, Ms. Bober, but those are my

11   rulings.

12          **MRS. ROBBINS-BOBER:**  Thank you, Your Honor.  The

13   Plaintiff would rely on the case of Throw versus Republic,

14   2006 Westlaw 1823783, which did hold that the notice

15   provision is unconstitutional.  I think -- I don't think that

16   the law is uniform at all on that issue.

17          Also, my complaint does specifically bring the

18   minimum wage claim under the Florida Constitution as well as

19   the statute, so he does have -- so --

20          **THE COURT:**  All right.  So I stand corrected.  You

21   did bring it under both.

22          **MRS. ROBBINS-BOBER:**  Yes.

23          **THE COURT:**  But still, the case applies then, the

24   Middle District that basically says to disregard the statute

25   in addressing the constitutional claim would basically make

1    meaningless the statute.

2         **MRS. ROBBINS-BOBER:**  Finally, they would not be

3    entitled to judgment as a matter of law, it would only be a

4    dismissal without prejudice.  There's a five-year statute of

5    limitations on Florida Minimum Wage Act claims, so you could

6    dismiss it and the plaintiff would be able to re-file it, of

7    course, subject to the statute of limitations as of the date

8    of filing after sending a pre-suit letter.

9         **THE COURT:**  All right.  Let me hear you on that,

10   Mr. McDonald.

11        **MR. McDONALD:**  Your Honor, first, I didn't --

12   actually, when the letter was received, I did not represent

13   Mr. Flórez until the suit was filed.

14        **THE COURT:**  So that adds even more support for the

15   decision I have made, more factual support.

16        **MR. McDONALD:**  And, you know, the suit that was

17   brought, the claims were made, we have had a trial on the

18   issues.  Mr. Flórez is entitled to a judgment as a matter of

19   law.

20        **THE COURT:**  You may be running into a claims

21   splitting problem here, Ms. Bober, but let me hear you on the

22   dismissal without prejudice.  What's your viewpoint on that?

23        **MR. McDONALD:**  If they want to dismiss it without

24   prejudice now before we go further, I can't stop them from

25   doing that.  But we were -- the lawsuit was brought.  The

1    claims were made.  The trial, the evidence has been

2    presented.

3         They -- Mr. Flórez is entitled to a judgment as a

4    matter of law, at this point.  Like I said, if they want to

5    now drop him, that's their decision but the Court should not

6    dismiss him now to give him another opportunity.

7         **THE COURT:**  I'm sorry, I don't think that they're

8    willing to drop him because they do not agree with my

9    decision.

10        **MS. ROBBINS-BOBER:**  Yes.

11        **THE COURT:**  They're saying if I make that decision

12   I should dismiss it without prejudice.

13        **MRS. ROBBINS-BOBER:**  Yes.

14        **THE COURT:**  But they're not ready to voluntarily

15   dismiss him.

16        **MRS. ROBBINS-BOBER:**  No.  You're correct.

17        **THE COURT:**  All right.  All right.  Well, I really

18   think that you would find problems with claim splitting bars,

19   Ms. Bober.  My ruling stands.  It's a judgment as a matter of

20   law.

21        As to the Florida minimum wage claim against

22   Mr. Flórez, I rule in favor of Mr. Flórez as a matter of law

23   for failure to comply with the pre-suit notice requirement.

24        Now, that being said, we will address it further.

25   I did not make changes in the jury instructions for one

1    reason.  Everything is combined.  The FLSA and the minimum

2    wage claim is combined so I don't see how I can untangle

3    Mr. Flórez from the instructions.

4         I see that in the verdict you ask that the jury

5    give separate amounts of money for each of the claims.  So

6    what could be done is if any money is awarded on the -- well,

7    not even.  Not even because the FLSA and minimum wage claim

8    are combined in every aspect of the jury instructions so I

9    don't know how that ruling is going to affect the

10   instructions to the jury.

11        Mr. McDonald, you see what I'm saying?  Everything

12   is --

13        **MR. McDONALD:**  Right.  It may be able to be handled

14   post-verdict if it's necessary based on the Court's ruling.

15        **THE COURT:**  Right.  That's what I was thinking, but

16   then even the overtime and minimum wage amounts are combined

17   under the FLSA and the Florida law.  You see what I'm saying?

18   Yes.

19        That's the difficulty.

20        **MRS. ROBBINS-BOBER:**  We can separate out the --

21   like on the verdict form, I think it's paragraph 8.  I don't

22   know, there is a couple of verdicts.

23        **THE COURT:**  Let's address that.  Maybe we can

24   separate it out on the verdict form.

25        So that's the ruling.  I will file the letter under

1    seal in the case, the letter dated September 13, 2013, to

2    Mr. McDonald from the Bober & Bober Law Firm so that that

3    remains part of the record for purposes of any review of my

4    ruling on granting the motion as a matter of law.

5         So now let's look through my instructions.  Have

6    you all had a chance to look them over or do you need a few

7    more minutes?  I'll be happy to give that you time.

8         MR. McDONALD:  I've had a chance to look at them,

9    Your Honor.

10        THE COURT:  And you, Ms. Bober?

11        MRS. ROBBINS-BOBER:  I may need a few more because

12   there's some specific changes I'm noticing.

13        THE COURT:  All right.  Let me just tell you that

14   my clerk has been looking for a taking the Fifth instruction.

15   He hasn't found one.  And I have not incorporated the

16   industry custom instruction because I didn't have a chance.

17        MRS. ROBBINS-BOBER:  Your Honor --

18        THE COURT:  So, and I see -- oh, I see you gave me

19   two supplemental instructions.  I haven't included those

20   either.  So we'll discuss those also.  I'll give you ten

21   minutes.  All right?

22        MR. McDONALD:  You were -- I do have a case on the

23   Fifth Amendment.

24        THE COURT:  Oh, you do?

25        MR. McDONALD:  Actually, a couple of them.

```
1           THE COURT:  And an instruction?

2           MR. McDONALD:  Well, maybe it's a case that we can

3    create an instruction.

4           THE COURT:  All right.

5           MR. McDONALD:  It's Baxter versus Palmigiano, US

6    Supreme Court, 425 U.S. 308, page 318.  It's a 1976 claim.

7    And Jared, you had a couple of other cases.

8           THE COURT:  Go ahead and give us the cites.

9           MR. McLUSKEY:  Yes, ma'am.  Lefkowitz versus

10   Cunningham.  It's 431 U.S. 801 at 805.  And then there is

11   Enjosa (ph.) versus Butler.  The cites I'll grab for you in a

12   moment on that case.

13          And lastly, Farace, F-A-R-A-C-E, versus Independent

14   Fire, and that's 699 F.2d 204, a U.S. Court of Appeals case.

15   I'll grab that last cite for you.

16          Thank you.

17          THE COURT:  All right.  Go ahead and start pulling

18   those cases.

19          THE LAW CLERK:  (Complies.)

20          THE COURT:  One more comment I want to make sure

21   that you're cognizant and aware of it, I believe my

22   recollection was that Plaintiff's position was that the lack

23   of notice was a defense based on the case law that I have

24   cited, it -- given that these were done on a motion to

25   dismiss, lack of notice is, I find, an element of the suit.
```

1   So for that reason, I did not revamp the instructions to have

2   a burden of proof on the defense and to prove any defenses

3   because that's the only defense that was alluded to.

