UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-cv-23429-OTAZO-REYES

**[CONSENT CASE]**

MITCHELL ROSARIO,

    Plaintiff,

vs.

12425, INC., a Florida for-profit corporation d/b/a
STIR CRAZY, LAURA INSUA, MANUEL H.
INSUA, and HERIBERTO FLOREZ,

    Defendants.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S BILL OF COSTS**

    The Plaintiff, through undersigned counsel, pursuant to the FLSA, 29 U.S.C. §216(b), the Florida Minimum Wage Act and Amendment, 28 U.S.C. §1920, Fed.R.Civ.P. 54(d)(1), and Local Rule 7.3(c), files this Reply in Support of Plaintiff's Bill of Costs against Defendants 12425, Inc. d/b/a/ STIR CRAZY and HERIBERTO FLOREZ ("Defendants"), and says:

    In their Response in Opposition to Plaintiff's Bill of Costs (DE 183) ("Response"), Defendants concede the Plaintiff is a prevailing party entitled to some costs. (Response ¶15). Specifically, Defendants concede the Plaintiff is entitled the cost of depositions transcripts of the Plaintiff ($1,072 plus $15.60), Florez ($1,352 plus $42.50), Rolando Quevedo ($458.50 plus $4.00), and Augusto Garcia ($296), (Response ¶¶9, 18), the filing, summons, and subpoena fees listed in the Response ¶16 ($601), the trial transcripts of the Plaintiff's cross and redirect ($363.12) (Response ¶26), the witness fees of Garcia and Quevedo ($266.34), (Response ¶26), and interpreter fees for Garcia at trial and deposition as well as for the cancelled interpreter for Florez, ($692) (Response ¶31), and the Court reporter attendance fees for the first deposition of Florez ($420).[1]  Per the Defendants, the total costs conceded to are $5,563.56, but the total of the

---

[1] Defendants mistakenly cite the $160 court reporter attendance fee for the second deposition of Florez on 5/14/14, instead of the more expensive first deposition on 4/10/14, for which the Defendants concede the Plaintiff is entitled to costs.

actual costs to which Defendants concede is **$5,583.06**.[2] The Defendants object to the remaining requested costs.

The Court should note that the Plaintiff attempted to confer with the Defendants regarding the requested costs, as set forth in the certification in the Plaintiff's Memorandum in Support of Bill of Costs (DE 180), but defense counsel was not available to do so prior to the Plaintiff filing his Bill of Costs, and did not do so after the Plaintiffs filed his Bill of Costs beyond the general objection that only costs related to the retaliation claim were taxable.

As an initial matter, the Plaintiff takes issue with Defendants' statement that the focus of this case was the Plaintiff's employee status. (Response ¶3). The Plaintiff had two main claims: his unpaid wage claim and his retaliation claim. The Plaintiff's termination was very significant to him, especially after having worked at the Defendants' club for more than twelve years and then being dismissed in the club's parking lot. Moreover, as set forth more fully below, the wage and retaliation claims were not distinct, but rather were intertwined since *the Plaintiff needed to prove he had a good faith reasonable belief that the was an employee to satisfy the protected activity element of his retaliation claim.*[3]

While the Defendants cite to the Pretrial Stipulations for the fact that the parties stipulated to the date the Plaintiff was terminated, (Response ¶4), Defendants argued at trial that the Plaintiff was offered his job back. Defendants also did not stipulate *until the charge conference* on the retaliation instruction that the Plaintiff *had* engaged in protected activity. Indeed, the Plaintiff requested a jury instruction finding as a matter of law that the Plaintiff had engaged in protected activity, but Defendants initially objected to it, and Defendants instead requested language that left the issue of whether the Plaintiff engaged in protected activity for

---

[2] Defense counsel appears to have made a mathematical error in adding the unopposed costs.
[3] Specifically, the Plaintiff's belief that he was misclassified as an independent contractor instead of an employee was the basis for his complaint about his nonpayment of wages. Although the Plaintiff was not required to prove Defendants nonpayment of wages was unlawful to prevail on his retaliation claim, see Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989), witness testimony tending to show the Plaintiff was or was not an employee was relevant to the Plaintiff's retaliation claim. That is so because whether the Plaintiff reasonably believed that he was an employee entitled to wages was relevant to the issue of whether the Plaintiff had engaged in "protected activity," which was an element of the Plaintiff's retaliation claim. (Jury Instructions, (DE 137) at p. 20).

the jury to determine. (DE 78 p. 34). The Plaintiff also was required to prove he was terminated because he complained, and was required to prove damages. Thus, there were numerous disputed issues as to the retaliation claim during discovery and trial.