4          If I missed anything or if there's any other

5   grounds to give a burden of proof and to articulate a

6   defense, I'd be happy to consider that when we meet again.

7   All right?

8          **MRS. ROBBINS-BOBER:**  I apologize.  Can you repeat

9   that?

10          **THE COURT:**  I'm sure Mr. Bober can.

11          **MRS. ROBBINS-BOBER:**  I'm sorry.

12          **THE COURT:**  All right.  I'll be back in ten

13   minutes.

14          **MR. McLUSKEY:**  Judge, I have the case law on the

15   one last case.  May I approach and hand this to you for your

16   clerk?

17          **THE COURT:**  Give it to Ms. Martin.

18          **MR. McLUSKEY:**  Yes, ma'am.

19          **MRS. ROBBINS-BOBER:**  Your Honor, could I just put

20   on the record regarding the evidence of backpay Mr. Rosario

21   did testify regarding the missed shift on the 21st.

22          **THE COURT:**  I'm sorry.  What are you talking about?

23          **MRS. ROBBINS-BOBER:**  Regarding the backpay issue.

24          **THE COURT:**  We'll address that when I come back.  I

25   thought you needed to review my instructions.

1          **MRS. ROBBINS-BOBER:** Yes, I do.

2          **THE COURT:** I'll give you time to do that.

3          **MRS. ROBBINS-BOBER:** Thank you very much.

4          (Thereupon, a brief recess was taken from 4:04 p.m.

5    to 4:13 p.m.)

6          **THE COURTROOM DEPUTY:** All rise. Court is again in

7    session.

8          **THE COURT:** Thank you. Please be seated. All

9    right. So I would like to address my proposed instructions

10   and hear any objections or any questions for changes.

11         After I finalize them at some point I would rule on

12   the request. We are under a bit of a time constraint because

13   our court reporter, who has been so faithfully and hard-

14   working, needs to leave by 5:20. So I'd like to finalize

15   what I'm giving to the jury and then my custom is usually to

16   put on the record the rulings on the request.

17         But I can just as easily do that manually after I

18   make the -- after we finalize the instructions and then file

19   that so that the record is complete on what was requested and

20   my rulings are.

21         Unfortunately, we don't have the luxury of time and

22   I have to say that the court reporter has been really working

23   hard and I do not want to in any way impinge on her time

24   commitments.

25         So with that said, you all have a set of the

1    Court's proposed instructions to the jury.  You will notice

2    that pages are not numbered.  I don't do that until the set

3    is finalized.

4         So the first two instructions are pattern

5    instructions.  Actually, the first three are pattern

6    instructions.

7         If you flip to the fourth page you will notice that

8    I did not put in this preliminary instruction, I didn't give

9    that to the jury so I thought I would give it now to make

10   sure that that is not forgotten, and that's the one about

11   languages other than English.  And that is a pattern

12   instruction.  It's just that it's a preliminary one, so we

13   introduced it here.

14        **MRS. ROBBINS-BOBER:**  No objection from the

15   plaintiff.

16        **THE COURT:**  Right.  So then we go on to the fifth

17   page, which is also pattern.  So is the sixth page which

18   includes witness having been convicted of a felony so I took

19   that one, that alternative.  Then I have included a

20   deposition instruction and that's also taken from the

21   pattern.

22        Are you all at that page?

23        **MR. McDONALD:**  Yes.

24        **MRS. ROBBINS-BOBER:**  Yes, Your Honor.

25        **THE COURT:**  All right.  Any problems with that?

1           MR. McDONALD:  The prior to the deposition

2   instruction, did you -- did I mishear you that you said that

3   the instruction before addresses the Fifth Amendment issue?

4           THE COURT:  No, no, no.  Felony conviction,

5   credibility of witness.  You know, there's two variations.

6           MR. McDONALD:  Yes.

7           THE COURT:  No, my clerk is pulling the cases that

8   you all cited.  I haven't done that one yet.  So we're at the

9   deposition instruction.  And that's a pattern.

10          Any problems with how that has been phrased or

11  anything like that?

12          MRS. ROBBINS-BOBER:  None from the plaintiff.

13          MR. McDONALD:  No objection.

14          THE COURT:  All right.  So we're good through

15  there.

16          Then we have the burden instruction coming up, and

17  as I stated, and I give you an opportunity now, it is not an

18  instruction that addresses at all burden of defense.  I made

19  the ruling on the minimum wage.

20          Does anybody feel the need of a burden of defense

21  and instructions on any kind of defenses?

22          MR. McDONALD:  None from the defense.

23          THE COURT:  Ms. Bober?

24          MRS. ROBBINS-BOBER:  Defendant hasn't articulated

25  any defenses.

1        THE COURT:  Right.  But you had postured that the

2   minimum wage pre-notice was a defense and I've disposed of

3   that.  So we don't have any other ones to address?

4        MRS. ROBBINS-BOBER:  No, Your Honor.  Thank you.

5        THE COURT:  All right.  So now we're in the

6   introduction to the claims.  And this is, again,

7   notwithstanding my ruling on the minimum wage as to

8   Mr. Flórez, I just don't see how to strip him off because

9   it's just general that they did not pay minimum wage and

10  overtime, and I think it would be confusing to the jury to

11  separate Mr. Flórez at this point in time.

12        I'm willing to hear from you, Mr. McDonald.

13        MR. McDONALD:  I agree.  I think it would be

14  confusing.  On the other hand, I don't -- and I haven't

15  thought of a way to do it.  But, however, he's not entitled

16  to -- if the jury's verdict is against him, he's not entitled

17  to -- they're not entitled to a judgment against him for all

18  of those years based on -- and so somehow there has to be a

19  delineation of damages.

20        THE COURT:  All right.  So maybe that's how we can

21  do it when we do the damages part of it.

22        MR. McDONALD:  Right.

23        THE COURT:  All right.  Let's do it like that.

24        All right.  So any objections to this instruction?

25        MRS. ROBBINS-BOBER:  Yes, Your Honor.  The

1    Plaintiff has asserted retaliation claims and under both the

2    FLSA and the Florida Minimum Wage Act and Florida Minimum

3    Wage Amendment as well.

4         THE COURT:  So you want to say on the third line

5    from the bottom because he took steps to enforce his rights

6    under the FLSA and the FMWA?

7         MRS. ROBBINS-BOBER:  Correct.

8         THE COURT:  All right.  I'll make that change.

9         MR. BOBER:  As long as the FMWA is standing for

10   both.

11        THE COURT:  If you take the time to read two lines

12   up, you will see that it does.