Defendants also cite to the Plaintiff's Initial Disclosures, which did not identify witnesses with knowledge regarding the retaliation claim. (Response ¶¶ 5-6. Such evidence, however, was developed in discovery, and Defendants do not dispute that there were other witnesses with knowledge of the retaliation claim.

Defendants also attempt to minimize the factual inconsistencies in the testimony regarding the retaliation claim to make it appear that the Plaintiff had little to prove, and certain other witnesses were not necessary.[4] (Response ¶8). While it is true that Florez and the Plaintiff both testified that Augusto Garcia was present when the Plaintiff was terminated, id., Garcia testified he was *not* there. Such testimony was important to show the jury that one of Defendant's current *managerial* employees had been untruthful during his deposition, casting doubt on both Florez and Garcia's version of the termination that they did not know at the time that the Plaintiff's complaint was about wages. In addition, there was conflict in the testimony between Florez and Rolando Quevedo as to whether Quevedo sent the Plaintiff a text message offering him his job back; namely, Quevedo did not recall sending a text and Florez testified he saw Quevedo's text with his own eyes. (1/27/15 Florez Trial Transcript, (DE 169-4) 37:4-5).

The Plaintiff also disputes that the retaliation claim involved the testimony of only the Plaintiff, Florez, Garcia, and Quevedo, and that costs for only those four depositions are recoverable. (Response ¶9). As set forth more fully below, Garces, Roppo, Hernandez, and the three Insuas all were asked about the termination at their depositions, and provided testimony for the jury to consider at trial. Moreover, Defendants estimate as to the length of trial for the retaliation claim of "one day of less" is not correct, and purely speculative. (Response ¶9). The Plaintiff maintains that the trial would have been the same length because the Plaintiff still was required to prove the reasonableness of his belief that he was an employee as to his retaliation

---

[4] Although not relevant to the Plaintiff's Bill of Costs, the Plaintiff's take issue with an number of Defendants' versions of the facts, including that there was undisputed testimony that the DJs made their own schedule, (Response ¶8), since Florez testified that he had final approval, and since the parties stipulated the Plaintiff worked 4 or 5 shifts per week which is evidence that the Plaintiff did not have such flexibility in scheduling, and was required be available to cover an absent DJ since DJs could not work double shifts.

claim, even thought he was not required to prove he was an employee entitled to wages to prevail on his retaliation claim.

Defendants concede in their Response that, except for the deposition of Sayoc, the issue of retaliation was inquired into at the depositions for which the Plaintiff seeks costs. (Response ¶10). Even with this concession, Defendants nevertheless, inconsistently and incorrectly, argue that such depositions can be described as being taken for convenience, id., and that no other depositions were necessary besides Florez, the Plaintiff, Quevedo, and Garcia. (DE 183 at ¶13). The law, however, takes a broader view: "Deposition costs are taxable *even if a prevailing party's use of a deposition is minimal or not critical* to that party's ultimate success, unless the losing party demonstrates that the deposition was not related to an issue present in the case *at the time of the deposition*.  EEOC, 213 F.3d at 621.  Defendants concede that is the appropriate standard, (Response ¶¶ 11-12), and yet do not want the standard applied to them.  At the time the deposition was taken, both the wage issue and the retaliation issue were present, and therefore all the requested deposition costs are taxable. Moreover, even if the Court were to focus only on the retaliation claim, all the deponents except Sayoc were asked to testify about the Plaintiff's retaliation claim.  Moreover, even if Florez testified that he informed the Insuas only after he terminated the Plaintiff, the Plaintiff was permitted to question that version of the facts, and allow the jury to determine if they believed him.  Indeed, Defendant Laura Insua stated at trial that there was no aspect of the club of which she was not aware, and she agreed with everything Defendant Florez did.  The Insua Defendants' knowledge and blessing about the termination was very much in dispute at the time the depositions were taken and at trial, as evidenced by the fact that the Insua Defendants were denied summary judgment on that issue and denied a judgment as a matter of law at the close of the evidence at trial.

Next, Defendants' argue that since the Plaintiff did not have to prove he was an employee to prevail on the retaliation claim, costs related to the wage claim should not be taxed. (Response ¶13).  Such an argument is in conflict with the position Defendants took post-trial that the Plaintiff *did* have to prevail on employee status to succeed on his retaliation claim (DE 161), and also incorrectly presumes those claims are distinct.[5]   The Defendants cannot have it both

---

[5]The Plaintiff takes issue with defense counsel's personal attacks with respect to the erroneous description of this case as "vexatious and protracted litigation."  (Response, ¶13).

ways. At any rate, at the time of the depositions, it was appropriate to inquire into the Plaintiff's basis for believing he was misclassified as an independent contractor rather than an employee since he needed to establish the reasonableness of his belief for the protected activity element of his retaliation claim.