13        MRS. ROBBINS-BOBER:  Exactly.

14        MR. McDONALD:  Your Honor, the other suggestion is

15   not reference, just say he took efforts to enforce his rights

16   and then just -- or you can include the various, you know,

17   letter acronyms for each act.

18        THE COURT:  Well, I'm treating the two of them as

19   one because, luckily, they both end with A.

20        MRS. ROBBINS-BOBER:  No objection from the

21   Plaintiff.  I think it's easier for the jury.

22        THE COURT:  I think we should stick to it because

23   otherwise, what rights is he enforcing?  All right.  I'll

24   make that change.

25        MRS. ROBBINS-BOBER:  I'm sorry.  So you're going to

1    add the, "And the FMWA"?

2            THE COURT:  Right under the FLSA and the FMWA,

3    comma, defendants retaliate by terminating and so on.

4            MRS. ROBBINS-BOBER:  I just wasn't sure which

5    change because there have been two suggestions.

6            THE COURT:  Okay.  Then the next one I believe I

7    took that from the joint submission.  I moved around the

8    order of what you gave me but everything is there.  It's just

9    that this way it flowed better.

10           So basically the first one is saying everything you

11   said, but kind of takes off the table the second fact.  All

12   right?

13           MRS. ROBBINS-BOBER:  Yes, Your Honor.  No objection

14   from the Plaintiff.

15           THE COURT:  All right.

16           MR. McDONALD:  It's fine.

17           THE COURT:  All right.  Then on the first fact on

18   an employee, I took the Defendants' proposal because that is

19   what the pattern instruction says.  I think that Plaintiff

20   submitted something along the same lines, but we checked and

21   the Defendants' proposal tracks the language of the pattern

22   from the 11th Circuit.

23           MRS. ROBBINS-BOBER:  I'm sorry, I'm confused where

24   you are.  The first fact?

25           THE COURT:  As to the first fact, it is not always

1    clear.  And that is the pattern.

2            MRS. ROBBINS-BOBER:  This is for the individual

3    employer?

4            THE COURT:  No.  This is -- this is whether he was

5    an employee or not.  There's further instructions later on

6    the individuals.  This the pattern on whether someone is an

7    employee or an independent contractor.

8            MRS. ROBBINS-BOBER:  Yes, Your Honor.

9            THE COURT:  And it's the pattern.

10           MRS. ROBBINS-BOBER:  Yes, Your Honor.

11           THE COURT:  All right.  Then after that, two pages

12   after that comes the one for the individuals.

13           MRS. ROBBINS-BOBER:  But I have a number of

14   objections to this page.

15           THE COURT:  Which one?

16           MRS. ROBBINS-BOBER:  To the regarding employer

17   liability.

18           THE COURT:  All right.  But you're okay with the

19   pattern as to the first fact?

20           MRS. ROBBINS-BOBER:  The first paragraph?

21           THE COURT:  The two pages that start as to the

22   first fact that we just went through and I said it's the

23   pattern.  Can we move on from there?

24           MRS. ROBBINS-BOBER:  I vigorously object.  This is

25   the pattern for -- I think this is 4.24 that is not an FLSA

1    instruction.  This is not applicable to cases involving the

2    FLSA.  I have extensive annotations on my jury instructions

3    on the definition of an employer -- let me see.  One moment,

4    please.

5              THE COURT:  I'm sorry, where else would employers

6    be defined under other than the FLSA?

7              MRS. ROBBINS-BOBER:  There's many statutes.  The

8    ADA, the ADEA.

9              THE COURT:  For purposes of independent contractor?

10              MRS. ROBBINS-BOBER:  Yes, Your Honor.  This -- one

11    moment.  It's in the annotations in my instruction.

12              One moment.  The appropriate standard for an

13    employee status under the FLSA is the six factor test, the

14    economics realities test.

15              THE COURT:  That is what this alludes to.

16              MRS. ROBBINS-BOBER:  Respectfully, this is not the

17    six factor economics realities test.  There are a number of

18    differences under the tests as articulated in Scantland

19    versus Knight, that's an 11th Circuit case 721 F.3d 1308.  It

20    does not ask how a plaintiff is paid.  It does not ask how a

21    plaintiff offers its services.  It also does not ask what the

22    party's intent was.

23              And even the Court has said that the intent of the

24    parties is only relevant to the extent it mirrors the

25    economic realities.  My instruction is the correct

1    instruction.

2              THE COURT:  Well, I had my clerk check, and he

3    assured me that the one submitted by Defendant was the 11th

4    Circuit pattern, but maybe he got it backwards.

5              MR. McDONALD:  Your Honor, it is, and it does say

6    it applies to the FLSA case, and the instruction talks about

7    intent.  It says that while intent is a consideration, it's

8    not -- it's not the -- it's not controlling and that's what

9    this instruction says and that's what the law is.

10             THE COURT:  Well, Ms. Bober is citing 11th Circuit

11   4.24 as her source, right?

12             MRS. ROBBINS-BOBER:  No, what I'm saying is 4.24 is

13   not an FLSA instruction.  I think it refers to the ADA and

14   ERISA and actually there are specific cases that say that the

15   FLSA's definition of an employer is different than the ADA

16   and ERISA.

17             THE COURT:  Ms. Bober, aren't you italics in the

18   joint proposed instructions?

19             MRS. ROBBINS-BOBER:  I am underlined.

20             THE COURT:  You're underlined?

21             MR. McDONALD:  No, that's not correct.  Defense is

22   underlined.

23             MRS. ROBBINS-BOBER:  Defendants are italics and the

24   plaintiff -- the plaintiff is underlined.

25             MR. McDONALD:  I'm sorry.

1          **THE COURT:**  Did I get it backwards then?

2          It says the portions of each instruction proposed

3   by the Plaintiff but objected to by Defendants are printed in

4   italics.  The portions of each jury instruction proposed by

5   Defendants but objected to by the Plaintiff are underlined.

6          That says to me that you are italics and you are

7   citing as your reference authority 11th Circuit pattern jury

8   instructions, civil cases, federal claim instructions number

9   4.24 of the Fair Labor Standards Act, and then you're saying

10  as modified to include economic realities under the FLSA.

11         **MRS. ROBBINS-BOBER:**  Your Honor, 4.24 is not an

12  FLSA instruction.

13         **THE COURT:**  Well, that's what you told me.  Look at

14  page 24.

15         All right.  Let me pull up the --

16         **MRS. ROBBINS-BOBER:**  I apologize, that is a typo.

17         **THE COURT:**  All right.

18         **MRS. ROBBINS-BOBER:**  The Court in her order on

19  summary judgement also lists these factors.  4.24 is not an

20  FLSA, it's a general instruction that combines the economics

21  realities test, a common law test for Title 7 in ERISA cases.