Defendants next seem to argue that costs should be disallowed based on the alleged results obtained, (Response, ¶14), but that is not the applicable standard for the award of costs, and should not be considered by this Court. The Plaintiff also disputes the Defendants' characterization of the results, but will address that issue in the Plaintiff's Motion for Attorneys' Fees.

Defendants also appear to object to service fees for subpoenas for the *deposition* of Manuel Insua (Sr.) ($23) and Andrew Garces ($23),[6] as well as service of *trial* subpoenas on Andrew Garces ($23) and Joe Roppo ($23). (Response ¶16) (omitting such costs). Witnesses Manuel Insua (Sr.), Garces, and Roppo all testified at trial and were on both the Defendants' and Plaintiff's Witness Lists (DE Nos. 77-3 and 77-4). Thus, the Plaintiff is entitled all the requested costs for service of these subpoenas.

Next, as set forth above, Defendants concede that the Plaintiff is entitled to costs for depositions of the Plaintiff, Florez' first deposition, Rolando Quevedo, and Agusto Garcia, (Response, ¶¶15,17,18), but dispute taxation of the remaining depositions, (Response ¶19) namely, the depositions of Defendant Laura Insua, Defendant Manuel H. Insua, Mauel Insua (Sr.), Joe Roppo (Head DJ), Andrew Garces (DJ), Cesar Sayoc (manager), and the second deposition of Florez. The Plaintiff is entitled to all the requested deposition costs because the Plaintiff inquired of these deponents (except Sayoc) about the Plaintiff's termination, because the Plaintiff's belief that he was an employee was an element of his retaliation claim, and because at the time of the deposition, the Plaintiff's employee status was an issue in the case. For example, Andrew Garces and Joe Roppo were asked about a conversation they had with Defendant Florez after Florez terminated the Plaintiff. Defendants Manuel H. Insua, Laura Insua, and Manuel Insua (Sr.) were asked about their knowledge of the Plaintiff's termination and/or whether Florez discussed it with them. Moreover, Florez testified about conversations he had with Manuel H. Insua (Jr.) and Manuel Insua (Sr.) shortly after the Plaintiff was terminated about the Plaintiff's

---

[6] Andrew Garces' names was misspelled "Andres Garcia" on the attached subpoena.

termination, creating a question as to whether he was being truthful about his lack of knowledge regarding the type of lawsuit filed. Laura Insua testified she was knowledgeable about all aspects of the club and that whatever Florez did, she agreed with it. Such testimony created a question for the jury to decide as to whether Laura Insua approved the termination. Manuel H. Insua (Jr.) also testified as to his involvement with important club decisions and with personnel issues, and that Florez was his right hand, creating a jury issue as to whether Florez was following a directive from Manuel H. Insua insofar as terminating the Plaintiff. DJ Cruz Hernandez also testified that he notified Stir Crazy about his wage complaint prior to the Plaintiff notifying Stir Crazy, which helped to establish that Florez knew the Plaintiff's lawsuit was about wages.[7] Moreover, Roppo, Garces, Laura Insua, Manuel H. Insua, and Manuel Insua (Sr.) were all listed on Defendants' Witness List (DE 77-4), which provides an additional basis for awarding the costs of these depositions. EEOC, 213 F.3d at 621 (taxation of deposition costs of witnesses on the losing party's witness list is reasonable).

As to Sayoc's deposition, although he did not testify directly about the Plaintiff's termination, he testified about the Plaintiff's employee status, which was intertwined with the Plaintiff's retaliation claim, and was an issue in the case at the time Sayoc's deposition was taken. Similarly, the second deposition of Florez, necessitated by Defendants' failure to turn over documents, was necessary as to the wage issue, which was present in the case at the time that deposition was taken, and therefore, is recoverable.

Defendants cite no legal authority for their argument that depositions used in support of a motion for summary judgment is not a basis for taxing such depositions. (Response ¶22). To the contrary, as set forth in the Plaintiff's Memorandum, listing such witnesses on a trial witness list and using deposition at summary judgment is a basis to tax such costs. Helms v. Wal-Mart Stores, Inc., 808 F.Supp. 1568, 1572 (N.D. Ga. 1981), aff'd, 998 F.2d 1023 (11th Cir. 1993) (Depositions relied upon for summary judgment motions are taxable).