22  I actually discuss this in my reply in support of Plaintiff's

23  Motion For Summary Judgement, which is docket entry 93.

24         And in the case of Nationwide Mutual Insurance

25  versus Darden, 503 U.S. 318, 1992, the Court noted that the

1    textual asymmetry between ERISA definition and the FLSA's

2    more expensive definition of the term employ in concluding

3    that such difference precludes reliance on FLSA cases when

4    construing ERISA kinds of employees, and I also rely on

5    Antenor versus D&S Farms, 88 F.3d 925.  That's 11th Circuit

6    1996, and defining employment under both the FLSA and the

7    Migrant and Seasonal Workers Act, Congress explicitly

8    rejected the common law definition of employment, which is

9    based on limiting concepts of control and supervision.

10         That is why the general instruction 4.24 is not

11   appropriate.  It considers things that just are not

12   considered in the six factor economics reality test as

13   articulated in the 11th Circuit Scantland versus Knight

14   opinion.

15         And I apologize to the Court for referencing 4.24

16   as a Fair Labor Standards Act instruction.

17         **THE COURT:**  All right.  What I'm going to do is I'm

18   going to go back and pick up what Judge Ungaro used in the

19   order on summary judgement.  And to be perfectly honest, I

20   thought that's what I was giving, but apparently there was a

21   miscommunication.

22         **MR. McDONALD:**  Your Honor, I believe we submitted

23   what we believed was the pattern instruction for FLSA claims

24   which can be used in other contexts, and we would request

25   that as the Court --

1          THE COURT:  If Judge Ungaro used certain standards

2     for summary judgement, I think it would make sense to use the

3     same standards now.  I will revise that and comport with

4     Judge Ungaro's order.

5          MRS. ROBBINS-BOBER:  It's on page 14 of her order,

6     Your Honor.  That's docket entry 99.

7          THE COURT:  All right.  So that's the change I will

8     make there.

9          So that takes us to -- I'm assuming the

10    introduction is fine.  It's the elements, right, that you

11    have problems with?

12         MRS. ROBBINS-BOBER:  Yes, Your Honor.

13         THE COURT:  All right.  So we will keep everything,

14    you should answer this question in economic realities, there

15    are a number of factors and I'll just rephrase the Factors A

16    through F to comport with Judge Ungaro's order.

17         Now, we move to the individual to be employed by

18    more than one employer.  Are there any problems with that?

19         MRS. ROBBINS-BOBER:  Yes.  One problem is when I

20    filed my supplemental instruction, I requested after -- it's

21    the last paragraph after the last line on that page.

22         THE COURT:  Just tell me which paragraph you're

23    talking about.

24         MRS. ROBBINS-BOBER:  It's the last paragraph that

25    starts, "To establish Defendant Laura Insua."

1      **THE COURT:**  So how do you want to change that?

2      **MRS. ROBBINS-BOBER:**  I had suggested language, the

3   primary concern, however, when determining if an individual

4   should be liable as an employer is the individual's role in

5   causing the wage violation, and that language is taken right

6   out of Lamonica, which also is an 11th Circuit case, 711 F.3d

7   1299 at 1314.  That's 11th Circuit 2013.  And the case says,

8   it states that with respect to individual liability, quote,

9   our primary concern is the supervisor's role in causing the

10  FLSA violation.  So I request that language be added.  But I

11  would request that it say the individual's role because

12  Lamonica was a case involving his supervisors.

13     **THE COURT:**  So you want the sentence after other

14  employees at the end of the first page of that instruction.

15  "The primary concern, however, when determining if an

16  individual should be liable as an employer is the

17  individual's role in causing the wage violation."  That's

18  what you're asking me to add?

19     **MRS. ROBBINS-BOBER:**  Yes, Your Honor.

20     **THE COURT:**  Just that sentence?

21     **MR. McDONALD:**  Where is it?  Where are you asking

22  it to be added, Counsel?

23     **MRS. ROBBINS-BOBER:**  That would be at the bottom.

24     **THE COURT:**  The page that starts, "The law allows

25  for an individual to be employed by more than one employer,"

1   at the bottom of that page.  Add that sentence at the end of

2   the bottom paragraph which is the way that I think that you

3   had it, right?

4          **MRS. ROBBINS-BOBER:**  Yes, Your Honor.

5          **THE COURT:**  All right.  Any objection,

6   Mr. McDonald?

7          **MR. McDONALD:**  Yes, Your Honor.  I think that's --

8   the case Patel versus Wargo also addresses this as does --

9   and the law is the test is, as the Court put in its

10  instruction, that the plaintiff must prove that the

11  individual has operational control of significant aspects of

12  the day-to-day functions or had direct responsibility for the

13  supervision of the plaintiff.  That's the standard, that's

14  the law, that's what the jury needs to determine in

15  determining individual liability.

16          That last sentence is not a statement of the law as

17  it's part of the discussion, I believe, in the Lamonica case,

18  but I don't believe it's -- I'm trying to find the Patel

19  case.

20          **THE COURT:**  There is a citation here by Ms. Bober

21  that says in Patel there must -- let's see -- must either be

22  involved in the day-to-day operation or have some direct

23  responsibility for the supervision of the employee.

24          **MRS. ROBBINS-BOBER:**  Yes, Your Honor.

25          **THE COURT:**  Which we have.  We have that statement.

1          **MRS. ROBBINS-BOBER**:  And Lamonica comes after

2    Patel, and it's a correct statement of the 11th Circuit law.

3    Their essential statement in this case when you have

4    individuals such as Flórez who was involved in the day-to-day

5    and you have also a lot of testimony regarding the Flórez and

6    Laura who decided to pay Mr. -- the pay policy at the club.

7          Lamonica is 11th Circuit, it's binding.  It comes

8    after.  It's going to be helpful to the jury to understand

9    the law they should apply in this case.

10          **THE COURT**:  Where in your authority do you show

11   that language that you want to put back in?

12          **MS. ROBBINS-BOBER**:  That was in my supplemental

13   instruction.

14          **THE COURT**:  I'm looking at your supplemental

15   instruction.

16          **MRS. ROBBINS-BOBER**:  It's comes after -- it's at

17   the end.  It's the last thing before I have those things

18   about given as modified.

19          **MR. McDONALD**:  Where in Lamonica are you reading

20   from?

21          **MRS. ROBBINS-BOBER**:  Sure.  That's at page 1314.

22          **THE COURT**:  Our primary concern is the supervisor's

23   role in causing the FLSA violation.  I'm going to consider

24   it.  I may or may not add it.

25          All right?

1          I'm going to look over the Lamonica case and decide

2     if that is really a standard or just dicta.  And then I will

3     decide whether to add it or not.  And, obviously, if I don't

4     add it, then your objection would be preserved.

5          All right?  So any other change to the individual

6     liability instruction?

7          **MRS. ROBBINS-BOBER:**  I think that -- no objection,

8     Your Honor.

9          **THE COURT:**  All right.  All right.  So now we move

10    on to the third element.  And, again, I have everything that

11    you asked for, I just organized it minimum wage information

12    combined and overtime information combined.