Defendants also oppose the award of costs for the trial transcripts regarding the two charge conferences, the trial motions, and the voir dire. (Response ¶24). The retaliation claim was discussed in the 1/29/15 charge conference, and in Defendants' motion for judgment as a

---

[7] 1/27/15 Trial Transcript for Heriberto Florez (DE 169-4), 18:20-22 (Q: "So did Mr. -- did Cruz Hernandez complain about his wages before Mr. Rosario did?" A: "Yes."; 25:20-22 (Q: "You didn't think -- did you think Mr. Rosario is a deejay, Cruz Hernandez is a deejay, maybe they're complaining about the same thing?").

matter of law in the 1/29/15 Motions transcript. Moreover, the motion transcript was necessary to respond to the Defendants' renewed motion for judgment as a matter of law.  All those trial transcripts addressed issues that were present in the case at the time they were ordered, including the Plaintiff's renewed Motion for Judgment as Matter of Law and Motion for Juror Interview. Even if the Plaintiff did not prevail on those Motions, the costs are still recoverable. Defendants have failed to meet their burden of showing the transcripts were not related to an issue in the case at the time the transcript was made. EEOC, 213 F.3d at 621.  As set forth above, deposition costs are taxable even if a prevailing party's use of a deposition is minimal or not critical to that party's ultimate success, unless the losing party demonstrates that the deposition was not related to an issue present in the case at the time of the deposition.  EEOC, 213 F.3d at 621.

Defendants also object to taxing costs for Florez' trial testimony. (Response ¶25).  The Plaintiff cited Florez' trial testimony on 1/26/15 and 1/27/15 in his Response in Opposition to Defendants Motion for Judgment as a Matter of Law (DE 171). Because the Defendants moved for judgment as a matter of law as to the retaliation claim, the Plaintiff was required to address that claim in response to Defendants' Motion. (DE 171).  Thus, that transcript cost is reasonable.

With respect to Defendants' objections to the court reporter attendance fees, Defendants' citation to Martinez-Pinillos v. Air Flow, 2010 WL 6121708 (S.D. Fla. 2010) does not support the Defendants' argument that court reporter attendance fees should be allowed only for the first deposition of Florez, Garcia, and Quevedo. (Response ¶27). The Air Flow cases involved a defense verdict on all counts. The Defendants' citation does not contain a cite to a particular page of that case, and Defendants fail to explain why they cite that case. As set forth above, all requested court reporter attendance fees are recoverable under the applicable standard, including for Laura Insua, Manuel H. Insua, Manuel Insua (Sr.), Joe Roppo and Andrew Garces, Cesar Sayoc, and the second deposition of Florez.

Defendants also fail to cite any legal authority for their argument that witness fees for witnesses who testified at trial should not be allowed.  (Response 28). All the requested witness fees are for witness who testified at trial, and are allowable. Hurtado v. United States, 410 U.S. 578, 584–5 (1973).  Thus, the requested witness fees for Joe Roppo and Andrew Garces should be allowed.

7

Defendants also object to the photocopying costs Plaintiff requests (Response ¶¶29-30). Again, the Air Flow case the Defendants rely upon does not support disallowing the requested costs. Rather, in Air Flow, the Court disallowed taxing the costs for two *certified* copies of depositions. Air Flow, 2010 WL 6121708, *5-6. The Plaintiff does not seek to tax the cost of a certified copy, but rather the mere photocopying costs, which were necessary so that the Court, and witness had a copy of the deposition to reference for impeachment, and so the Court could rule on Defendants' objections to the impeachment testimony.

Finally, with respect to the interpreter costs, the Defendants object only to the interpreter costs for the deposition of Laura Insua in the amount of $315. (Response 31). Laura Insua was a Defendant in this case. She testified about the retaliation claim, and more importantly, at the time her deposition was taken, it related to issues in the case that were present at the time of the deposition; namely, all of the Plaintiff's claims.

WHEREFORE, the Plaintiff respectfully requests to Court award the requested costs, and grant the Plaintiff such further relief as the Court deems just

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Samara Robbins Bober
PETER J. BOBER
FBN: 012295
Peter@Boberlaw.com
SAMARA ROBBINS BOBER
Samara@Boberlaw.com
BOBER & BOBER, P.A.
1930 Tyler Street

8

Hollywood, Florida  33020
Telephone: (954) 922-2298
Facsimile: (954) 922-5455
*Attorneys for Plaintiff*

**SERVICE LIST**

| | |
|---|---|
| PETER J. BOBER<br>FBN:  012295<br>Peter@Boberlaw.com<br>SAMARA ROBBINS BOBER<br>Samara@Boberlaw.com<br>BOBER & BOBER, P.A.<br>1930 Tyler Street<br> Hollywood, Florida  33020<br>Telephone: (954) 922-2298<br>Facsimile: (954) 922-5455<br> *Attorneys for Plaintiff* | David M. McDonald, Esquire<br>dmcdonald@mmlawmiami.com<br>Florida Bar No. 613241<br>McLUSKEY & McDONALD, P.A.<br>The Barrister Building<br>8821 S.W. 69th Court<br>Miami, FL 33156<br>(305) 662-6160 Telephone<br>(305) 662-6164 Fax<br>*Counsel for Defendants* |

9