13         **MRS. ROBBINS-BOBER:**  Your Honor, we would object to

14    this one because it leaves out the part of the pattern

15    instruction regarding inadequate records and --

16         **THE COURT:**  Well, I thought that that was taken

17    care of by your stipulation as to when he worked.  That's why

18    I left it out.

19         **MRS. ROBBINS-BOBER:**  It goes to the issue of

20    willfulness when records are inadequate and the jury is

21    entitled to know that the Defendants have the burden to keep

22    payroll, to keep records of time.

23         **THE COURT:**  How does that go to the issue of

24    willfulness?  Where in the instruction does it say that they

25    should consider that for willfulness?

1          **MRS. ROBBINS-BOBER:**  Well, the standard for

2    willfulness is the reckless --

3          **THE COURT:**  I know what the standard is.  How does

4    that inadequate records tie to willfulness?  Because there's

5    been a stipulation to what the time is.  So there is no need

6    to speculate on that.

7          **MRS. ROBBINS-BOBER:**  Well, I will maintain my

8    objection but I understand if you would like to overrule it.

9          **THE COURT:**  Well, I don't want to overrule you if

10   you have a basis, but if there is nothing tying inadequate

11   records to willfulness, then I just don't see the need to

12   give it.

13         **MRS. ROBBINS-BOBER:**  Your Honor, there is case law.

14   One of the facts that you can look at to determine whether an

15   employer has acted willfully is whether they kept adequate

16   records of an employee's time and hours worked and pay.

17         **MR. McDONALD:**  That -- Your Honor, that's not

18   applicable in this case.  That's not -- we have stipulated to

19   the hours because -- so we didn't spend days discussing

20   whether somebody showed up at 8:30 or 8:20 or 8:40 or left at

21   5:00 a.m. or 5:15 a.m., and, you know, and that whole -- you

22   know, there's never been a question that there's no records.

23   We have always agreed there's no records.  That's why we

24   stipulated so we wouldn't have to have such tedious testimony

25   about time of arrival and time of departure, it doesn't go to

1    the issue of improper conduct.

2         THE COURT:  The other thing is that there is and

3    have been introduced exemplars of schedules, and it has been

4    established what the shift hours are, so I don't know that an

5    inadequate records instruction would be totally appropriate

6    because the Defendant did keep track of who was working when,

7    albeit there is some testimony that some of it was not

8    correct, but it's not like they didn't keep track of who

9    covered each shift.

10        MR. McDONALD:  Your Honor, that's correct.  And

11   that's why we entered a stipulation because there was -- in

12   trying to determine if there's an overtime violation, we

13   entered a stipulation as to hours where one week we conceded

14   there was two and a half hours of overtime and the second

15   week it was less than a 40-hour workweek.

16        THE COURT:  Because the shifts are well-

17   established.

18        MRS. ROBBINS-BOBER:  Your Honor, the law, the FLSA

19   requires and it's in the Code of Federal Regulations, they

20   have a list of things that an employer must keep track of.

21        THE COURT:  And they did.  They kept logs of when

22   people worked the different shifts and everybody knew the

23   length of the shifts.

24        MRS. ROBBINS-BOBER:  No, Your Honor.  What the law

25   requires is that an employer keep track of the time -- the

1  hours worked each day and in each workweek in a 7-day period.

2      THE COURT:  So the point that I'm trying to make,

3  Ms. Bober, is, respectfully, that under the scenario that

4  this people worked it was deejay's shift, and they did keep

5  track of what deejay worked what shift, and it was known what

6  the length of the shifts were.

7      So I don't think that there's a basis for giving an

8  inadequate records instruction, number one, based on the

9  stipulation; number two, on the fact that you have not

10  pointed me to anything tying the lack of records to

11  willfulness, but you can -- but we can revisit the

12  willfulness instruction and make sure that it's adequately

13  covering.

14      So your objection is noted.

15      MRS. ROBBINS-BOBER:  Your Honor, if I may just

16  state that there was testimony that there was a -- more than

17  a two-year gap in some of the schedules as well, and our

18  stipulation was to the amount of hours for damages purposes.

19  It was not a stipulation as to any issue regarding

20  willfulness.

21      THE COURT:  Right.  I understand that.  But the

22  hours, the inadequate records covers two things because

23  inadequate records when they are not kept by the Defendant,

24  the Plaintiff can submit their estimates.  We don't have that

25  situation here because there's been a stipulation.  You're

1   trying to tie inadequate records to willfulness.

2           You haven't given me a hook for that yet, so I am

3   going forward with this instruction as it stands.  I think it

4   would be confusing to the jury to tell them in this

5   instruction these are the hours, but listen, they were

6   inadequate records.  I think that would be very confusing.

7           So if you don't have any other matters other than

8   that one, we can move on now to the instructions you proposed

9   that I just included just out of an abundance of caution, but

10  I want to hear Mr. McDonald on it.

11          The FLSA prohibits any arrangement between employer

12  and a tipped employee whereby any part of the tip received

13  becomes the property of the employer.  I don't know that

14  that's applicable.

15          **MR. McDONALD:**  Your Honor, I had that page marked.

16  I don't think it's applicable here, this is not this kind of

17  case.  This is not a tip sharing situation.

18          **THE COURT:**  Yes.

19          **MR. McDONALD:**  I think the instruction is confusing

20  in this case and I think the jury won't know what it actually

21  means.

22          **THE COURT:**  I agree and, again, I would -- that's

23  why I had my clerk tell you this was provisional because I

24  just put it in here so we could discuss it, but this does not

25  appear to me to be applicable.

1          Let me hear from you, Ms. Bober.

2          **MRS. ROBBINS-BOBER:**  Well, I put this instruction

3    in here because there was testimony that the Stir Crazy

4    required Mr. Rosario to take -- to pay the $25, quote-end

5    quote, house fee and that money came out of the tips that the

6    dancers had shared with him.

7          **THE COURT:**  And they have come from that it, but it

8    didn't have to come from that.  It could be out of his

9    pocket.  And I don't see -- I think I agree with Mr. McDonald

10   that this is where you have minimum wage plus tip.  I think

11   that's that kind of instruction, to make sure that the

12   employer doesn't get credit, improper credit for the tips.

13   So I am going to eliminate that instruction.

14          Then this one that you suggested, I think it's a

15   little bit tied in also with your supplement that you just

16   sent me this afternoon.  So let's discuss them together.

17          An individual employee's right to overtime wages

18   and minimum wages cannot be abridged by contract or otherwise

19   waived by the employee.  And then you asked for one about

20   industry custom cannot deprive them -- industry custom alone

21   cannot establish Defendant did not willfully, and then I

22   don't understand this, where an employee receives tips only

23   and is paid no cash wages, the full minimum wage is owed.

24          So let's discuss all three of those together and

25   see if we can come up with one that will encompass whatever

```
 1   we need to cover along those concepts.
 2          First, Mr. McDonald, do you have an objection to
 3   the sentence, an individual employee's right to overtime
 4   wages and minimum wages cannot be abridged by contract or
 5   otherwise waived by the employee?
 6          MR. McDONALD:  Yes, I do.  It seems to be already
 7   included in the six factors that the standard includes where
 8   it says -- where it talks about the party's intent or
 9   agreement is not controlling.  It's just one of the factors
10   that can be considered.
11          This seems to take a statement of the law in a case
12   and give greater meaning to one of the six criteria that the
13   jury is going to consider earlier under the 4.24 instruction.
14          THE COURT:  All right.  Let me go back to the --
15   let me go back to the factor that we're now going to use and
16   make sure that that's covered there.
17          MRS. ROBBINS-BOBER:  Mr. McDonald was referring to
18   the old 4.24 instruction.
19          THE COURT:  I understand, that's why I just said
20   what I said.
21          MR. McDONALD:  Certainly, the parties -- under the
22   instructions, the party's intent is a factor for the jury to
23   consider.  And this instruction seems to take that out
24   totally and say it's -- and eliminate it, which -- I mean, in
25   4.24, which is why I believe 4.24 is necessary here, it's the
```

1    last item, F of that, says what was the party's intent, and

2    it says the party's intent is always important, but the

3    description the parties themselves give to their relationship

4    is not controlling.  Substance governs over form.  You should

5    consider all the circumstances surrounding the work

6    relationship.  No single factor determines the outcome.

7              Nevertheless, the extent of the right to control

8    the means and manner of the worker's performance is the most

9    important factor.

10             This instruction seems to just try to wipe away

11   anything to do with the party's intent.

12             THE COURT:  Well, we have to follow the 11th

13   Circuit economic realities test.  That's why I wanted to go

14   back to Judge Ungaro's summary judgement order and follow

15   that order and summary judgement.  Here we are.

16             What page did you tell me this was in?

17             MRS. ROBBINS-BOBER:  This is Berenstein (ph.) --

18             THE COURT:  No, Judge Ungaro's.

19             MRS. ROBBINS-BOBER:  It's on page 14, docket entry

20   99.

21             THE COURT:  The six factors used by Judge Ungaro do

22   not include the party's intent.

23             MRS. ROBBINS-BOBER:  Yes, Your Honor.  This doesn't

24   have to do with the economic realities test.  This has to do

25   with the waiver issue.  That's why we have like Linz Food

1   (ph.) regarding court approvals of settlement agreements.

2   This is -- the case that I cite is an FLSA case of FLSA wages

3   are non-waivable.  This goes back to the unequal bargaining

4   powers between an employer and employee, and this is the very

5   heart of the FLSA which was designed to --

6          **THE COURT:**  Ms. Bober, you keep jumping in and you

7   take me away from what I was trying to get at.

8          Mr. McDonald, the standard utilized by Judge Ungaro

9   at page 14 of her summary judgment order which is docket

10  entry 99 does not include party's intent factor.  So your

11  argument that this proposed instruction is surmised in the

12  intent of the parties doesn't fly because I'm not going to

13  use that.  I'm going to use Judge Ungaro's six point -- six

14  factor test.

15         Now, going back to -- there is nothing -- we have

16  not given any instruction to the jury to the effect that it

17  cannot be abridged by contract or otherwise waived by the

18  employee.

19         Would you agree that that's an accurate statement

20  of the law, Mr. McDonald?

21         **MR. McDONALD:**  I believe the statement as phrased

22  in 4.24 about the party's intent is applicable.  And I don't

23  believe this is -- I believe the way it's phrased in 4.24(f)

24  is an accurate statement of the law.

25         **THE COURT:**  So are you proposing that I add 4.24(f)

1   to the six factors that are in Judge Ungaro's summary

2   judgment order?  Is that what would you like me to do?

3           MR. McDONALD:  I believe that should be included.

4   I'm still -- I realize what Judge Ungaro put in her order.

5   I'm just not --

6           THE COURT:  And that's the standard by which this

7   case was measured at the summary judgment stage, so it seems

8   to me that it would be consistent to measure it the same way

9   at the trial stage.  All right.  I'm going to consider -- I'm

10  going to take that as a request to include the party's intent

11  when I rework the six factor instruction.

12          MRS. ROBBINS-BOBER:  Yes, Your Honor, and it's

13  particularly important in this case because there was a lot

14  of testimony regarding licensing agreements, and such.

15          THE COURT:  Well, so maybe I'll combine -- maybe

16  I'll combine in this supplemental instruction the party's

17  intent is always important, but the description the parties

18  themselves give to their relationship is not controlling.

19  Substance governs over form.  Continue that with an

20  individual employee's right to overtime wages and minimum

21  wages cannot be abridged by contract or otherwise waived by

22  the employee.

23          MRS. ROBBINS-BOBER:  No, Your Honor.  I would

24  object to that.  I would object to adding any language

25  regarding --

1          THE COURT:  I know you object.  I'm saying I may do

2     that.

3          MRS. ROBBINS-BOBER:  Okay, Your Honor.  I

4     apologize.

5          THE COURT:  All right.  So then if I -- whether I

6     proceed that way or not, then, Mr. McDonald, again, do you

7     contend that this statement is not correct in terms of the

8     law aside from the party's intent that the rights to overtime

9     pay cannot be abridged by contract or otherwise waived by an

10    employee?

11         MR. McDONALD:  I agree it's an accurate statement

12    but in the context in which it was being used it appears as

13    if you're telling the jury to disregard the intent of the

14    parties.

15         THE COURT:  Well, not if I combine it with the

16    party's intent.  They're not disregarding it.  I just want --

17         MR. McDONALD:  I guess, if we're going to use --

18         THE COURT:  -- a statement from you whether you

19    think that this is an inaccurate statement of the law that an

20    employee cannot waive away his rights.

21         MR. McDONALD:  I think it's -- in the context in

22    which it's being used it's misleading to the jury that they

23    should disregard --

24         THE COURT:  I'm not asking you any of that.  I'm

25    asking you is it an incorrect statement of the law.

1          **MR. McDONALD:**  As it's being used I'd say yes.

2          **THE COURT:**  All right.

3          **MRS. ROBBINS-BOBER:**  Your Honor --

4          **THE COURT:**  That's fine.  We can move on.

5          **MRS. ROBBINS-BOBER:**  Your Honor, I'd just like to

6    draw your attention, Judge Ungaro has already ruled on this

7    issue on docket entry 100, and she said in deciding whether

8    an individual is an employee within the meaning of the FLSA,

9    the label attached to the relationship is dispositive only to

10   the degree that it mirrors the economic reality relationship.

11         So an intent instruction that Defendants are

12   suggesting would not be correct because the economic

13   realities instruction is the correct one.

14         **THE COURT:**  All right.  All right.  I'll consider

15   all of those arguments.  All right.  So then I will give an

16   instruction along the industry custom along the lines of what

17   Judge Ungaro said, reliance on industry custom alone.  It's

18   not sufficient.  I will do something along those lines.  I

19   know that was her ruling.

20         **MRS. ROBBINS-BOBER:**  Your Honor --

21         **THE COURT:**  So I will work on that.  I am not set

22   on it, so there's not much going in arguing about it, you can

23   register your objections to it later.

24         What about where an employee receives tips only and

25   is paid no cash wage, the full minimum wage is owed?  Why do

1   we need that instruction?

2          MR. McDONALD:  The Defense doesn't believe we need

3   it.

4          THE COURT:  Ms. Bober?

5          MRS. ROBBINS-BOBER:  I'm sorry, where are you?

6          THE COURT:  In your Plaintiff's supplemental jury

7   instruction that you sent this afternoon.

8          MRS. ROBBINS-BOBER:  I'm sorry.  Which document

9   number are you referring to?

10          THE COURT:  It's not a docket entry because you

11   sent it to me by my e-mail.  It's what you sent me today at

12   1/29 at 2:50 p.m.

13          MRS. ROBBINS-BOBER:  Oh, I'm sorry, Your Honor.

14          THE COURT:  I don't think you have filed that in

15   the court record.

16          MRS. ROBBINS-BOBER:  I don't -- I'm sorry.  I think

17   I sent you the wrong document.

18          THE COURT:  Oh, okay.  Do you have that e-mail that

19   you sent me at 2:50 p.m.?  Industry custom and attached to

20   that there's another page?  Maybe it was --

21          MRS. ROBBINS-BOBER:  Oh, this was the second page

22   of the industry custom.  I'll withdraw that.

23          THE COURT:  All right.  All right.

24          MR. McDONALD:  Your Honor, may I just make one

25   comment as far as the contractual issue that we just

1   discussed?

2            THE COURT:  Yes.

3            MR. McDONALD:  Reading docket entry 100, I believe

4   Judge Ungaro's statement could be modified and utilized as

5   the instruction.  She says Plaintiff's characterization of

6   himself, but you say the party's characterization of the

7   Plaintiff is not dispositive of his status as an employee

8   under the FLSA, but is relevant to the independent contractor

9   employee issue to the extent it mirrors the economic reality

10  of the relationship.

11           THE COURT:  All right.  I'll take that into

12  consideration when I reword that instruction.

13           Let's move on down to retaliation, and my clerk has

14  come up with a Fifth Amendment instruction and I thank you,

15  defense counsel, for pointing us to the case law, and he'll

16  give you that.  We'll address that towards the end.

17           I will come up with an instruction that covers the

18  contractual thing, the intent and the custom in some fashion,

19  if I decide to cover intent.

20           All right.  How about the retaliation claim?  Wait,

21  let me see.  Oh, yeah.  I think I took all of this from the

22  agreed, the one that says claims that defendants retaliated.

23  I think all of this was agreed and then I ruled before that I

24  was going to take Plaintiff's proposal on that he was not

25  terminated because of his wage complaint and was offered his

1    job back.

2           Then I modified as I told you the elements and let

3    me know if you have problems with how I did that.  Is

4    everybody on the same page?

5           **MRS. ROBBINS-BOBER:**  Is the page in this case?

6           **THE COURT:**  To succeed on his claim, Plaintiff must

7    prove each of the following facts by a preponderance of the

8    evidence as to each Defendant.

9           **MRS. ROBBINS-BOBER:**  No objection from the

10   plaintiff.

11          **THE COURT:**  All right.  Mr. McDonald as to that

12   page?

13          **MR. McDONALD:**  That's acceptable, Your Honor.

14          **THE COURT:**  All right.  Then the fourth element is

15   the damages which is standard.  Damages.

16          And then I'll hear about the back wages in a minute

17   but in terms of if I allow it, I think that this is standard

18   and then I put the mitigation instruction as a separate page.

19          **MRS. ROBBINS-BOBER:**  Your Honor, I'm sorry, I was

20   just looking at the underlined wording.  With respect to the

21   paragraph that says for the second element, it's missing --

22   it's missing -- well, we don't have -- wait a second.

23          **THE COURT:**  No.  The word when is superfluous, I

24   think.  It needs to read for the second element, you are

25   instructed that as a matter of law that Defendant so-and-so

```
1    terminated Plaintiff's position at Stir Crazy.

2          So you must consider the second element proved as

3    to those two defendants.  Is that what you meant?

4          MRS. ROBBINS-BOBER:  No, Your Honor.  I have no

5    objection to that, I'm sorry.

6          THE COURT:  All right.  I just took out the word

7    when.  All right.  We have the pattern for the damages and

8    then I have -- honestly, I just took the mitigation

9    instructions straight from Defendants.

10         Any problem with the damages instruction or the

11   mitigation instruction?

12         MR. BOBER:  One moment, Your Honor.

13         MR. McDONALD:  Subject to our motion on damages,

14   no.

15         THE COURT:  Right.  On the backpay, right, and on

16   the humiliation that there's no damages.

17         MR. McDONALD:  On the sufficiency of the evidence

18   on humiliation and emotional pain.

19         THE COURT:  Right.  But I think that I decided that

20   I was going to let that to go to the jury in an abundance of

21   caution.

22         MR. McDONALD:  You did say that.

23         THE COURT:  All right.  So, you know, with that

24   caveat, do you have objections to the instructions

25   themselves?
```

1        **MR. McDONALD:**  No.  With that caveat I do not have

2   an objection to it.

3        **THE COURT:**  All right.  Plaintiff?

4        **MRS. ROBBINS-BOBER:**  No objection, Your Honor.

5        **THE COURT:**  All right.  Then we go to this one that

6   says willfully violated the law.  I'm not quite sure.  I

7   think that this was agreed to.  I don't -- I don't recall if

8   I just took it from somebody or not.

9        **MRS. ROBBINS-BOBER:**  I don't think it's part of the

10  pattern for minimum wages.

11       **THE COURT:**  For retaliation.  That's the context

12  that it's being given.

13       **MR. McDONALD:**  It's acceptable to the Defendant,

14  Your Honor.

15       **THE COURT:**  All right.  Again, this was -- yeah, I

16  just moved it around, but it's your language, your agreed

17  language at page 38.  So there should be no objection there.

18  All right.

19       The unjust enrichment, I believe I took that

20  directly from what you all jointly submitted.

21       **MRS. ROBBINS-BOBER:**  Is there another instruction

22  on willfulness?

23       **THE COURT:**  That's the only one you gave me.

24       **MRS. ROBBINS-BOBER:**  No, Your Honor.  This only

25  refers to the retaliation claim.

1      THE COURT:  Yes.

2      MRS. ROBBINS-BOBER:  There's also willfulness as to

3  the Minimum Wage Act claim.

4      THE COURT:  Then we have that for the FLSA claim

5  that they could count the three years instead of the two

6  years.

7      MRS. ROBBINS-BOBER:  Okay.  Yes, Your Honor.

8  You're correct.

9      THE COURT:  Then the last two are pattern.  I want

10  to get this out of -- then did you all get a chance to take a

11  look at the Fifth Amendment one that my clerk just handed?

12      MRS. ROBBINS-BOBER:  No objection from the

13  Plaintiff.

14      MR. McDONALD:  Looks to be the law, Your Honor.

15      THE COURT:  All right.  So I will put that in, and

16  I will insert it where I'm talking about consideration of the

17  evidence and credibility and so on.  I'll put it in that

18  area.  All right.

19      Then on the verdict form we said we were going to

20  try to come up with a way of splitting the minimum wages and

21  overtime so we could make that two separate lines and maybe

22  we can deal with Mr. Flórez that way.

23      MRS. ROBBINS-BOBER:  No objection, Your Honor, and

24  if you think we need separate verdict forms, I don't know if

25  it's getting too complicated.

1      THE COURT:  No.  Separate verdict forms, no,

2  because the recovery is only one.

3      MRS. ROBBINS-BOBER:  No, I mean separate verdict

4  forms for each Defendant.

5      THE COURT:  It tells you liability for each

6  Defendant here and the damages would only be as to one and

7  all we need to worry about is stripping out Mr. Flórez out of

8  the minimum wage claim.

9      MRS. ROBBINS-BOBER:  Well, he has a Fair Labor

10  Standards Act minimum wage claim.  No notice letter is

11  required for that one.

12      THE COURT:  Well --

13      MRS. ROBBINS-BOBER:  We could do a separate verdict

14  form just for him.  I don't know if that's confusing.

15      THE COURT:  No, I really do not want to do that.  I

16  think that would be very confusing.

17      MRS. ROBBINS-BOBER:  We could --

18      THE COURT:  I think that by splitting it off

19  minimum wage and overtime and I think the only concern is

20  whether it goes back five years for Mr. Flórez, correct?

21      MR. McDONALD:  Correct.

22      MRS. ROBBINS-BOBER:  Your Honor, also the damages

23  amounts are stipulated, you know, if we prove liability.

24      THE COURT:  We should be able to figure it out then

25  from the numbers if we split minimum wage and overtime.

1          **MR. McDONALD:**  It's four and five years because

2     it's -- under the FLSA it's two if it's not willful, three if

3     it is.

4          Under the Florida Minimum Wage Amendment it's four

5     and if it's not, I believe five if it's willful.  So in his

6     case the most he could ever be held liable for would be

7     three.

8          **THE COURT:**  Three years.  Right.  And we can

9     compute that.

10         **MRS. ROBBINS-BOBER:**  Yes.

11         **THE COURT:**  Because we know the figures and the

12    hours.  So all we need to do is split off minimum wage from

13    overtime and that should let us --

14         **MR. McDONALD:**  Okay.

15         **THE COURT:**  -- figure it out.  So I'll split that

16    off.  All right.

17         So what I'm going to do is I'm going to work the

18    changes that we talked about and as promised before we leave

19    tonight I'll e-mail each of you a Word version of my rulings,

20    and I will for the record note each side's objections to my

21    instructions to the extent that they have either been

22    articulated at the charge conference or that they do not

23    comport with the requests.  And I will separately enter my

24    rulings on the request as to granted, denied, covered, and so

25    on, and make this a part of the record.  And I think that

1    will protect everybody's records for purposes of appeal if

2    need be.

3            Anything else?  We have all of five minutes.

4            **MRS. ROBBINS-BOBER:**  Your Honor, regarding the --

5    no, Your Honor, I think that's fine.

6            **THE COURT:**  You're good with the verdict form the

7    way I have it?

8            **MR. McDONALD:**  Are you going to -- did you say you

9    were going to break up overtime from -- other than that, I'm

10   fine with it.

11           **MRS. ROBBINS-BOBER:**  Your Honor, actually, based on

12   Defendants' motions for the retaliation claim, perhaps it's

13   wise to break up the backpay issue from the compensatory

14   damages.  I think you reserved on that.

15           **THE COURT:**  All right.  So I'll break that up just

16   the way the instruction says.  As to retaliation, so much and

17   so much.  All right.  I'll be happy to do that.

18           Anything else?

19           **MR. McDONALD:**  Nothing else.

20           **THE COURT:**  All right.  Thank you very much.  I

21   will see you tomorrow at 9 o'clock sharp.

22           **MRS. ROBBINS-BOBER:**  I'm sorry, so sorry, Your

23   Honor.  Also, I think we need to break up the willfulness

24   issue as to each Defendant.

25           **THE COURT:**  Oh, so I have paragraph 5 that any of

1    the defendants willfully violated by terminating so you want

2    something like that like, let's say number four would be that

3    any of the defendants -- wait, what about number three?

4    Isn't that covered already in number three?

5          MRS. ROBBINS-BOBER:  Well, I think three maybe is

6    the wage, willfulness as to the wage and five is willfulness

7    as to the retal claim.

8          THE COURT:  So what more do you want to break up?

9          MRS. ROBBINS-BOBER:  Just that you make a finding

10   as to each Defendant, especially since we have the issue with

11   Flórez.

12         MR. McDONALD:  It says to take --

13         THE COURT:  So you want to break up number five the

14   same way that I broke up number three?

15         MRS. ROBBINS-BOBER:  Yes, Your Honor.

16         THE COURT:  All right.  Okay, I can do that.

17   Anything else?

18         MRS. ROBBINS-BOBER:  No, Your Honor, and thank you

19   for your patience.

20         THE COURT:  All right.  So, again, we'll see you

21   tomorrow sharp at 9:00 ready to do closing arguments.  Half-

22   hour most.  Plaintiff can reserve.  And you need to tell me

23   how much you're going to reserve because I time you.

24         MRS. ROBBINS-BOBER:  Your Honor, can I respectfully

25   request that we have 35 minutes.  I have the six economic

1    reality elements plus I have four defendants, three claims.

2    It's really -- I was working on it last night, it's quite a

3    bit to cover.  We had ten witnesses.

4              **THE COURT:**  You have 35 minutes each.  No more.

5              **MRS. ROBBINS-BOBER:**  Thank you, Your Honor.

6              **THE COURT:**  Anything else?

7              **MR. McDONALD:**  Nothing else, Your Honor.

8              **THE COURT:**  All right.  Thank you very much.

9              **THE COURTROOM DEPUTY:**  All rise.  Court is

10   adjourned.

11             **THE COURT:**  Remember you might want to come a

12   little bit early to go over, or you might want to do it now,

13   the exhibits.

14             **MRS. ROBBINS-BOBER:**  I'll do that now.

15

16   *      *      *      *      *      *      *      *      *      *      *

17       *(Thereupon, proceedings were held but not transcribed.)*

18   *      *      *      *      *      *      *      *      *      *      *

19

20       (Thereupon, the above portion of the trial was concluded.)

21

22                          *         *         *

23

24

25

1                    **C E R T I F I C A T E**

2

3          I hereby certify that the foregoing is an accurate

4    transcription of the proceedings in the above-entitled

5    matter.

6

7        2-9-2015

8    _____        _____

9    DATE COMPLETED          GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25